Scott S. McKessy (SM-5479)
Casey D. Laffey (CL-1483)
REED SMITH LLP
599 Lexington Avenue
New York, New York 10022
Tel. (212) 521-5400
Fax. (212) 521-5450
Attorneys for Plaintiff
Wachovia Bank, National Association

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
WACHOVIA BANK, National Association,    :

              Plaintiff,    :

      - against -    :

MAJAPARA CASA DE CAMBIO S.A. de C.V.,    :

           Defendants.    :
-----------------------------------------------------------X

           Civil Action No. __

## DECLARATION OF CARLOS A. PEREZ

Carlos A. Perez, declares as follows:

1.    I am the Managing Director, Americas Group, Global Financial Institutions & Trade Services for Wachovia Bank, National Association ("Wachovia"). I am fully familiar with the facts set forth herein, and submit this declaration pursuant to 28 U.S.C. §1746, in support of Wachovia's instant application for the award of a pre-judgment attachment and temporary restraints.

### Introduction

2.    This is a case that arises out of foreign exchange spot transactions involving more than $70 million (US$) in currency being exchanged between Wachovia and defendant Majapara Casa De Cambio S.A. de C.V. ("Majapara"). The gist of the transaction was that Wachovia would deliver to Majapara 26 million Euros and in exchange Majapara would deliver more than $38 million (US$) to Wachovia's account here in New York. Wachovia delivered the 26 million Euros to Majapara's account, but Majapara never delivered the $38-plus million (US$) to

Wachovia. Not only did Majapara renege on the agreed upon transactions, but it then absconded with Wachovia's money. Thereafter, Majapara admitted to Wachovia that it was now illiquid, that it has engaged in illegal loans in relation to its foreign exchange transactions, and if Wachovia took any steps to enforce their rights, Wachovia would not recover a single dollar. As a result, Wachovia now commences this action to recover the money wrongfully taken by Majapara, as well as make the instant application for pre-judgment attachment of certain Majapara assets believed to be located here in New York.

3.      The instant application should be granted because Majapara is a non-domiciliary, has admitted it is illiquid, engaged in inappropriate business activities, and indicated that if Wachovia commences any action Majapara will ensure Wachovia will not be able to recover upon its judgment. Plus, there is an exceedingly strong likelihood that Wachovia will succeed on its claims herein: the deal was to exchange currencies – Wachovia did; Majapara did not.

<u>**Foreign Currency Exchanges**</u>

4.      Wachovia provides a platform for its customers to trade foreign currencies. The amounts swapped are usually in significant amounts and the off-setting exchanges are done simultaneously. Foreign Exchange contracts are trading contracts that involve minimum documentation. It is the nature of foreign exchange contracts that each counterparty must transmit funds trusting the other to do so simultaneously. Such contracts therefore involve a great deal of trust on each side. A party to a foreign exchange transaction who fails to settle as required is thereby rendered untrustworthy and not deemed suitable for further transactions of this nature. Should such information become public, this party would be unable to engage in such transactions with any substantial institution. Given that foreign exchange is the foundation of Majapara's business, it would not have defaulted under its contract absent substantial economic difficulties, and its default is likely to spell its doom.

## The Majapara Relationship With Wachovia

5.     Majapara is a Mexican corporation and does not maintain any offices in New York. Majapara is in the business of retail and wholesale foreign exchange.

6.     In the late 1990's, Majapara and First Union National Bank ("First Union") (a predecessor to Wachovia) agreed to enter into foreign exchange transactions. As mentioned above, in these transactions, Majapara would agree to purchase from First Union a certain amount of one currency in exchange for Majapara selling to First Union an equivalent amount of another currency at the applicable exchange rate.

7.     In order to facilitate these exchange transactions, on or about April 6, 2000, Majapara and First Union entered into a First Union Online FX Subscription Agreement ("FX Subscription Agreement"), a copy of which is attached to the Complaint as Exhibit A. Pursuant to this FX Subscription Agreement, Majapara was permitted to execute foreign exchange transactions with First Union electronically through First Union's foreign exchange website. The FX Subscription Agreement was not the parties' exclusive method for entering into foreign exchange transactions.

8.     In 2002, First Union and Wachovia merged.

9.     In some of the foreign exchange transactions between Majapara and Wachovia, Wachovia would deliver currency to Majapara to an account designated by Majapara. On that same day, Majapara would transfer the agreed upon counter-currency into a Majapara account maintained by Wachovia in New York (the "Majapara NY Account"). Upon the opening of the Majapara NY Account, Wachovia's Terms & Conditions For Global Financial Institutions ("Wachovia's Terms & Conditions"), amongst other documents, governed all of the parties'

business relationships and dealings. A copy of Wachovia's Terms & Conditions is annexed
hereto as Exhibit A.

10.     Wachovia would then debit the currency from the Majapara NY Account. The
authorization for this procedure was documented in a December 10, 2003 letter, in Spanish, from
Majapara to Wachovia. A copy of which is attached to the Complaint as Exhibit B. I speak and
read Spanish fluently and the note translates as: "In relation to the transactions done with
yourselves through Online FX; we authorize you to debit and credit our account number
NY2000192304201 held with yourselves."

11.     In or about March 2006, Majapara signed a Debit and Netting Agreement that
gave Wachovia the same authority to credit and debit the same Majapara Account. A copy of
this document is attached to the Complaint as Exhibit C.

### The Foreign Exchange Transactions At Issue

12.     On or about December 5, 2007, Majapara and Wachovia agreed to do a series of
seven (7) transactions, all of which were to be settled on December 7, 2007. Six (6) of those
transactions were executed on Wachovia's foreign exchange internet website. One (1) of the
transactions was executed through an interface system operated by Reuters to which both
Majapara and Wachovia have access. A copy of wire transfer confirmations for each of these
transactions is attached to the Complaint as Exhibit D. As detailed on those confirmations,
Majapara was to deliver all of the counter-currency (US$) into its Majapara NY Account.
Wachovia was to then simply debit that New York account.

13.     Pursuant to the parties' agreement, the seven (7) foreign exchange transactions
were to close on December 7, 2007. Accordingly, on December 6, 2007, Wachovia sent
30,300,000 Euros, $112,900.03 and 7,000 Swiss Francs to Majapara's account in Munich,

Germany. Even though they had just entered into the deals the prior day (December 5, 2007), Majapara did not deliver the agreed upon $38,737,100, 127,000 Swiss Francs and $6,218.90 to Wachovia, as required, so that the transactions could settle on December 7, 2007.

14.     To date, Majapara has not transferred any amount owed pursuant to these exchange transactions.

15.     On December 11, 2007, however, as was its right under Wachovia's Terms & Conditions, Wachovia was able to secure, as an offset to the debt owed, $9,460,000 Majapara attempted to transfer out of Wachovia to a Majapara account located in Citibank in New York. Accordingly, the total debt owed by Majapara to Wachovia is reduced based upon this offset. Wachovia was also able to secure an additional $3,960,155.00 in offset funds against the amount owed by Majapara. The total debt owed from those transactions is $24,711.845.00.

**Majapara Is Illiquid And Intends to Frustrate Wachovia's Recovery Herein**

16.     After Majapara defaulted, my department made contact with Majapara to demand payment and to get an explanation why it did not pay Wachovia as it was required to do. On Thursday, December 13, 2007, at approximately 9:52 am Eastern, I spoke by telephone with Jorge Ortiz, Majapara's Chairman and CEO. I know Mr. Ortiz well and have met with him and spoken to him many times. I was joined in the telephone call by Juanita Gomez, a Vice President in my group who is our Mexico representative.

17.     I asked Mr. Ortiz in our call what Majapara did with Wachovia's money. Mr. Ortiz acknowledged and admitted that Majapara was obligated to provide the agreed upon currency to Wachovia and owed Wachovia over $30 million. He then stated that Majapara had received Wachovia's Euros and used them for other purposes because it was experiencing "a liquidity crisis."

- 5 -

18.    I then asked him if he lent the money to third parties.  He said "yes."  I said, "That's not legal."  He said:  "I recognize that we have done something that is not permitted" -- Majapara is a Mexican "Casa de Cambio," a company in the business of currency exchange, such as exchanging Mexican pesos for dollars, and as such, under Mexican law, is not permitted to make loans.

19.    I then asked Mr. Ortiz when Majapara would be able to repay Wachovia.  He said that he "needed time to collect the money from others who he had lent Wachovia's money to."  He said Majapara "would need two months to collect."  Based on this conversation, it is my belief that Majapara engaged in a fraud with respect to the foreign exchange spot transactions Majapara engaged in with Wachovia.  Due to its "liquidity crisis," Majapara did not have sufficient funds to complete the exchange with Wachovia and to engage in the other lending or other activities.

20.    Based upon Majapara's recent statements, it knew of its condition prior to the Wachovia transactions closing, but, nonetheless, accepted Wachovia's funds, knowing that it would not have the funds to repay Wachovia at the close.  Majapara then used Wachovia's funds to engage in illegal lending transactions and otherwise dissipated the assets received from Wachovia, all the while failing to fulfill its immediate obligations to transfer over $38 million to Wachovia.

21.    Mr. Ortiz told me that if Wachovia took legal action against Majapara, Wachovia would end up with nothing.

### New York Bank Accounts

22.    Being the relationship manager for Majapara, I am aware of a bank account Majapara maintains (or did maintain) at Citibank located in New York City.  The account

- 6 -

number is 36254838. I also have a good faith belief that Majapara maintains (or maintained) bank accounts at other banks in New York as well. Those banks are JP Morgan Chase and Bayerische Hypo- und Vereinsbank, AG.

### Undertaking

23.    Wachovia stands ready to secure a bond (or any other acceptable undertaking to the Court) in an amount set by this Court. Wachovia respectfully requests that the amount of any undertaking be set upon identification of the actual amount to be attached and then in a reasonable amount.

24.    No prior application for the relief requested herein has been made to this or any Court

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 13th day of December, 2007.

Carlos A. Perez

ELENA PEREZ CAPIRO
MY COMMISSION # DD 705383
EXPIRES: August 15, 2011
Bonded Thru Notary Public Underwriters

JUDGE JONES

Scott S. McKessy (SM-5479)
Casey D. Laffey (CL-1483)
REED SMITH LLP
599 Lexington Avenue
New York, New York 10022
Tel. (212) 521-5400
Fax. (212) 521-5450
Attorneys for Plaintiff
Wachovia Bank, National Association

07 CV 11230

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
WACHOVIA BANK, National Association,          :
                                              :
                Plaintiff,                    :          Civil Action No. ___
                                              :
           - against -                        :          **ORDER TO SHOW CAUSE**
                                              :
MAJAPARA CASA DE CAMBIO S.A. de C.V.,         :
                                              :
                Defendants.                   :
-------------------------------------------------------------X

        Upon reading and filing the Declaration of Carlos A. Perez, dated December 13,

2007, the Declaration of Scott S. McKessy, dated December 13, 2007, and the exhibits

annexed thereto, the accompanying Memorandum of Law, the Complaint dated

December 14, 2007, and all the prior pleadings and proceedings had herein, and there

having been no prior motion for the relief requested herein; it is hereby

        **ORDERED**, that defendant Majapara Casa De Cambio S.A. de C.V.

("Majapara") show cause before this Court, in Courtroom /8B at the United States

Courthouse, 500 Pearl Street, New York, New York 10007, on the 21 day of

December, 2007, at 10:00 a m, why an Order of attachment should not be entered in this

action, pursuant to Fed. R. Civ. P. 64, directing the United States Marshal, or other

appropriate Federal or State Law Enforcement Agent, to levy within his or her

jurisdiction upon such property in which Majapara has an interest and upon such debts

owing to Majapara as will satisfy $24,711,845.00, plus interest, costs, and the Marshal's

fees and expenses, including but not limited to, the monies being maintained and to be

maintained at the following bank accounts:

> Citibank, N.A.
> 399 Park Avenue
> New York, NY 10043
> (account number 36254838)
>
> JP Morgan Chase Bank, N.A.
> 270 Park Avenue
> New York, NY 10017
> (account number unknown)
>
> Bayerische Hypo- und Vereinsbank, AG
> 150 East 42nd St.
> New York, NY 10017
> (account number unknown)

along with such other and further relief as the Court may deem just, proper, or equitable.

**IT IS FURTHER ORDERED THAT**, pending the hearing and determination of

this motion, Majapara, shall be and hereby is enjoined and restrained from transferring,

selling, pledging, assigning or otherwise disposing of any of its assets.

**IT IS FURTHER ORDERED THAT**, Majapara shall produce a detailed list of

the aforementioned assets and debts, including a description and location of each asset

and debt owed to it, to plaintiff's counsel no later than three (3) business days after

service of this Order upon Majapara as set forth below.

**IT IS FURTHER ORDERED THAT**, pursuant to Fed. R. Civ. P. 64 and CPLR

§ 6212(b), Plaintiff shall be required to post a bond, security or undertaking in the

amount of $ *1,000,000.* within *7* days of execution of this Order.

*(one million dollars)*

**IT IS FURTHER ORDERED THAT**, service of a copy of this Order along with all the supporting papers via overnight mail and certified mail upon Majapara at its office located at Grecia No. 64, Colonia San Alvaro, Mexico City, C.P. 02090, Mexico, on or before December 15, 2007, be deemed good and sufficient service thereof.

**IT IS FURTHER ORDERED THAT**, Majapara shall serve answering papers, if any, so as to be received by plaintiff's counsel, Reed Smith LLP, 599 Lexington Avenue, New York, New York 10022, Attention: Scott S. McKessy, Esq. on or before December 18, 2007, by 3:00 p.m.

**IT IS FURTHER ORDERED THAT**, Plaintiff shall serve reply papers, if any, on or before December 19, 2007 by 5:00 p.m upon Majapara.

Dated: New York, New York
      December 14, 2007

SO ORDERED:

_____
United States District Judge

ISSUED: _____

# **Exhibit A**

Wachovia Bank, National Association

TERMS & CONDITIONS
FOR GLOBAL FINANCIAL
INSTITUTIONS





WACHOVIA

# Table of Contents

| | |
|---|---|
| Introduction | 1 |
| Account Services | 1 |
| Authorized Signatures | 1 |
| Facsimile Signatures | 1 |
| Statements | 1 |
| Review of Statements/Reconciliation | 1 |
| Availability of Funds | 2 |
| Setoff and Security Interest | 2 |
| Credit Interest | 2 |
| Overnight Investment of Excess Funds | 2 |
| Debit Interest | 3 |
| Payment Terms/Compensation Methods | 3 |
| Electronic Transfers | 3 |
| Authorization and Security Procedures | 3 |
| Payment Orders | 4 |
| Execution of Payment Orders | 4 |
| Cancellation and Amendment of Payment Orders | 4 |
| Payments in Currency | 4 |
| Cut-Off Times | 4 |
| Advice of Funds Transfers | 4 |
| ACH | 4 |
| Check Services | 5 |
| Check Disbursement Services | 5 |
| Advice of Issuance | 5 |
| Stop Payments | 5 |
| USD Cash Letter | 5 |
| Final Credit Service | 7 |
| Global Check Clearing | 7 |
| USD and Foreign Check Collection | 7 |

| | |
|---|---|
| Trade Services | 7 |
| Letters of Credit | 7 |
| Bank-to-Bank Reimbursements | 7 |
| Documentary Collections | 8 |
| Reimbursement Collections | 8 |
| Other Cash Management Services | 8 |
| Courier Services | 8 |
| Miscellaneous | 8 |
| Assignment of Terms & Conditions | 8 |
| Conflicts/Disputes Involving the Account | 8 |
| Confidentiality | 9 |
| Termination | 9 |
| Applicable Laws | 9 |
| Compliance with Law | 9 |
| Waiver of Jury Trial | 9 |
| Invalidity of Contract Provisions | 10 |
| Indemnification | 10 |
| Liability | 10 |
| Waiver | 10 |
| Legal Process | 10 |
| Correspondent's Representations, Warranties and Covenants | 10 |
| Entire Terms & Conditions | 11 |
| Use of Correspondent's Account | 11 |
| U.S. Legal Holidays | 11 |

# Introduction

These Terms & Conditions form an agreement ("Terms & Conditions") between Wachovia Bank, National Association ("Wachovia") and each customer ("Correspondent") maintaining one or more U.S. Dollar denominated demand deposit accounts with Wachovia (all such accounts are herein called the "Account") in the United States of America (U.S.). For the purpose of these Terms & Conditions, a Correspondent is defined as a bank or nonbank financial institution holding an Account on Wachovia's books. By accepting this documentation, or by using the Account, the Correspondent agrees to be legally bound by these Terms & Conditions, as amended from time to time. Other terms and conditions contained in a separate agreement or service description between Correspondent and Wachovia related to certain account services provided by Wachovia shall apply to the Account also. All prior general terms and conditions are superseded by this document.

Wachovia reserves the right to amend these Terms & Conditions, and shall provide prior notice of such changes. Changes to these Terms & Conditions required by law or regulation will be implemented immediately otherwise upon reasonable notice to Correspondent.

# Account Services

## Authorized Signatures

Correspondent may set forth in a document to be provided to Wachovia the names, signatures and titles of all persons duly authorized and who have complete authority to bind Correspondent (subject to any limits described by Correspondent) in all transactions involving the Account, including, without limitation: to sign checks, drafts, instruments, bills of exchange, acceptances and/or other similar documents from Correspondent's Account(s); to endorse checks, instruments, drafts, certificates of deposit, bonds, and/or other evidences of indebtedness and orders payable to, owned or held by Correspondent; to accept drafts, acceptances, instruments and/or other evidences of indebtedness payable at or through Wachovia; to initiate payment orders and other orders for the movement of funds; to waive presentment, demand, protest, and notice of protest or dishonor of any check(s), instrument(s), draft(s), acceptances, instruments or other evidences of indebtedness made, drawn or endorsed by Correspondent; to give instructions to Wachovia regarding any of the foregoing, and otherwise to deal with Wachovia in connection with the foregoing activities and all transactions involving the Account (each such person being hereinafter sometimes referred to as an "authorized signer" or as an "authorized representative"). Correspondent is responsible for notifying Wachovia of any changes to the authorized signers. Wachovia will not be bound by any changes until receipt of a revised document.

Alternatively, Correspondent may utilize authenticated SWIFT message formats or other agreed upon message formats to communicate with Wachovia and Wachovia shall be entitled to rely upon all such messages as authorized by Correspondent.

## Facsimile Signatures

If Correspondent uses a facsimile signature or endorsement, whether by machine, stamp or otherwise, that is not made by a handwritten signature on any checks, drafts, notes or other negotiable instruments with or without a designation of the party making such signature or endorsement, Correspondent agrees that Wachovia may pay and charge Correspondent's Account for checks, drafts, notes or other similar documents bearing or purporting to bear the facsimile signature or endorsement of any person or persons required to sign, regardless of by whom or by what means the actual or purported facsimile signature or endorsement may have been affixed (whether or not authorized), and regardless of by whom or by what means the check, draft, note or other similar document was created (whether or not authorized). Wachovia is not liable for any use of a facsimile signature or endorsement device. If Correspondent uses a facsimile signature or endorsement, Correspondent bears the risk of any unauthorized use of Correspondent's facsimile method.

## Statements

Wachovia will provide Correspondent with detailed transaction and balance information electronically, through SWIFT, telex, Wachovia's proprietary PC or Web-based systems, courier or mail.

In addition, debit and/or credit advices will be sent to Correspondent either electronically or by mail or courier, at Correspondent's request, depending upon the service and/or product.

## Review of Statements/Reconciliation

Correspondent is responsible to promptly and carefully examine all transaction and balance information and to immediately notify Wachovia as soon as possible of any irregularities, alterations, erroneous payments or credits or other problems which occur in connection with the Account. All Account information contained in such statements (mail or electronic), including balance and transaction information, is considered correct unless Correspondent delivers to Wachovia written notification regarding any problems within 30 calendar days of the closing date of the statement month. Such notification must specifically describe the transaction and include photocopies of any relevant documents along with: (1) Correspondent's Account title and Account number, (2) dollar amount of the transaction, (3) Wachovia transaction reference, if available, (4) Correspondent transaction reference and (5) the nature of the problem.

Wachovia's customer service units are available for inquiries on specific transactions regarding posted entries and/or transactions that were not entered in Correspondent's Account when expected. Wachovia abides by the rules and guidelines of the International Financial Services Association and the New York Clearing House Association L.L.C. and its subsidiary companies with regard to the payment of interbank compensation. Wachovia reserves the right to make a final reasonable determination, whether and in what amount an adjustment, if any, shall be made.

If Correspondent is able to prove that Wachovia failed to exercise ordinary care in paying any unauthorized transaction and that Wachovia's failure directly and substantially contributed to the loss, then the loss will be allocated between Wachovia and Correspondent based on the extent to which Wachovia's respective failure to exercise ordinary care contributed to the loss. In that regard, and as disclosed elsewhere in these Terms & Conditions, Wachovia processes checks and other items by automated means and does not visually examine or verify signatures on all checks or other items. Correspondent agrees that Wachovia does not fail to exercise ordinary care because Wachovia uses these automated procedures. Correspondent also agrees that Wachovia does not fail to exercise ordinary care if the items were forged or altered in such manner (as by unauthorized use of a facsimile machine, photocopy machine, computer equipment or otherwise) that a reasonable person would not detect the forgery or alteration.

If Correspondent fails to discover and report these or any other errors or discrepancies within the 30 calendar day period, Correspondent loses any and all rights it may have to assert the error or discrepancy against Wachovia, regardless of whether Wachovia has exercised ordinary care with respect to the transaction.

## Availability of Funds

Deposits are subject to verification as to dollar amount and number of items. Each deposited item including cash letter items, and each other instruction, order, electronic funds transfer or advice received for credit to the Account is credited subject to final payment. Wachovia decides in its sole discretion what process will be used to obtain final payment of an item and may use other banks in the process. Provisionality or finality of an electronic funds transfer will be governed by the rules of the funds transfer system used in executing such funds transfer.

## Setoff and Security Interest

If Correspondent ever owes Wachovia, acting in any capacity, money as a depositor, borrower, guarantor, judgment debtor or in connection with any trade payment or otherwise, including any obligation owed

to a financial institution acquired by Wachovia, and it becomes due, Wachovia has the right under the law (called "setoff") and under these Terms & Conditions to use the money from Correspondent's Account to pay the debt. If the debt and the Account are in different currencies, Correspondent agrees that Wachovia may use the funds in the Account to purchase the currency of the debt at the then spot rate to setoff. Wachovia may use the Account to pay the debt even if the withdrawal results in an interest penalty or the dishonor of checks. In the case of both the Correspondent's head office and its branch(es) maintaining deposits with Wachovia, both the Correspondent's head office and its branch(es) agree that Wachovia may use the money in their individual Accounts to satisfy any one of their obligations.

Correspondent grants Wachovia a continuing lien and security interest in and right of setoff against all of Correspondent's right, title and interest in and to all deposits and accounts with any Wachovia offices located anywhere in the world to secure payment of Correspondent's obligations to Wachovia acting in any capacity. The security interest and right of setoff granted by these Terms & Conditions are consensual and are in addition to any other security interest or right of setoff that Wachovia may have. To the extent any of the funds to be setoff are entitled to any exemption from execution, levy, attachment, garnishment, seizure or other legal or equitable process, then, to the maximum extent allowed by law, Correspondent hereby knowingly, affirmatively and unequivocally waives such exemption and consents to Wachovia's setoff against such funds as contemplated by these Terms & Conditions. Any pledge or assignment by Correspondent to third parties of deposits (including, without limitation, certificates of deposit) and other accounts for security purposes remains subject to Wachovia's right of setoff and security interest.

## Credit Interest

Regulation Q of the Federal Reserve Bank of the United States of America currently forbids payment of interest on demand deposits. Overnight investment of excess funds can be arranged within the parameters set forth below.

## Overnight Investment of Excess Funds

Under parameters set forth between Wachovia and Correspondent, excess funds may be invested offshore overnight in Eurodollars in Wachovia's Cayman Islands branch. Correspondent acknowledges that deposits in the Cayman Islands branch are not insured by the Federal Deposit Insurance Corporation; nor are the deposits insured by the Unted States Government, the United Kingdom Government or any agency thereof. Deposits are not payable nor guaranteed payable in the United States.

2.

## Debit Interest

Wachovia reserves the right to refuse to pay any item if it would result in an overdraft on the Account. However, Wachovia, acting in its sole discretion, may pay an item and create an overdraft and charge interest for such an overdraft in accordance with Wachovia's policy or in accordance with prior arrangements made between Wachovia and Correspondent.

Unless otherwise agreed in writing, Wachovia is under no obligation to permit any overdraft or to continue to permit any overdraft and may at any time require payment of an outstanding overdraft.

The amount of any overdraft which Wachovia permits to occur, i.e., the difference between the amount of the debit plus all applicable service charges or fees, if any, and the available balance in the Account, shall be due and payable immediately and interest shall accrue thereon until paid in full at a rate determined by Wachovia not to exceed the maximum lawful rate of interest. Correspondent authorizes Wachovia to charge the Account or any other accounts of Correspondent with Wachovia or to apply any other property of Correspondent in Wachovia's possession or in which Wachovia has a security interest to satisfy such overdraft and applicable interest.

## Payment Terms/Compensation Methods

*Rates and Payment Terms*
Payment for the services shall be at Wachovia's rates in effect from time to time as agreed upon by both Wachovia and Correspondent.

Correspondent's Account will be charged for services through Account Analysis, an automated system, which calculates charges for balance and fee-based account services. Payment will be made by Correspondent as mutually agreed, by either direct charges or compensating balances.

There are three basic options available to Correspondent in deciding how to compensate Wachovia for the services provided. These are described below:

*Balance Compensation*
Positive available balances, adjusted for reserves, would be valued at an earnings credit rate. The appropriate level of balances would be left in the Account by Correspondent at all times to cover the cost of services.

*Fee/Balance Compensation*
Wachovia will provide Correspondent with a comprehensive statement which includes volumes, prices and the total service

charge. The total service charge is reduced by the interest Wachovia earns on the available balances maintained in Correspondent's Account. This earnings credit is calculated monthly as follows:

$$\frac{(\text{Positive Available Balance} - \text{Reserve Requirement}) \times \text{Earnings Credit Rate} \times \text{\# of Days in Month}}{\text{\# of Days in a Year}}$$

The earnings credit rate utilized in the calculation is a managed rate determined by Wachovia. This rate is market driven and allows Correspondent to receive a high earnings credit to offset service cost. If the earnings credit is less than the total service charge, the shortfall is billed to Correspondent's Account.

*Fee Compensation*
Wachovia offers a fee option for all services provided. With this option, Correspondent may pay for all services on a monthly basis. Wachovia will debit the Account.

For all options, charges are detailed in the Account Analysis Statement, which Correspondent will receive on a monthly basis.

# Electronic Transfers

## Authorization and Security Procedures

All payment orders will be transmitted to Wachovia in compliance with Security Procedures as set forth below established between Wachovia and Correspondent. Correspondent will disclose Security Procedures only to its authorized representative(s) and establish internal controls to protect them from unauthorized disclosure. Wachovia will change Security Procedures immediately at Correspondent's request if Correspondent knows or suspects that they have become known by unauthorized persons. Wachovia will be entitled to presume that all payment orders which comply with Security Procedures are being transmitted by authorized representatives of Correspondent and Wachovia shall be entitled to rely thereon. If Correspondent or any of the Correspondent's authorized representatives have reason to believe that a Security Procedure may have been learned by an unauthorized person, Correspondent agrees to notify Wachovia immediately.

The following Security Procedures will be used to verify that Correspondent is the originator of a payment order, or other communication requesting an amendment, cancellation or other action regarding a payment order for the communications systems listed on the next page:

3.

- For SWIFT, the SWIFT Authentication procedure in accordance with the SWIFT User Handbook as amended from time to time.
- For telex, the Wachovia test key or Correspondent's test key, as applicable.
- For PC and Web-based systems, the security procedure set forth in the applicable service agreement or service description between Wachovia and Correspondent.

Any other security procedures, including signature verification, that are not adequate under Article 4A of the Uniform Commercial Code of the State of New York should not be utilized by Correspondent. However, if Wachovia agrees to process payment orders that Correspondent delivers to Wachovia without using approved security procedures, Wachovia will not bear any responsibility or liability for any losses arising from processing such payment orders.

## Payment Orders

Correspondent may instruct that Wachovia debit Correspondent's Account and transfer funds for its own account, to other financial institutions, or pay third parties at other domestic or foreign financial institutions. If Wachovia receives a payment order from Correspondent to debit another account other than the Correspondent's own, Wachovia presumes that Correspondent has obtained the authorization to debit the account from the legal account holder and shall debit the account mentioned in the payment order. Payment orders may be transmitted to Wachovia in accordance with the terms set forth herein. Correspondent shall select and advise Wachovia of the means Correspondent will use of communicating payment orders, which may include SWIFT, telex and Wachovia's PC and Web-based systems.

## Execution of Payment Orders

Upon receipt of a payment order from Correspondent authenticated in accordance with the procedures contained herein, Wachovia is authorized to debit Correspondent's Account and transfer or pay funds upon value date. Wachovia is authorized to implement any instructions, including amendments and cancellations of prior payment orders, received (in accordance with the Security Procedures) according to Correspondent's initial payment order. Duplicate payment orders initiated by Correspondent may be acted upon by Wachovia without responsibility. Acceptance of payment orders is at Wachovia's sole discretion. Wachovia requests that Correspondent does not send payment orders more than 10 calendar days in advance. Unless otherwise instructed by Correspondent, Wachovia may use any means, intermediaries or funds transfer systems which may have operating rules governing the execution of payment orders to effect the transfer as Wachovia, in its sole discretion, shall determine. Wachovia may handle payment orders received from Correspondent and other customers in any order selected by Wachovia. Unless otherwise agreed, Wachovia is not responsible for any losses arising

from an execution of a payment order by a certain time of its funds transfer business day or for any losses arising from a conditional payment order.

## Cancellation and Amendment of Payment Orders

When Wachovia accepts a payment order, it cannot thereafter be cancelled or amended. Nonetheless, if Correspondent requests cancellation or amendment of an accepted payment order, Wachovia will attempt to cancel or amend, but this may require the consent of third parties.

## Payments in Currency

For orders of transfer of U.S. Dollars to a foreign country, the beneficiary's bank may elect to pay the beneficiary in foreign currency at the beneficiary bank's rate of exchange.

Payment orders in foreign currency are done at Wachovia's then current selling or buying market rate for wire transfers. If a payment order is cancelled or amended, any refund of currency resulting from these shall be in U.S. Dollars. Refunds of foreign currency orders shall be calculated at Wachovia's then current selling or buying rate for U.S. Dollars. Correspondent bears all risk of loss due to fluctuation in the rate of exchange. No transfer fee shall be refunded. Correspondent is responsible for any charges related to cancellation or amendment of U.S. Dollar and foreign currency payment orders.

## Cut-off Times

For same day delivery, payment orders must be received before the cut-off time for funds transfers on a business day as established by Wachovia from time to time. Payment orders or related requests received after the cut-off time or on a non-business day will be treated as received by Wachovia on Wachovia's next funds transfer business day. Wachovia will make reasonable efforts to execute all payment orders received prior to the cut-off deadlines.

## Advice of Funds Transfers

All debits and credits to the Account will appear on the SWIFT, PC, web, telex, courier or mail statements.

Optionally, Correspondent may request Wachovia to provide separate advices of debits/credits via SWIFT MT900 and MT910 messages, telex or mail.

## ACH

For ACH users, please refer to the Addendum to these Terms & Conditions, provided to Correspondent as a service description.

4.

# Check Services

## Check Disbursement Services

Check Disbursements drawn on the Account will be debited on the date the item is presented to Wachovia. Wachovia encourages Correspondent to order checks through Wachovia. If Correspondent prefers to use its own vendor, Wachovia will provide Correspondent with detailed instructions on the required formats. A sample of the checks must be sent to Wachovia for inspection prior to their usage. Checks failing to pass inspection must be reprinted.

It is strongly recommended that the checks drawn on Wachovia be fully MICR (Magnetic Ink Character Recognition) encoded and include MICR-printed serial numbers. When checks are MICR encoded, serial numbers will appear on mail and electronic statements to assist Correspondent in identifying stolen or fraudulent items and in performing account reconciliation. Wachovia cannot be responsible for delays in posting of any item that is not fully MICR encoded.

## Advice of Issuance

Unless Correspondent and Wachovia have expressly agreed in writing that this requirement does not apply to Correspondent's Account, Wachovia requires that Correspondent promptly notify it whenever certain checks or drafts (described below) drawn on the Account are issued. If a failure to notify Wachovia of an issuance of check/draft results in a loss, such loss shall be borne by Correspondent. This notification is required for Correspondent's protection and in order to assist Wachovia in determining whether the specified checks or drafts drawn on the Account and presented for payment are forged or altered.

Correspondent shall send to Wachovia an Advice of Issuance either by authenticated SWIFT MT110 or tested telex for all checks issued in the amount of US$5,000 or greater. Each Advice of Issuance must include all the following specific details about the check or draft being issued by Correspondent:

· The date of the check or draft;
· The currency amount of the check or draft;
· The name of the payee (i.e., beneficiary) indicated on the check or draft; and
· The check number or draft number indicated on the check or draft.

Checks or other debit items drawn on the Account may be returned by Wachovia unpaid for any reason that such items are normally returned, for example, insufficient funds, uncollected funds, levies or attachments or for any other reason permitted by law and applicable regulations. Wachovia may also return a check or draft if no appropriate Advice of Issuance was received. In the case of insufficient or uncollected

funds, Wachovia may at its sole discretion return the item or elect to pay such items and overdraw the Account. Such overdrafts are subject to debit interest. Wachovia may pay drafts drawn on Correspondent's Account in any order Wachovia may choose.

## Stop Payments

Correspondent may ask Wachovia to stop payment on checks drawn on Correspondent's Account if Wachovia has not paid the item. Correspondent can request stop payments on checks drawn on the Account by authenticated SWIFT message or by tested telex. To be effective, the stop payment request must provide the exact amount of the check, check number, the exact date of check, payee and the full account number on which it is drawn. If the information Correspondent gives Wachovia is not correct or if Correspondent does not provide Wachovia reasonable information requested about the check, Wachovia will not be responsible to effect the stop payment.

Wachovia also cannot be responsible if Wachovia is not able to identify the proper check because: 1) Correspondent has issued more than one check with the same serial number or 2) Correspondent has generated its checks by computer or in any other manner which does not produce a MICR-encoded check number on the check.

Wachovia is entitled to a reasonable period of time within which to effect the stop payment order. For purposes of these Terms & Conditions, a "reasonable time" means until the end of the business day following the day on which the stop payment order was received by Wachovia. Wachovia is not liable for any checks paid against the Account until the stop payment is effected.

Stop payment orders are valid for six months unless Correspondent designates a longer period of time when placing the stop payment order. Correspondent may extend a stop payment order by notifying Wachovia via SWIFT or tested telex prior to the expiration of the existing stop payment order.

## USD Cash Letter

Wachovia agrees to receive USD Cash Letter shipments from Correspondent delivered to Wachovia at its designated offices. Items eligible for USD Cash Letter deposits include:

· U.S. Dollar commercial checks drawn on banks in the United States or Canada;
· U.S. Dollar bank drafts payable in the United States;
· Money orders issued by bank in the United States ;
· International Postal Money Orders issued by the U.S. Postal Service;
· U.S. Dollar Travelers Checks drawn on institutions in the United States.

5.

This service cannot be used to transport bank notes, coins or any type of negotiable securities. Items drawn on points outside of the United States should not be included in Cash Letter shipments, with the exception of U.S. dollar checks drawn on banks in Canada. All deposited items are subject to final payment.

*Availability of Funds*
For USD Cash Letters received prior to processing cut-off deadlines established by Wachovia, Correspondent will receive availability of all items in accordance with Wachovia's predetermined float availability assignments.

*Deposit Preparation*
Travelers Checks should be sorted into separate batches from all other acceptable items and deposited under separate deposit tickets. Items should be batched in lots of no more than 250 items with a separate tape listing for each. Batch totals should be listed on the pre-encoded Cash Letter deposit ticket, supplied by Wachovia; up to 3,000 checks may be deposited under one deposit ticket. An adding machine tape including batch amount total and account number must accompany each Cash Letter deposit. The total number of checks, for all batches, must also be recorded on the Cash Letter deposit ticket. Wachovia is not responsible for any loss related to cash letters for which deposit tickets are missing or improperly completed.

Correspondent must maintain appropriate records of the front and back of the check to enable prompt reconstruction of documents in the event of total loss in transit. Users of Wachovia's Cash Letter Service must be mindful that packages are exposed to the possibility of loss or damage.

Wachovia requires Correspondent to protect against unauthorized negotiation by properly endorsing all acceptable items specifically to the order of Wachovia Bank, National Association. The endorsement should be placed in black or dark ink on the back of each check so that the endorsement is wholly contained in the area 3.0 inches from the leading edge of the check and 1.5 inches from the trailing edge of the check. Optional information may be included provided the inclusion of such information does not interfere with the readability of the endorsement.

It is recommended that Correspondent include its account number and unique reference number within the endorsement of each check. If an alternate account number, other than the original depositing account, is to be used for return item processing, such instructions and the alternate account number must be included on the endorsement of each check. Wachovia shall use reasonable efforts to follow Correspondent's instructions in debiting returns to Correspondent's alternate account.

*Deliveries in Transit*
Unless prior arrangements have been made, Wachovia assumes no responsibility for Cash Letter packages with respect to pick-up or while en route to the designated check processing center. Wachovia is not responsible for the actions, omissions and/or negligence of the courier regarding failure to pick up the package or loss of the package or damage to its contents while in the possession of courier, or any late delivery or non-delivery of the package.

For the purpose of determining liabilities, Wachovia will not be deemed to have received or have any liability with respect to any item until the item has physically been received by Wachovia at the address of which we notify you from time to time.

If a Cash Letter shipment should be lost in transit between Correspondent and the receiving center for Wachovia, Wachovia agrees to provide Correspondent with provisional credit within 10 business days after its receipt of two legible copies (front and back) of each of the items which make up the lost remittances. Legible copies, properly indemnified, should be received by Wachovia not later than 45 calendar days after the original remittance(s) was/were lost. Wachovia will then, for a period of six months commencing on the date Correspondent's Account is provisionally credited, initiate an effort to collect on the copies of the original instruments. Correspondent will retain use of the full value of the remittances (subject to normal returns). At the end of the six month period, Wachovia will debit Correspondent's Account for the full value of any of the uncollected copies and will provide Correspondent with a list of all of the uncollected copies.

If Correspondent furnishes Wachovia with two legible copies of each item after the prescribed 45 calendar day period as described above, Wachovia, will attempt collection on the copies and pass credit due Correspondent on an item by item basis. After receipt of the copies, a collection effort will be made for a period of 60 calendar days at which time copies of files on any uncollected copies will be forwarded to Correspondent and Wachovia will close its files.

*Adjustments*
Cash Letters will be credited for the original amount. Errors, such as incorrectly listed or unlisted items, will be adjusted by debiting or crediting the Account under advice. Correspondent may elect to receive automatic SWIFT/telex advices for adjustments in any amount in addition to their inclusion on Correspondent's account statements.

Should an item be missing from Correspondent's remittance processed at Wachovia, Wachovia will notify Correspondent by telex or SWIFT. When an image of the missing item is available, Wachovia will credit Correspondent's Account and attempt to collect funds by entering the

image for collection and Wachovia will not charge the Correspondent's Account for a period of 60 calendar days after which Correspondent's Account will be charged pending any subsequent collection.

*Return Item Processing*
All items deposited by Correspondent with Wachovia which are returned unpaid for any reason will be returned to Correspondent as soon as possible. Wachovia will provide advice by SWIFT or telex of any unpaid item. Wachovia shall not redeposit any returned item under any circumstance in the Cash Letter Service. Correspondent's Account will be debited for the face value of the returned item, plus any applicable fees regardless of whether the Account has sufficient funds. Correspondent is liable for all returned items and drawee bank claims whether Correspondent's Account is open or has been closed.

## Final Credit Service

Wachovia provides a Final Credit Service under the terms of a separate agreement that can be provided to Correspondent upon request.

## Global Check Clearing

Wachovia provides Global Check Clearing services to act as Correspondent's clearing agent of foreign checks and drafts. Wachovia agrees to process foreign currency items drawn in the currency of the host country on a cash letter basis for USD equivalent credit to Correspondent's Account. Correspondent may also include USD items drawn on foreign countries in their Global Check Clearing deposit.

A list of currently eligible currencies and countries is provided at service implementation. The list of currencies accepted by Wachovia on a cash letter basis is subject to change without notice. Wachovia, at its sole discretion, may determine not to process any item submitted under the Global Check Clearing service.

Correspondent shall follow the deposit preparation procedures as defined under the "USD Cash Letter" section of this document using pre-printed Global Check Clearing deposit tickets that are provided by Wachovia.

Wachovia shall provide daily foreign exchange rates for each currency accepted under the Global Check Clearing service. Wachovia shall not be liable for the use of any incorrect rate listed on Correspondent's deposit ticket, or any fluctuation in the foreign exchange rate due to courier delays in transit of the deposit.

Any deposited item returned for any reason will be charged back to Correspondent's Account at Wachovia's selling rate of the foreign currency. Return items are subject to the rules and regulations of the country where the payor bank is located.

## USD and Foreign Check Collection

Items received for collection shall not be credited to Correspondent's Account unless and until Wachovia has received payment therefore unless otherwise agreed upon. Collection items may be returned in accordance with prevailing law. Wachovia shall, as agent for Correspondent, send such items through its customary collection channels. All fees associated with the collection of such items will be deducted from the proceeds of the transaction prior to credit to Correspondent's Account.

# Trade Services

## Letters of Credit

Wachovia provides letter of credit services in accordance with International Chamber of Commerce Publication Number 500, entitled: *Uniform Customs and Practice for Documentary Credits* (*"UCP500"*), and the International Standby Practices, International Chamber of Commerce Publication Number 590 or any subsequent revision or restatement thereof which may be adopted by the International Chamber of Commerce and accepted by Wachovia for use. Wachovia provides letter of credit services at its international processing centers in the U.S. and its overseas branch locations.

All letter of credit charges and associated assessments will be accumulated and charged to Correspondent's Account, unless otherwise indicated, on the date of payment/acceptance or at expiration. Communications will be via authenticated SWIFT, tested telex or original Letter of Credit mailed via courier authenticated by security procedures approved by Wachovia.

## Bank-to-Bank Reimbursements

Wachovia also provides reimbursement services in accordance with the International Chamber of Commerce Publication Number 525, entitled: *Uniform Rules for Bank to Bank Reimbursements under Documentary Credits* (*"URR525"*), or any subsequent revision or restatement thereof which may be adopted by the International Chamber of Commerce and accepted by Wachovia for use. Authorizations to reimburse (Authorizations) and requests for reimbursement (Claims) can be sent via authenticated SWIFT, tested telex, courier or through the mail.

Wachovia is not responsible for authenticating any Claim received via means other than authenticated SWIFT or tested telex. Correspondent agrees that Wachovia may act upon a Claim received by Wachovia via such other means (e.g. by mail, courier, unauthenticated SWIFT, untested telex) without any responsibility or liability on Wachovia's part for the authenticity of such Claim.

7.

## Documentary Collections

Wachovia acts as collecting agent for documentary collections. All documentary collections are subject to the International Chamber of Commerce Publication Number 522, entitled: *Uniform Rules for Collections ("URR522")*, or any subsequent revision or restatement thereof which may be as adopted by the International Chamber of Commerce and accepted by Wachovia for use.

Note: When any collection item is returned to Wachovia with a claim for refund because it bears an alteration, a forged or unauthorized endorsement or is otherwise not properly payable, Wachovia reserves the right to either charge Correspondent's Account for the amount of such claim or otherwise recover from Correspondent the amount Wachovia deems to be the liability due to such claim.

## Reimbursement Collections

Wachovia acts as agent for the purposes of presentation, tracing, and receipt of funds of documents and reimbursement claims under letters of credit in accordance with *URR525* and *URC522*.

Wachovia is not responsible for authenticating any reimbursement claim received via means other than authenticated SWIFT or tested telex. Correspondent agrees that Wachovia may act upon a claim received by Wachovia via such other means (e.g., by mail, unauthenticated SWIFT, untested telex) without any responsibility or liability on Wachovia's part for the authenticity of such claim.

## Other Cash Management Services

If Correspondent wishes to utilize Wachovia's other cash management services, Correspondent's selection and use of Wachovia's other cash management services are subject to these Terms & Conditions. The other cash management services are more fully described in separate service descriptions provided by Wachovia, both initially and at any time hereafter. Correspondent agrees that if any terms and conditions of the service descriptions conflict with the terms of these Terms & Conditions, the terms and conditions of the service description(s) shall control. Wachovia may change its operational procedures without amending these terms and conditions, upon notice to Correspondent. Wachovia has the right to modify services, require minimum balances or security, or terminate services in its sole discretion in the event that Correspondent breaches or fails to honor any provisions of these terms and conditions or there occurs a material adverse change in Correspondent's financial condition.

## Courier Services

Courier service is available to and from many countries to assure prompt and safe delivery in handling check remittances, US and foreign collections, and communications. Correspondent may prefer to make its own delivery arrangements.

Wachovia assumes no responsibility for packages with respect to pick-up or while en route including, but not limited to, security delays and customs clearance, or from Wachovia's designated operations center. Wachovia is not responsible for the actions, omissions and/or negligence of the courier with respect to failure to pick up the package or loss of the package or damage to its contents while in the possession of courier, or any late delivery or non-delivery of the package.

From time to time, it may be necessary for the courier to utilize alternative transportation methods. Wachovia, without liability on its part, reserves the right to authorize such action on a temporary basis without first consulting Correspondent and such action will not alter the limitation of Wachovia's liability as stated above.

## Miscellaneous

### Assignment of Terms & Conditions

These Terms & Conditions may be assigned by Wachovia in connection with a merger, deposit transfer or assumption, and to effect a setoff or realization upon collateral. Neither these Terms & Conditions nor an Account may be assigned or transferred by Correspondent, except in connection with a merger.

### Conflicts/Disputes Involving the Account

If Wachovia receives an actual or potential claim from a third party regarding Correspondent's Account, or conflicting instructions or claims from authorized signors, Wachovia may, at Wachovia's discretion and without liability to Correspondent, choose not to pay out any money from Correspondent's Account until Wachovia receives consistent instructions from all parties or a court order. Wachovia may also, without liability to Correspondent, close the Account and issue a check made payable to Correspondent and each authorized signor or Correspondent and each claimant, as Wachovia deems necessary, or Wachovia may interplead the funds into court. Correspondent agrees to reimburse Wachovia for any loss, costs or expenses including, without limitation, attorneys' reasonable fees and the costs of litigation (to the extent permitted by law) that Wachovia incurs as a result of any dispute involving Correspondent's Account, and Correspondent authorizes Wachovia to deduct any such loss, costs, or expenses from Correspondent's Account. This

obligation includes any dispute between Correspondent and Wachovia involving the Account and situations where Wachovia becomes involved in any dispute between Correspondent and an authorized signor, another joint owner or a third party claiming an interest in the Account. It also includes any situation where Correspondent, an authorized signor, another joint owner or a third party takes action with respect to the Account that causes Wachovia, in good faith, to seek the advice of counsel, whether or not Wachovia actually becomes involved in a dispute.

## Confidentiality

Wachovia shall treat Correspondent's information with confidence and discretion, but absent any agreement specifically to the contrary, Wachovia and its affiliates reserve the right to exchange among themselves information about Correspondent and its Accounts, to disclose such information to its service providers and to report any relevant information to credit reporting agencies. Wachovia may be required to disclose such information as required by legal and regulatory process or to prevent illegal or fraudulent activities.

Correspondent and, by signing any authorization documentation, all authorized signers and authorized representatives, authorize Wachovia to record telephone or other conversations between them and Wachovia. All decisions to record conversations, and to preserve or destroy such recordings, shall be within Wachovia's sole discretion. Wachovia shall incur no liability by reason of its recording or not recording such conversations, or preserving or destroying such recordings. The authority granted by this provision will survive the termination of these Terms & Conditions or the closing of an Account.

## Termination

Correspondent or Wachovia may close the Account and terminate these Terms & Conditions, and modify or terminate any service at any time without advance notice. Correspondent will receive any finally collected and available balance in its Account within a reasonable period of time after it is closed. Wachovia may return unpaid any items presented on a closed Account. Obligations which by their nature would continue beyond the termination of these Terms & Conditions shall survive the termination of these Terms & Conditions and closing of the Account.

## Applicable Laws

These Terms & Conditions shall be governed by and construed in accordance with the laws and regulations of the United States and the State of New York, including (without limitation) Articles 3, 4, 4A and 5 of the Uniform Commercial Code and New York CLS Dr & Cr § 151, which are all incorporated herein by reference and made a part hereof. Accounts which are inactive for a specified period of time may be subject to escheat under state law. Accounts are subject to

attachment, levy, seizure and garnishment law. Correspondent hereby irrevocably submits to the jurisdiction of the courts of the Borough of Manhattan, New York City, in the State of New York or the federal courts located therein over any action or proceeding arising out of or relating to these Terms & Conditions and irrevocably agrees that all claims in respect of such action or proceeding may be heard or determined in such courts. No legal proceeding may be commenced against Wachovia hereunder unless Correspondent has given Wachovia timely notice and such legal proceeding is commenced within two years after the closing date of the statement covering the period in which the claim arose.

Accounts are also governed by applicable U.S. Federal Reserve Bank rules and its Operating Circulars, the rules of clearing houses and similar associations to which Wachovia may belong, funds transfer system rules, publications of organizations such as (without limitation) the International Financial Services Association, and the International Chamber of Commerce and general commercial bank practices applicable to the services provided in connection with the Account.

## Compliance with Law

Wachovia is a bank organized and existing under the laws of the United States. It intends to comply with all laws and regulations of the United States applicable to it in any of its locations, including without limitation the USA PATRIOT Act, the Trading with the Enemies Act, the International Emergency Powers Act, regulations of the United States Department of the Treasury and the Office of Foreign Assets Control and in its foreign locations to comply with all applicable laws of the host country. Correspondent acknowledges that Wachovia's compliance with laws to which it is subject may affect the types of transactions Correspondent may conduct with or through Wachovia and may require that Correspondent provide or certify information to Wachovia.

**USA PATRIOT Act Notice:** To help the U.S. government fight the funding of terrorism and money laundering activities, U.S. Federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account.

## Waiver of Jury Trial

Correspondent and Wachovia each knowingly, voluntarily and intentionally waive any right that they may have to a trial by jury in any litigation in any way based upon, arising out of or related to these Terms & Conditions or the services provided hereunder or under any service description, or any course of conduct or course of dealing by the parties. This provision is a material inducement to Wachovia to provide the Account and the services referred to herein.

9.

## Invalidity of Contract Provisions

In the event any one or more of the provisions of these Terms & Conditions shall for any reason, including under any applicable statute or rule of law, be held to be invalid, illegal or unenforceable, the remaining provisions of these Terms & Conditions shall remain in full force and effect.

## Indemnification

Correspondent agrees to indemnify and hold Wachovia, its successors, assigns, correspondents, directors, officers, employees and agents harmless from and against any and all claims, losses, damages, liabilities and expenses of any nature, including legal expenses and attorneys fees: (1) suffered or incurred by Wachovia by reason of or pursuant to these Terms & Conditions, or the performance of services hereunder, (2) arising from any claim attributable to any act or omission taken by Wachovia based upon reliance on any individual indicated to be authorized to act on behalf of Correspondent in any document (or otherwise authorized by Correspondent) provided by Correspondent to Wachovia and (3) arising from any claim or demand based in whole or in part on an action or omission of Wachovia resulting from a request, direction or instruction from Correspondent. This indemnity will not be effective to relieve and indemnify Wachovia from and against its own gross negligence or willful misconduct. If Correspondent fails to pay any amount when due pursuant to any extension of credit granted in connection with Wachovia's delivery of any of the services described in these Terms & Conditions, unless the parties otherwise agree in writing, Correspondent shall pay interest on any overdue amount before and after judgment at a rate to be determined by Wachovia at its sole discretion.

## Liability

Wachovia's liability, if any, shall be limited to those actual damages which are the direct result of Wachovia's willful misconduct or gross negligence, which shall be determined in accordance with the commercial standards of the U.S. banking industry and applicable laws, rules and regulations. Wachovia is not responsible for any claim arising from non-payment of any item or for loss or delay in any clearing system unless it occurs as a result of willful misconduct or gross negligence by Wachovia or its employees. Damages with respect to electronic funds transfers will be limited to an amount equal to interest on the funds for each day the error or delay remains uncorrected at the applicable Federal Funds rate, i.e., the average of the Federal Funds rates published by the Federal Reserve Bank of New York for each of the calendar days for which interest is payable divided by 360, reduced by a percentage equal to Wachovia's reserve requirement on the Account. Wachovia may at its sole discretion

substitute in lieu of interest an "as of" adjustment method of compensation, i.e., recompute Correspondent's balances for account analysis purposes as if the error or delay had not occurred. If Wachovia is unable to recover all or any part of funds it erroneously transferred from a transferee who has no claim to them, Wachovia's liability will not exceed the amount of funds which Wachovia is unable to recover plus interest as aforesaid. Wachovia shall be subrogated to all rights of Correspondent against third parties and to any rights of a transferee against Correspondent in connection with any claim. In no event shall Wachovia be liable regardless of whether any claim is based on contract or tort, for any consequential, special or indirect losses or damages Correspondent may incur or suffer arising from or in connection with these Terms & Conditions, whether or not the likelihood or possibility of such losses or damages was known to Wachovia in advance.

Wachovia shall not be responsible for any loss or damage resulting from Acts of God, war, riots, terrorism, strikes, civil or industrial disturbance, malfunctions of equipment or other cause beyond Wachovia's control.

## Waiver

Wachovia may waive any of these Terms & Conditions but any such waiver shall apply only to the term or condition waived and only to that occasion and shall not constitute a waiver of any other term or condition.

## Legal Process

Correspondent irrevocably consents to the service of process by personal delivery or overnight courier or registered or certified airmail, postage prepaid, of copies of the summons and complaint or other process (which need be in the English language) to its office shown on its most recent account statement or to its agent for service of process in the United States. Nothing herein affects the right to serve process in any other manner permitted by law.

## Correspondent's Representations, Warranties and Covenants

Correspondent represents and warrants to Wachovia that: (1) All information, including financial information, whenever provided by Correspondent to Wachovia, shall be true, correct and complete. Information relating to Correspondent's financial condition accurately reflects Correspondent's financial condition as of the date(s) thereof; (2) Correspondent is not insolvent within the meaning of 11 USC Section 101 (32); (3) Correspondent is in compliance with all federal, state and local laws, including, all laws of the United States and any state thereof applicable to Correspondent's properties, operations,

10.

business and finances; (4) Correspondent is duly organized and in good standing under the laws of the jurisdiction of Correspondent's organization, and Correspondent has all powers, licenses, authorizations and approvals to operate Correspondent's business as now conducted;

(5) Correspondent will promptly notify Wachovia of the existence of any condition or event which may constitute a breach of or default under these Terms & Conditions; (6) Correspondent will promptly notify Wachovia in writing of (a) any change in Correspondent's financial condition or business; (b) any change in Correspondent's name, address or business structure, ownership or organization; and (c) any material litigation or regulatory action affecting Correspondent; (7) Upon Wachovia's request therefore, Correspondent will promptly deliver to Wachovia true and correct copies of Correspondent's annual report and such other information regarding Correspondent's business affairs and operations including, but not limited to, income statements, balance sheets and statements of cash flows.

## Entire Terms & Conditions

These Terms & Conditions and the documents to which it refers constitute Correspondent's and Wachovia's entire agreement and understanding and supersede all prior terms and conditions. These Terms & Conditions may not be changed orally.

## Use of Correspondent's Account

Correspondent's use of its Account with Wachovia shall constitute Correspondent's agreement to be bound by these Terms & Conditions.

## US Legal Holidays

January 1
New Year's Day
**January (Third Monday)**
Martin Luther King Day
**February (Third Monday)**
President's Day
**May (Last Monday)**
Memorial Day
**July 4**
Independence Day
**September (First Monday)**
Labor Day
**October (Second Monday)**
Columbus Day
**November 11**
Veteran's Day
**November (Fourth Thursday)**
Thanksgiving Day
**December 25**
Christmas Day

Business day means a calendar day other than a Saturday or a Sunday, or the dates identified as U.S. Legal Holidays above or any other day on which a U.S. National Bank is authorized or directed to close. If January 1, July 4, November 11 or December 25 falls on a Sunday, the next Monday is not a business day. If January 1 or December 25 falls on a Saturday, the preceding Friday is not a business day.

11.



Solutions
答案
ព្រតិបត្តិការ
해결
Lösung
Soluções
คำตอบ
Soluciones
أجوبة
Soluzioni
פתרונות
Çözümler
समाधान
Solusi
हल



WACHOVIA

©2007 Wachovia Corporation 076669