Scott S. McKessy (SM-5479)
Casey D. Laffey (CL-1483)
REED SMITH LLP
599 Lexington Avenue
New York, New York 10022
Tel. (212) 521-5400
Fax. (212) 521-5450
Attorneys for Plaintiff
Wachovia Bank, National Association

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

WACHOVIA BANK, National Association,            :
                                                :
                            Plaintiff,          :          07 Civ. 11230 (BSJ)(RLE)
                                                :
              - against -                       :          **DECLARATION**
                                                :          **OF SCOTT S. MCKESSY**
CASA DE CAMBIO MAJAPARA S.A. de C.V. a/k/a       :
MAJAPARA CASA DE CAMBIO S.A. de C.V.,           :
                                                :
                            Defendant.          :
---------------------------------------------------------------X

I, SCOTT S. MCKESSY, hereby declare under penalty of perjury, pursuant to 28

U.S.C. § 1746, that the following is true and correct:

    1.    I am a member of the law firm of Reed Smith LLP, attorneys for

Wachovia Bank, National Association ("Wachovia"), the plaintiff in this action. I submit

this Declaration in support of Wachovia's instant application for an order declaring that

the Order to Show Cause entered by this Court on December 14, 2007 (a copy of which is

annexed hereto as Exhibit A) be deemed to apply to the entity transacting business as

Casa de Cambio Majapara S.A. de C.V.

    2.    On Friday, December 14, 2007, Wachovia commenced the within action

against the entity that transacts business as Majapara Casa de Cambio S.V. de C.V.

While all of the wire transfer confirmations relating to underlying currency exchange at

issue in this case (annexed to Wachovia's pleadings as Exhibit D)reflect the counterparty

to that transaction as Majapara Casa de Cambio S.V. de C.V., the true corporate name of

the counterparty is Casa de Cambio Majapara S.V. de C.V.   This entity provided

Wachovia with a Mexican Identification Number of:  03 11181997.

3.    So that there is no misunderstanding with any of the third-party banks that

may be in possession of any assets belonging to the defendant, and so there is no

misunderstanding with the defendant itself, Wachovia respectfully requests that the Order

to Show Cause, dated December 14, 2007, be deemed to apply to the entity known as

Casa de Cambio Majapara S.A. de C.V. a/k/a Majapara Casa de Cambio S.A. de C.V.

4.    Wachovia has amended its complaint and the caption of this action to

reflect that the defendant is Casa de Cambio Majapara S.A. de C.V. a/k/a Majapara Casa

de Cambio S.A. de C.V.  Attached hereto as Exhibit B is a copy of the Amended

Complaint which amends the caption and defines Majapara so as to include Casa de

Cambio de S.A. de C.V. a/k/a Majapara Casa de Cambio S.A. de C.V.

5.    Wachovia is also commencing an action in Illinois and seeking to attach

property Majapara is believed to have there as well.

6.    No prior application for the relief requested herein has been made to any

court.


Executed this 17h day of December, 2007.

_____
SCOTT S. MCKESSY

2

# EXHIBIT A

JUDGE JONES

Scott S. McKessy (SM-5479)
Casey D. Laffey (CL-1483)
REED SMITH LLP
599 Lexington Avenue
New York, New York 10022
Tel. (212) 521-5400
Fax. (212) 521-5450
Attorneys for Plaintiff
Wachovia Bank, National Association

~~JONES~~

## 07 CV 11230

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

WACHOVIA BANK, National Association,      :

                Plaintiff,      :

    - against -      :

MAJAPARA CASA DE CAMBIO S.A. de C.V.,      :

              Defendants.      :

------------------------------------------------------------X

Civil Action No. ____

**ORDER TO SHOW CAUSE**

      Upon reading and filing the Declaration of Carlos A. Perez, dated December 13,

2007, the Declaration of Scott S. McKessy, dated December 13, 2007, and the exhibits

annexed thereto, the accompanying Memorandum of Law, the Complaint dated

December 14, 2007, and all the prior pleadings and proceedings had herein, and there

having been no prior motion for the relief requested herein; it is hereby

      **ORDERED**, that defendant Majapara Casa De Cambio S.A. de C.V.

("Majapara") show cause before this Court, in Courtroom *18B* at the United States

Courthouse, 500 Pearl Street, New York, New York 10007, on the *21* day of

December, 2007, at *10:00 am*, why an Order of attachment should not be entered in this

action, pursuant to Fed. R. Civ. P. 64, directing the United States Marshal, or other

appropriate Federal or State Law Enforcement Agent, to levy within his or her

jurisdiction upon such property in which Majapara has an interest and upon such debts

owing to Majapara as will satisfy $24,711,845.00, plus interest, costs, and the Marshal's

fees and expenses, including but not limited to, the monies being maintained and to be

maintained at the following bank accounts:

> Citibank, N.A.
> 399 Park Avenue
> New York, NY 10043
> (account number 36254838)
>
> JP Morgan Chase Bank, N.A.
> 270 Park Avenue
> New York, NY 10017
> (account number unknown)
>
> Bayerische Hypo- und Vereinsbank, AG
> 150 East 42nd St.
> New York, NY 10017
> (account number unknown)

along with such other and further relief as the Court may deem just, proper, or equitable.

**IT IS FURTHER ORDERED THAT,** pending the hearing and determination of

this motion, Majapara, shall be and hereby is enjoined and restrained from transferring,

selling, pledging, assigning or otherwise disposing of any of its assets.

**IT IS FURTHER ORDERED THAT,** Majapara shall produce a detailed list of

the aforementioned assets and debts, including a description and location of each asset

and debt owed to it, to plaintiff's counsel no later than three (3) business days after

service of this Order upon Majapara as set forth below.

**IT IS FURTHER ORDERED THAT,** pursuant to Fed. R. Civ. P. 64 and CPLR

§ 6212(b), Plaintiff shall be required to post a bond, security or undertaking in the

amount of $ _1,000,000,_ within _7_ days of execution of this Order.

_(one million dollars)_

**IT IS FURTHER ORDERED THAT,** service of a copy of this Order along with all the supporting papers via overnight mail and certified mail upon Majapara at its office located at Grecia No. 64, Colonia San Alvaro, Mexico City, C.P. 02090, Mexico, on or before December 15, 2007, be deemed good and sufficient service thereof.

**IT IS FURTHER ORDERED THAT,** Majapara shall serve answering papers, if any, so as to be received by plaintiff's counsel, Reed Smith LLP, 599 Lexington Avenue, New York, New York 10022, Attention: Scott S. McKessy, Esq. on or before December 18, 2007, by 3:00 p.m.

**IT IS FURTHER ORDERED THAT,** Plaintiff shall serve reply papers, if any, on or before December 19, 2007 by 5:00 pm upon Majapara.

Dated: New York, New York
December 14, 2007

ISSUED: _____

SO ORDERED:

_____
United States District Judge

# EXHIBIT B

Scott S. McKessy (SM-5479)
Casey Laffey (CL-1483)
Reed Smith LLP
599 Lexington Avenue
New York, New York 10022
Tel. (212) 521-5400
Fax. (212) 521-5450

Attorneys for Plaintiff Wachovia Bank, National Association

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

WACHOVIA BANK, NATIONAL ASSOCIATION,

                    Plaintiff,

     - against -

CASA DE CAMBIO MAJAPARA S.A. de C.V a/k/a
MAJAPARA CASA DE CAMBIO S.A. de C.V.,

                  Defendant.

-------------------------------------------------------------------X

07 Civ. 11230 (BSJ)(RLE)

**AMENDED COMPLAINT**

      Plaintiff, Wachovia Bank, National Association ("Wachovia"), by its attorneys, Reed

Smith LLP, as and for its complaint against the defendant Case de Cambio Majapara S.A. de

C.V. a/k/a Majapara Casa de Cambio S.A. de C.V. ("Majapara"), alleges as follows:

## PRELIMINARY STATEMENT

     1.     This action arises from Majapara's misappropriation of over $38 million (US$) of

Wachovia's money relating to a series of foreign exchange spot transactions between the parties.

Foreign exchange spot transactions, due to their frequency, the speed at which the transactions

are agreed and closed, and the manner in which funds are simultaneously exchanged, are

founded upon trust.  Majapara, however, abused that trust -- a trust that was established through

years of currency trading with Wachovia -- to plunder more than $38 Million from Wachovia.

And this is not a mere renege on a multi-million dollar transaction wherein Majapara returned

Wachovia's property when it realized it could not complete the foreign currency exchange.

Subsequent conversations with Majapara make apparent that it never intended to honor its commitments but, instead, had decided to wrongfully keep Wachovia's money and abscond with it. In these after-the-fact conversations, Majapara admitted to Wachovia that it was illiquid, that it had engaged in illicit activities in relation to its foreign exchange transactions and threatened that, if Wachovia took any steps to enforce its rights, Wachovia's judgment would be uncollectible. Through this action, Wachovia seeks a judgment against Majapara, in an amount not less than $24,711,845.00, plus prejudgment interest.

## VENUE/JURISDICTION

2.    This Court has personal jurisdiction over Majapara pursuant to CPLR §§ 301 and 302(a) as Majapara has been transacting business in this State since 2000, the transactions being sued upon herein occurred in the State of New York, and defendant breached the parties' agreement here in New York by failing to wire the required funds, as agreed, to Wachovia's New York account. Defendant has also contractually agreed to be sued in this jurisdiction.

3.    Venue in this district is proper under 28 U.S.C. § 1391(a).

4.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because this action involves a controversy that exceeds $75,000, exclusive of interests and costs, and involves a citizen of a State and a citizen of a foreign state.

## PARTIES

5.    Wachovia is a national banking association, organized under the laws of the United States, with its principal place of business in Charlotte, North Carolina. Wachovia maintains offices in New York.

6.    Upon information and belief, Majapara is a Mexican corporation with its principal place of business in Mexico City, Mexico.

## FACTS COMMON TO ALL COUNTS

### The Majapara Relationship With Wachovia

7.      In the late 1990's, Majapara and First Union National Bank ("First Union"), a predecessor to Wachovia, agreed to enter into foreign exchange transactions together.  In these transactions, Majapara would agree to purchase from First Union a certain amount of one currency in exchange for Majapara selling to First Union a certain amount of another currency at the applicable exchange rate.

8.      In order to facilitate Majapara and First Union entering into these currency exchange transactions, on or about April 6, 2000, Majapara and First Union entered into a First Union Online FX Subscription Agreement (the "FX Subscription Agreement"), a copy of which is attached hereto as Exhibit A.  Pursuant to the FX Subscription Agreement, Majapara was permitted to execute foreign exchange transactions electronically with First Union through First Union's foreign exchange website.  This, however, was not the exclusive method for the parties to enter into these foreign exchange spot transactions.  This FX Subscription Agreement is governed by New York law.  See Exhibit A, ¶ 6.

9.      Effective April 1, 2002, Wachovia merged into and under the charter of First Union with the resulting title of Wachovia Bank, National Association.  As a result of the merger, First Union changed its name to Wachovia Bank, National Association.

10.     In some of the foreign exchange transactions between Majapara and Wachovia, Wachovia would deliver currency to Majapara on the same day that Majapara transferred another currency into a Majapara account held at Wachovia's New York Branch ("Majapara NY Account").  Wachovia would then debit the currency from the Majapara NY Account.  The authorization for this procedure was documented in a December 10, 2003 letter (in Spanish)

from Majapara to Wachovia Bank, a copy of which is attached as Exhibit B, which reads (as translated into English): "In relation to the transactions done with yourselves through Online FX; we authorize you to debit and credit our account number NY2000192304201 held with yourselves." In or about March 2006, Majapara signed a Debit and Netting Agreement that gave Wachovia the same authority to credit and debit the same Majapara NY Account held at Wachovia's New York Branch. A copy of this document is attached as Exhibit C.

**The Foreign Exchange Transactions At Issue**

11.    On or about December 5, 2007, Majapara and Wachovia agreed to a series of seven (7) transactions, all of which were to settle on December 7, 2007, whereby Wachovia would deliver an aggregate 26 million Euros to Majapara and Majapara would deliver an aggregate $38,132,700 to Wachovia. In a departure from the process described in paragraph 10 above, on these transactions, Majapara agreed to transfer dollars directly to a Wachovia account located in New York. Six (6) of the transactions were executed on Wachovia's foreign exchange internet website. One (1) of the transactions was executed over the telephone. Copies of the confirmations for these transactions are attached hereto as Exhibit D.

12.    Pursuant to these seven (7) foreign exchange agreements, on December 7, 2007, Wachovia delivered 26 million Euros to Majapara. Majapara failed to deliver the agreed upon $38,132,700.00 to Wachovia, as required, on December 7, 2007.

13.    On or about December 11, 2007, the General Director of Majapara admitted that Majapara had been obligated to provide the agreed upon currency to Wachovia.

14.    Wachovia was able to secure $13,420,155, which was in Majapara's accounts at Wachovia, but has not been able to recover the remaining amount Wachovia is owed. Some of the amount recovered represents conditional credit that may be subject to reduction by reason of

return of the items (in this case, checks) for which this credit was given (see Paragraph 15 below).

15.    Majapara also maintains five (5) U.S. dollar accounts at Wachovia.  As to each of these accounts, Wachovia has contingent residual exposure to cover returned items in the federal check clearing program.  Majapara is obligated to reimburse Wachovia for these amounts, but has now stated it is unable to and will not meet its financial obligations.  This liability has averaged $3.3 million per month for the last several months.

16.    By opening an account at Wachovia, Majapara agreed to Wachovia's Terms & Conditions for Global Financial Institutions, which, under its terms, is governed by and construed in accordance with the laws of New York and pursuant to which, Majapara agreed to submit to the jurisdiction of the courts located in Manhattan, New York.

## COUNT I

## (Breach of Contract)

17.    Plaintiff realleges and reincorporates the allegations in Paragraphs 1 through 16.

18.    As set forth above, Wachovia entered into a series of currency exchange agreements with Majapara.

19.    Majapara breached those agreements by failing to deliver the currency as agreed upon by the parties.

20.    Wachovia has fulfilled its obligations under the agreements.

21.    As a result of Majapara's breaches, Wachovia has suffered damage in the amount of not less than $24,711,845.00, plus interest.

## COUNT II

### (Promissory Estoppel – Alternate Count)

22.     Plaintiff realleges and reincorporates the allegations in Paragraphs 1 through 16.

23.     In the event it is found that no oral or written contract existed between Majapara and Wachovia in relation to the seven (7) foreign exchange spot transactions at issue here, equity requires Majapara to pay Wachovia not less than $24,711,845.00 in return for accepting currency from Wachovia.

24.     Majapara promised to deliver certain currency to Wachovia in return for Wachovia delivering certain currency to Majapara.

25.     In reliance on Majapara's agreement to deliver certain currency to Wachovia, Wachovia delivered approximately $38 million worth of currency to Majapara.

26.     Wachovia has requested the funds from Majapara.

27.     To date Majapara has not provided the required currency to Wachovia.

28.     Wachovia, however, has been able to obtain certain Majapara funds and offset the amount owed by $13,420,155.00 (subject to reduction for the reasons set forth in Paragraph 14 of the recitals above).

29.     Wachovia has no adequate remedy at law.

30.     As a result, Majapara has been unjustly enriched to the detriment of Wachovia.

## COUNT III

### (Unjust Enrichment – Alternate Count)

31.     Plaintiff realleges and reincorporates the allegations in Paragraphs 1 through 16.

32.     In the event it is found that no oral or written contract existed between Majapara and Wachovia in relation to the seven (7) foreign exchange transactions at issue here, equity

would still require Majapara to pay Wachovia an amount not less than $24,711,845.00 in return for accepting currency from Wachovia.

33.    Majapara promised to deliver certain currency to Wachovia in return for Wachovia delivering certain currency to Majapara.

34.    In reliance on Majapara's agreement to deliver certain currency to Wachovia, Wachovia delivered approximately $38 million worth of currency to Majapara.

35.    Majapara did not deliver any currency to Wachovia.

36.    Wachovia, however, has been able to obtain certain Majapara funds and offset the amount owed by $13,420,155.00 (subject to reduction for the reasons set forth in Paragraph 14 of the recitals above).

37.    Wachovia requested that Majapara deliver the currency it is owed.

38.    To date, Majapara has neither delivered the required currency to Wachovia, nor returned return the currency Wachovia sent to it.

39.    Majapara has unjustly retained this benefit to the detriment of Wachovia.

40.    Majapara's retention of this benefit violates fundamental principles of justice, equity and good conscience.

41.    Wachovia has no adequate remedy at law.

## COUNT IV

### (Fraud)

42.    Plaintiff realleges and reincorporates the allegations in Paragraphs 1 through 16.

43.    As set forth above, on or about December 5, 2007 Majapara and Wachovia entered into a series of seven (7) currency exchange transactions.

44.     Pursuant to the parties' agreement, in exchange for the receipt of 26 million Euros from Wachovia, Majapara agreed to deliver $38,132,700 to Wachovia.

45.     Upon information and belief, at the time Majapara entered into the December 5, 2007 agreement it knew it was illiquid and insolvent and incapable of performing its obligations under the parties' agreement.

46.     Notwithstanding its knowledge, Majapara represented to Wachovia that it would deliver $38,132,700.00 (US$) to Wachovia to settle the transactions.  Upon information and belief, at the time of the transaction, Majapara knew it would not deliver the required currency and was acting under a present intent to deceive Wachovia and abscond with its funds.  Its representations to Wachovia were false and materially misleading.

47.     Majapara's fraudulent intent was confirmed in conversations Wachovia subsequently had with representatives of Majapara.

48.     For example, on or about December 13, 2007, Carlos A. Perez, a Managing Director of Wachovia, spoke with Jorge Ortiz, the Chairman and CEO of Majapara by telephone, and Mr. Ortiz acknowledged that Majapara, prior to settlement of the transactions, knew that it was experiencing "a liquidity crisis."

49.     When Mr. Perez confronted Mr. Ortiz concerning the transaction and the illegality of Majapara's actions, Mr. Ortiz responded, "I recognize that I have done something that is not permitted."

50.     Overall, due to Majapara's "liquidity crisis" and other impermissible activities relating to its currency transactions, Majapara did not have sufficient funds to complete the exchange with Wachovia.  Majapara nonetheless accepted Wachovia's funds, knowing that it would be incapable of repaying the funds to Wachovia.

51.     Majapara then claimed to have used some or all of the Wachovia funds to engage in impermissible lending transactions and otherwise dissipated the assets received from Wachovia, all the while failing to fulfill its immediate obligations to transfer over $38 million to Wachovia.

52.     Wachovia entered into the transactions and delivered 26 million Euros to Majapara in reasonable reliance upon Majapara's representations that it was going to deliver the requisite currency.

53.     As a result of Majapara's fraud, Wachovia has been damaged in an amount to be determined at trial, but not less than $24,711,845.00.

## COUNT V

### (Breach of Contract/Anticipatory Breach)

54.     Plaintiff realleges and reincorporates the allegations in Paragraphs 1 through 16.

55.     As set forth above, Majapara also maintains five (5) US dollar accounts at Wachovia. Under these accounts, Wachovia has contingent residual exposure to cover returned items in the federal check clearing program -- this contingent liability is a continuing concern.  In this regard, Wachovia is entitled to immediate reimbursement from Majapara for the amounts Wachovia is required to pay out.

56.     Over the last several months, this liability has averaged $3.3 million per month.

57.     So far this month, Wachovia has already had to cover certain residual liabilities for which Majapara, in breach of its agreements with Wachovia, has not reimbursed Wachovia. As a result, Majapara breached the parties' agreement and is indebted to Wachovia.

58.     Additionally, Majapara has already stated to Wachovia that it is illiquid and unable to satisfy its obligations owed to Wachovia.  Accordingly, Majapara has anticipatorily

breached its agreements with Wachovia by stating it will not be immediately reimbursing Wachovia for these obligations now or when they come due.

59.    Wachovia has performed all of its obligations under its agreements with Majapara.

60.    Consequently, Wachovia has been damaged by Majapara's breach of the parties' agreement and will continue to be damaged by Majapara's anticipatory breach of the parties' agreement in an amount to be determined at trial.

WHEREFORE, Plaintiff demands judgment as follows:

(i)    On the First, Second, Third, and Fourth Causes of Action, monetary damages in an amount to be determined at trial, but not less than $24,711,845.00, plus prejudgment interest;

(ii)    On the Fifth Cause of Action, monetary damages in an amount to be determined at trial, plus prejudgment interest;

(iii)    An award of costs, expenses and attorneys fees attendant to this action; and

(iii)    Such other further and different relief as this Court deems just and proper.

Dated:    New York, New York
        December 17, 2007

REED SMITH LLP

By: _____
    Scott S. McKessy (SM-5479)
    Casey Laffey (CL-1483)
    599 Lexington Avenue
    New York, NY 10022
    (212) 521-5400

*Attorneys for Plaintiff*
*Wachovia Bank, National Association*

# **<u>Exhibit A</u>**



# FIRST UNION ONLINE FX SUBSCRIPTION AGREEMENT

This First Union Online FX Subscription Agreement ("*Agreement*") sets forth the terms and conditions on which the party identified on the signature page hereof as the Subscriber ("*Subscriber*") may execute foreign exchange transactions with First Union National Bank ("*FUNB*") over the Internet ("*Online Transactions*") through FUNB's foreign exchange website currently operating at http://www.firstunion.com/capitalmarkets/fx ("*FX Website*"). This Agreement is not intended to preclude the parties from entering into foreign exchange transactions with each other in any other manner. Subject to the terms and conditions of this Agreement, Subscriber and FUNB agree as follows:

## 1. Internet Access

In order for Subscriber to communicate with FUNB through the FX Website, Subscriber shall be responsible for (i) arranging its own access to the Internet through such providers of telephonic, wireless, and/or Internet access services as it deems necessary or desirable, and (ii) all costs and expenses associated with such services, including connection charges. FUNB shall not be responsible for any acts or omissions of any of such Subscriber's service providers in the course of transmitting, receiving, handling or storing communications between Subscriber and FUNB or otherwise.

## 2. FX Website Access

(a) In order for Subscriber to communicate with FUNB through the FX Website, one or more of Subscriber's officers or employees designated by Subscriber (each, a "*User*") will be issued a unique digital certificate ("*Digital Certificate*") to be stored on the web browser of a personal computer intended to be used by the User to carryout his/her functions for Subscriber, together with a User identification number ("*ID*") and a unique personal password ("*Password*"). Each Digital Certificate is unique to the User, and if a User wishes to use more than one computer or browser to access the FX Website, the User must request an additional Digital Certificate for each such computer or browser. FUNB reserves the right to limit the number of Digital Certificates issued to Subscriber and its Users. Subscriber agrees that, before any User is provided with any Digital Certificate, that User will have (i) requested from the First Union National Bank Certificate Authority ("FunbCA"), and completed the process necessary to receive, a Digital Certificate (including the use of "shared secrets" with FUNB and any other security measures which the FunbCA may require to validate the User's identity) and (ii) accepted the terms and conditions of the Digital Certificate Documents. "*Digital Certificate Documents*" means the First Union National Bank Certificate Authority Subscriber Agreement ("FunbCA Subscriber Agreement"), which is presented to and agreed to by User during the online Digital Certificate application process, and each document that the FunbCA Subscriber Agreement incorporates by reference. The Digital Certificate Documents will govern each Digital Certificate and its use and be binding upon the Subscriber and that User in his/her individual capacity, and for that purpose the term "Subscriber" in the FunbCA Subscriber Agreement shall be deemed to refer to each of the Subscriber and the User, respectively. This Agreement is the "Master Agreement" referred to in the FunbCA Subscriber Agreement. Nothing in this Agreement is intended to supersede, modify, limit, or restrict anything contained in the Digital Certificate Documents, and in the event of any inconsistency between the provisions of this Agreement relating to the Digital Certificate and the provisions of the Digital Certificate Documents, the FunbCA Subscriber Agreement will prevail. The rights and obligations of Subscriber and FUNB under this Agreement and the Online Transactions (or any other transactions between the parties) are not conditioned on either party's compliance with anything contained in the Digital Certificate Documents.

(b) Subscriber acknowledges that, after a User has received a Digital Certificate, Password and ID from the FunbCA, anyone who uses the Digital Certificate belonging to that User together with that User's Password and ID will be able to access and use the FX Website on behalf of Subscriber as contemplated by this Agreement. Accordingly, Subscriber shall not allow anyone to use a Digital Certificate, Password or ID belonging to a User other than the User who has received the same from the FunbCA. Subscriber hereby authorizes FUNB to deliver a temporary password to each User for the initial login to the FX Website for the purposes of applying for a Digital Certificate and to establish a permanent Password and ID. The Subscriber shall inform FUNB immediately when a User is no longer authorized to use the FX Website. Subscriber shall be solely responsible for controlling, and preventing any unauthorized use of, each Digital Certificate, Password and ID, and Subscriber shall be liable for any and all Online Transactions and account debits, credits and transfers resulting from, or occurring in response to, any electronic transmission, instruction, signal, entry or other communication to FUNB through the FX Website made using any Digital Certificate, Password and ID, whether or not it was authorized by Subscriber, was initiated by a User or resulted from an error in entering any information or command, and all such communications shall be deemed to have been sent by Subscriber for purposes of this Agreement.

(c) FUNB reserves the right, at any time and from time to time, for any reason or no reason, and without notice, to upgrade, modify, suspend, discontinue, or terminate the FX Website or to revoke any Digital Certificate, Password or ID, or to deny Subscriber and its Users access to the FX Website or any part thereof, and the respective rights and obligations of Subscriber and FUNB under the Online Transactions (or any other transactions between the parties) shall not be impaired or otherwise affected by such action. In addition, FUNB may require Subscriber to replace or erase any Digital Certificate or change any Password or ID at any time.

1

### 3. Procedures for Entering into Online Transactions

(a) To initiate any Online Transaction with FUNB through the FX Website, Subscriber must make certain entries regarding the financial particulars of the proposed Online Transaction on the appropriate screen displays of the FX Website in accordance with instructions provided in FUNB's "Online FX User's Guide", including currency codes, currency amounts, and the side of the currency exchange Subscriber is taking. It shall be the responsibility of Subscriber that each User will have received, read and understood the Online FX User's Guide prior to that User using the FX Website. FUNB reserves the right to revise or replace the Online FX User's Guide without Subscriber's consent by delivering to Subscriber a copy of the revision or replacement.

(b) When the requisite entries have been made to initiate an Online Transaction, then the FX Website will display an exchange rate for the proposed Online Transaction ("*Exchange Rate*"), subject to a time-out function. Subscriber may accept or reject the Exchange Rate by making the appropriate entry on the FX Website before it is timed-out, or otherwise reject the Exchange Rate by allowing it to be timed-out. By entering its acceptance of the Exchange Rate before it is timed-out, Subscriber will be deemed to have made an offer to FUNB for the proposed Online Transaction at that Exchange Rate. Upon FUNB's issuance through the FX Website of a deal confirmation number for that Online Transaction, FUNB will be deemed to have accepted such offer and a contract for such Online Transaction shall be deemed to have been entered into by Subscriber and FUNB. If FUNB does not issue a confirmation number for the proposed Online Transaction through the FX Website, Subscriber's offer to enter into the proposed Online Transaction shall be deemed rejected and no contract for the proposed Online Transaction will have been formed. The FX Website Records shall be conclusive and binding on the parties with respect to the foregoing. "*FX Website Records*" means the books and records of FUNB (in electronic form or otherwise) as they relate to the FX Website, including any stored on or generated by any computer system, hardware or software or any other system, facility or service on which the FX Website directly or indirectly operates ("*Operating System*"), whether such Operating System is owned by FUNB or by any independent contractor or supplier engaged by FUNB (or an affiliate of FUNB) in order for the FX Website to operate ("*System Supplier*").

(c) Once a confirmation number for an Online Transaction has been issued by FUNB through the FX Website, Subscriber may not (i) withdraw, cancel, or amend its offer for that Online Transaction, or (ii) without the prior written consent of FUNB, amend the terms of that Online Transaction. Subscriber acknowledges that a confirmation number may be issued instantly when an Exchange Rate has been accepted, and that Online Transactions bind it as principal for its own account.

(d) Exchange Rates quoted to Subscriber may be different from those which FUNB may quote to any of its other customers, and no representation or warranty is made that any Exchange Rate is the best price available to Subscriber. FUNB reserves the right at any time, without notice, to not quote an Exchange Rate to Subscriber, or to not issue a confirmation number, for any proposed Online Transaction for any reason or no reason.

### 4. Terms and Conditions of Online Transactions

(a) The terms and conditions of each Online Transaction entered into by FUNB and Subscriber shall be evidenced by this Agreement and the FX Website Records. In addition, if Subscriber and FUNB are parties to any agreement governing any foreign exchange transactions (including any ISDA Master Agreement published by the International Swaps and Derivatives Association, Inc.), then this Agreement shall be supplemental to that agreement, and the Online Transactions shall be subject to its terms and conditions (except when they are contrary to the provisions hereof, this Agreement will govern, and for that purpose any procedures for executing or confirming transactions specified in that other agreement shall be disregarded with respect to the Online Transactions).

(b) Each Online Transaction involves the Subscriber's purchase from FUNB of one currency ("*Bought Currency*") in exchange for Subscriber's sale to FUNB of another currency ("*Sold Currency*") at the applicable exchange rate. For each Online Transaction, Subscriber shall deliver to FUNB the required amount of Sold Currency on the date the parties enter into that Online Transaction regardless of the value date specified for that Online Transaction. Upon FUNB's receipt of the required amount of Sold Currency, FUNB shall deliver to Subscriber the required amount of Bought Currency on the value date of that Online Transaction. For each Online Transaction, the delivery of any currency to either party shall be made to a reasonably acceptable bank account as such party shall have specified in delivery instructions for that Online Transaction either (i) on the FX Website, or (ii) if not so specified, then by written notice.

(c) If the delivery of any Bought Currency or Sold Currency cannot be made because the value date of the relevant Online Transaction is not a day on which banks in the relevant place of receipt settle foreign exchange in the relevant currency, the value date thereof shall be the next following day on which such settlement can be made. In addition, whenever the same currency is due by both parties on the same day under two or more foreign exchange transactions (whether or not any is an Online Transaction), then the delivery obligations of the parties on that day in that currency for those foreign exchange transactions will be discharged automatically, and if one party's delivery obligation in that currency would have been greater, replaced by an obligation of such party to deliver the difference to the other party.

2

(d) Subscriber acknowledges that currency exchange rates are highly volatile and impossible to predict, that the value of a currency relative to another currency can rise and fall substantially over short periods, that Subscriber understands those risks and the consequences of entering into the Online Transactions through the FX Website (whether financial, accounting, tax, legal, or otherwise) based upon its own evaluation of the Online Transactions or upon the advice of its professional advisors, that neither FUNB nor any of its affiliates is acting as an agent, broker, advisor or fiduciary of, or a joint venturer with, Subscriber in any respect in connection with the Online Transactions or the FX Website, regardless of whether FUNB acts as an advisor or fiduciary to Subscriber on other matters or provides Subscriber from time to time with market information, views or recommendations.

## 5. Confidentiality & Restriction on Use

(a) Subscriber acknowledges that the FX Website, the Operating System and all programs, files, data or other information stored, contained, or operating at, in or through, the FX Website or Operating System are the exclusive property of FUNB or a System Supplier, that other foreign exchange customers of FUNB will be using the FX Website to conduct their own transactions with FUNB, and that Subscriber agrees for the respective benefits of FUNB and each System Supplier that neither Subscriber nor any User will (i) access or use the FX Website or the Operating System for any purpose other than as a facility through which Online Transactions may be conducted; (ii) alter or interfere with the FX Website, the Operating System or any of the programs, files, data or other information stored, contained, or operating at, in or through, the FX Website or the Operating System; (iii) sell any information obtained from or through the FX Website or the Operating System, including any Exchange Rate; (iv) use any such information for any purpose other than to consider, evaluate, propose, enter into, review or otherwise conduct Online Transactions, or (v) disclose any such information to any third party, except Subscriber may make any such disclosure (1) to Associated Persons, (2) as required by law, or (3) pursuant to any legal or regulatory process, action or proceeding, whether Subscriber is responding thereto or has initiated the same to protect its interests or enforce its rights. "Associated Persons" means the affiliates, directors, officers, employees, agents, advisors, auditors, attorneys, and regulators of Subscriber and those of its affiliates.

(b) Subscriber further acknowledges and agrees that any Operating System owned by a System Supplier may capture any or all data generated by any electronic transmission, instruction, signal, entry or other communication to FUNB through the FX Website, that therefore such System Supplier will have access to information concerning Subscriber's Online Transactions and its FX Website activities, and that such System Supplier is authorized to disclose any or all data captured by the Operating System provided it does so without disclosing the names of FUNB's customers.

## 6. General Terms

This Agreement shall be binding upon and inure to the exclusive benefit of the parties hereto and their respective successors and permitted assigns, shall be governed by the law (and not the law of conflicts) of the State of New York, may be amended only by written agreement of the parties, and except as otherwise provided herein, is the entire agreement and understanding of the parties as to its subject matter. Rights and remedies hereunder are cumulative and not exclusive of any available either by law or under any other written agreement between the parties; any failure or delay in exercising any right or remedy is not a waiver thereof; a single or partial exercise of any right or remedy will not preclude any further exercise thereof; and any purported transfer of rights or obligations under this Agreement without the other party's written consent is void.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date hereof. This Agreement is dated as of _APRIL 6, 2000_.

FIRST UNION NATIONAL BANK

By: _Alicia Rodriguez_

Name: Alicia Rodriguez
Title: Assistant Vice President

SUBSCRIBER:
CASA DE CAMBIO MAJAPARA SA DE CV
[NAME OF PARTY]

By: _____

Name:
Title:

3

# **<u>Exhibit B</u>**

DEC-11-2007 16:09 FROM:    TO:97043830575    P.8/13



México D.F. A 10 DE DICIEMBRE DEL 2003.

**WACHOVIA BANK**

**AT'N: WALLY**

EN RELACION A LAS OPERACIONES QUE PACTAMOS CON USTEDES A
TRAVES DEL ONLINE-FX; LES AUTORIZAMOS A CARGAR Y ABONAR
NUESTRA CUENTA EN USD NUMERO NY2000192304201 QUE
MANTENEMOS CON USTEDES.

AGRADECEMOS SU ATENCION.

**CASA DE CAMBIO MAJAPARA SA DE CV**

# **Exhibit C**

DEC-11-2007 16:08 FROM:                                    TO:97043830575          P.5/13

03-08-06    02:10pm    From-Wachovia Bank, N.A.        704-374-2872    T-518  P.005/006  F-050

## Debit and Netting Authorization

This Debit and Netting Authorization applies to all Exchange Transactions between the undersigned ("Customer") and Wachovia Bank, N. A. ("Wachovia") and is effective upon the execution and delivery hereof by the undersigned Customer.

"Exchange Transactions" are any of the following transactions (present or future) between Customer and Wachovia (whether denominated in U.S. dollars or any other currency): interest rate swap transactions; interest rate option transactions (including any interest rate caps, collars or floors); spot or forward foreign exchange transactions; currency swap transactions; currency and interest rate swap transactions; cross-currency interest rate swap transactions; currency option transactions; any similar transactions, whether the settlement thereof is by an exchange of currencies, a payment in one currency (U.S. dollars or another currency), or otherwise; and any transactions which are either combinations of, or options on or relating to, any of the foregoing.

Account Debits & Credits. Customer hereby authorizes Wachovia to credit and debit each of the bank account(s) identified on the next page hereof or on additional pages attached hereto (each, an "Account") in the name of Customer for the purpose of: (1) crediting amounts due Customer from Wachovia under Exchange Transactions, and (2) paying amounts due Wachovia from Customer under Exchange Transactions. Customer agrees to review all such debits and credits made by Wachovia as reflected on Customer's monthly account statements and to promptly notify Wachovia in writing if Customer believes any error has been made in debiting or crediting an Account, or in failing to debit or credit an Account. In the case of any error, Wachovia shall, promptly after receiving such notice, correct such error by debiting or crediting an Account, as appropriate. In an amount equal to the difference between the amount, if any, incorrectly debited or credited and the correct amount to have been debited or credited. For any such debits, this authorization:

(i) is a right granted to, and not an obligation or duty imposed upon or undertaken by, Wachovia (except to correct amounts debited or credited in error), and it shall continue to be Customer's responsibility to meet all of its payment obligations to Wachovia under Exchange Products as and when the same shall become due, either by having sufficient funds at the time available in its accounts for debiting by Wachovia to cover such obligations or by making payments directly to Wachovia to cover such obligations as and when they become due, in either case without Wachovia being under any obligation whatsoever to notify Customer of any insufficiency of funds in any of Customer's accounts; and

(ii) shall continue in effect until such time as Wachovia receives written notice from Customer of termination of such debit authorization, provided that for any debits made prior to Wachovia's receipt of such notice, such authorizations and agreements shall survive such termination, provided further that if at any time Wachovia credits an Account in error, Wachovia shall continue to have the right to debit an Account for the amount credited in error.

Settlement Netting. In order to reduce the payment and settlement risks associated with multiple transactions, Customer agrees that if amounts due in the same currency (whether U.S. dollars or another currency) would be due by both parties in respect of the same payment or settlement date under two or more Exchange Transactions, Wachovia is authorized at any time and from time to time to set those amounts with any effect that the payment or settlement obligations of Customer and Wachovia in that currency will be discharged automatically for those Exchange Transactions, and if one party's payment or settlement obligation in that currency would have been greater, replaced by an obligation of such party to pay or deliver the difference to the other party on the relevant payment or settlement date. This netting authorization shall remain in effect for so long as any Exchange Transactions are outstanding and may not be amended or rescinded except with Wachovia's written consent.

Authorized and agreed:

Customer:    CASA DE CAMBIO MAJAPARA SA DE CV
             (Print Full Name of Corporation, Partnership/Limited Liability Company/Individual)

By:
             (Signature)                                              (Affix Seal Here)

        Name of person signing:    CARLOS ORTIZ MUÑOZ
                                   (Print or type name)

        Title or position:    DIRECTOR DE OPERACIONES
                             (Print or type title)

Date:    Wednesday 08th 2006

(ACCOUNT(S) ARE IDENTIFIED ON NEXT PAGE OR ON ADDITIONAL PAGES)

PAGE 5/6 ' RCVD AT 3/9/2006 1:28:32 PM [Eastern Standard Time] ' SVR:CLTFAXBS04/12 ' DNIS:7150082 ' CSID:704 374 2872 ' DURATION (mm-ss):01:48

DEC-11-2007 16:09 FROM:                          TO:97043830575            P.6/13

03-09-06   02:10pm   From-Wachovia Bank, N.A.        704-374-2872    T-515   P.006/006   F-960

## Debit and Netting Authorization (continued)

Account(s) authorized to be debited and credited by Wachovia for Exchange Transactions:

Name of Bank:                    WACHOVIA BANK

Bank Account Number:             2000192304201

9 Digit ABA Routing Number:      026005092

Name on Bank Account:            CASA DE CAMBIO MAJAPARA SA DE CV

Signatures:
                                 (All owners of account must sign)

Name of Bank:                    _____

Bank Account Number:             _____

9 Digit ABA Routing Number:      _____

Name on Bank Account:            _____

Signatures:                      _____
                                 (All owners of account must sign)

Name of Bank:                    _____

Bank Account Number:             _____

9 Digit ABA Routing Number:      _____

Name on Bank Account:            _____

Signatures:                      _____
                                 (All owners of account must sign)

Name of Bank:                    _____

Bank Account Number:             _____

9 Digit ABA Routing Number:      _____

Name on Bank Account:            _____

Signatures:                      _____
                                 (All owners of account must sign)

(IF ADDITIONAL ACCOUNT(S), ATTACH ADDITIONAL PAGES USING SAME FORMAT)

PAGE 6/6 * RCVD AT 3/9/2006 1:28:32 PM [Eastern Standard Time] * SVR:CLTFAXBS04/12 * DNIS:7150082 * CSID:704 374 2872 * DURATION (mm-ss):01-48

# **Exhibit D**

 **WACHOVIA**

Wachovia Bank, N.A.
Attn: Foreign Exchange, NC-0675
1525 West WT Harris Blvd,1B1-1 East
Charlotte, NC 28262
Phone (800) 659-1697
Fax (704) 715-0082
Swift: PNBPUS3CHFX

MAJAPARA CASA DE CAMBIO - MEXICO                    Date:              December 11, 2007
LAGO MARGARITA NO. 16
MEXICO CITY, MEXICO 11520

Wachovia confirms the following:Spot Deal                    Deal Source:              EFOREX

| | |
|---|---|
| Deal Number: | 8348101 |
| Sequence Number: | 0 |

| | |
|---|---|
| Trade Date: | December 05, 2007 |
| Value Date: | December 07, 2007 |

| | | |
|---|---|---|
| MAJAPARA CASA DE CAMBIO - MEXICO buys: | 2,000,000.00 | EUR |
| MAJAPARA CASA DE CAMBIO - MEXICO sells: | 2,934,400.00 | USD |
| Rate: | 1.46720000 | |

Wachovia confirms the settlement instructions for the above referenced transaction as follows:

Wachovia Delivers:        2,000,000.00          EUR
                          Account Name:          BAYERISCHE LANDESBK-MUNICH,
                                                 GERMANY

                          Account Number:
                          Payment Method:        By Outgoing Wire Payment
                          Pay To:                BAYERISCHE HYPO-UND VEREINSBANK AG
                                                 MUNICH GERMANY
                                                 MUNICH GERMANY
                          Account:               /DE10700202705803611035
                          For Account Of:        MAJAPARA CASA DE CAMBIO SA DE CV
                          Intermediary Bank:
                          Sender to Receiver Information:



                          Detailed Information:
                                                 BO CASA DE CAMBIO MAJAPARA SA DE CV

Wachovia Receives:        2,934,400.00          USD
                          Account number:        PHILNY
                          Payment Method:        By Incoming International Payment
                          Pay to:                WACHOVIA BANK N.A.-NEW YORK

┌─────────────────────────────────────────────────────────────┐
│ Notify Wachovia Immediately If Not In Agreement:              │
└─────────────────────────────────────────────────────────────┘


WE HAVE REVIEWED AND AGREE TO THE TERMS OF THIS CONFIRMATION.
Thank you for your business.



**WACHOVIA**

Wachovia Bank, N.A.
Attn: Foreign Exchange, NC-0675
1525 West WT Harris Blvd,1B1-1 East
Charlotte, NC 28262
Phone (800) 659-1697
Fax (704) 715-0082
Swift: PNBPUS3CHFX

MAJAPARA CASA DE CAMBIO - MEXICO                    Date:                    December 11, 2007
LAGO MARGARITA NO. 16
MEXICO CITY, MEXICO 11520

Wachovia confirms the following:Spot Deal                    Deal Source:            EFOREX

    Deal Number:                                  8347911
    Sequence Number:                              0

    Trade Date:                                   December 05, 2007
    Value Date:                                   December 07, 2007
    MAJAPARA CASA DE CAMBIO - MEXICO buys:        5,000,000.00        EUR
    MAJAPARA CASA DE CAMBIO - MEXICO sells:       7,332,500.00        USD
    Rate:                                         1.46650000

Wachovia confirms the settlement instructions for the above referenced transaction as follows:

Wachovia Delivers:          5,000,000.00        EUR
                            Account Name:       BAYERISCHE LANDESBK-MUNICH,
                                                GERMANY

                            Account Number:
                            Payment Method:     By Outgoing Wire Payment
                            Pay To:             BAYERISCHE HYPO-UND VEREINSBANK AG
                                                MUNICH GERMANY
                                                MUNICH GERMANY
                            Account:            /DE10700202705803611035
                            For Account Of:     MAJAPARA CASA DE CAMBIO SA DE CV
                            Intermediary Bank:
                            Sender to Receiver Information:



                            Detailed Information:
                                                BO CASA DE CAMBIO MAJAPARA SA DE CV

Wachovia Receives:          7,332,500.00        USD
                            Account number:     PHILNY
                            Payment Method:     By Incoming International Payment
                            Pay to:             WACHOVIA BANK N.A.-NEW YORK

---

Notify Wachovia Immediately If Not In Agreement:

---

WE HAVE REVIEWED AND AGREE TO THE TERMS OF THIS CONFIRMATION.

Thank you for your business.

 **WACHOVIA**

Wachovia Bank, N.A.
Attn: Foreign Exchange, NC-0675
1525 West WT Harris Blvd,1B1-1 East
Charlotte, NC 28262
Phone (800) 659-1697
Fax (704) 715-0082
Swift: PNBPUS3CHFX

MAJAPARA CASA DE CAMBIO - MEXICO
LAGO MARGARITA NO. 16
MEXICO CITY, MEXICO 11520

Date:          December 11, 2007

Wachovia confirms the following:Spot Deal          Deal Source:          EFOREX

| | |
|---|---|
| Deal Number: | 8347951 |
| Sequence Number: | 0 |

| | | |
|---|---|---|
| Trade Date: | December 05, 2007 | |
| Value Date: | December 07, 2007 | |
| MAJAPARA CASA DE CAMBIO - MEXICO buys: | 1,000,000.00 | EUR |
| MAJAPARA CASA DE CAMBIO - MEXICO sells: | 1,466,500.00 | USD |
| Rate: | 1.46650000 | |

Wachovia confirms the settlement instructions for the above referenced transaction as follows:

| | | |
|---|---|---|
| Wachovia Delivers: | 1,000,000.00 | EUR |
| | Account Name: | BAYERISCHE LANDESBK-MUNICH, GERMANY |
| | Account Number: | |
| | Payment Method: | By Outgoing Wire Payment |
| | Pay To: | BAYERISCHE HYPO-UND VEREINSBANK AG MUNICH GERMANY MUNICH GERMANY |
| | Account: | /DE10700202705803611035 |
| | For Account Of: | MAJAPARA CASA DE CAMBIO SA DE CV |
| | Intermediary Bank: | |
| | Sender to Receiver Information: | |

| | |
|---|---|
| Detailed Information: | |
| | BO CASA DE CAMBIO MAJAPARA SA DE CV |

| | | |
|---|---|---|
| Wachovia Receives: | 1,466,500.00 | USD |
| | Account number: | PHILNY |
| | Payment Method: | By Incoming International Payment |
| | Pay to: | WACHOVIA BANK N.A.-NEW YORK |

Notify Wachovia Immediately If Not In Agreement: