Scott S. McKessy (SM-5479)
Casey D. Laffey (CL-1483)
REED SMITH LLP
599 Lexington Avenue
New York, New York 10022
Tel. (212) 521-5400
Fax. (212) 521-5450
Attorneys for Plaintiff
Wachovia Bank, National Association

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

WACHOVIA BANK, National Association, :

Plaintiff, : 07 Civ. 11230 (BSJ)(RLE)

- against - :

CASA DE CAMBIO MAJAPARA S.A. de C.V. a/k/a:
MAJAPARA CASA DE CAMBIO S.A. de C.V., :

Defendant. :

---------------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR AN ORDER DECLARING DEFENDANT IN CONTEMPT OF COURT**

**REED SMITH LLP**
599 Lexington Avenue, 29th Floor
New York, New York 10022
(212) 521-5400

*Attorneys for Plaintiff*
*Wachovia Bank, National Association*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .......... 1

STATEMENT OF FACTS .......... 2

A. The Allegations of Wachovia's Complaint .......... 2

B. This Court's Orders .......... 3

C. Majapara's Notice of the Orders and the Court's Restraints .......... 4

D. Majapara's Citibank Account .......... 5

E. Majapara's Disclosure Requirements .......... 5

ARGUMENT .......... 7

POINT I
THE COURT SHOULD HOLD MAJAPARA IN CIVIL CONTEMPT OF ITS DECEMBER 14, 2007 AND JANUARY 8, 2008 ORDERS .......... 7

A. The Court's Orders Are Clear and Unambiguous .......... 7

B. The Proof of Majapara's Non-Compliance is Clear and Convincing .......... 9

1. Non-Compliance With the Temporary Restraints .......... 9

2. Non-Compliance With the Disclosure Orders .......... 10

C. Majapara Has Not Diligently Attempted to Comply in a Reasonable Manner .......... 11

POINT II
THE COURT SHOULD GRANT MONETARY AND OTHER RELIEF TO COMPENSATE WACHOVIA FOR MAJAPARA'S PAST VIOLATIONS AND TO ENSURE FUTURE COMPLIANCE .......... 12

CONCLUSION .......... 14

# TABLE OF AUTHORITIES

Page

## CASES

Apex Oil Co. v. The Belcher Co. of New York, Inc., 855 F.2d 1009 (2d Cir. 1988)............ 11, 12

Clissuras v. City University of New York, 2005 U.S. Dist. LEXIS 31200 (S.D.N.Y. Nov. 30, 2005) ........ 8, 13

JSC Foreign Economic Association Technostroyexport v. Int'l Dev. & Trade Services, Inc., 2006 U.S. Dist. LEXIS 25884 (S.D.N.Y. Apr. 28, 2006)..... 7, 8, 11, 12

Levin v. Tiber Holding Corp., 277 F.3d 243 (2d Cir. 2002) ........ 9

N.Y. State Nat'l Org. for Women v. Terry, 886 F.2d 1339 (2d Cir. 1989) ........ 7, 8

Panix Promotions, Ltd. v. Lexis, 2004 WL 421937 (S.D.N.Y. Mar. 5, 2007) ........ 12

Paramedics Electromedicina Comercial, Ltda v. GE Medical Systems Information Technologies, Inc., 369 F.3d 645 (2d Cir. 2004) ........ 1, 7, 12

SEC v. Northshore Asset Management, LLC, 2006 U.S. Dist. LEXIS 39255 (S.D.N.Y. June 14, 2006) ........ 13

U2 Home Entertainment, Inc. v. Hong Wei Int'l Trading, Inc., 2005 U.S. Dist. LEXIS 14790 (S.D.N.Y. May 3, 2005) ........ 7, 11, 12

## STATUTES & RULES

18 U.S.C. § 401(3) ........ 7

CPLR § 6210 ........ 8

Fed. R. Civ. Pro. 26(g)(1)-(2) ........ 11

## PRELIMINARY STATEMENT

Plaintiff Wachovia Bank, National Association ("Wachovia" or "Plaintiff") submits this Memorandum of Law in support of its instant application for an order declaring defendant Casa de Cambio Majapara S.A. de C.V. a/k/a Majapara Casa de Cambio S.A. de C.V. ("Majapara") in contempt of this Court's Orders, dated December 14, 2007 and January 8, 2008.

> ***[P]ersons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed,***
>
> * * *
>
> ***It is a matter of respect for the judicial process.***[1]

Unfortunately, Majapara's lack of obedience and lack of respect for this Court's orders is exactly why Wachovia is now forced to make this motion. Wachovia seeks to hold Majapara in contempt of this Court's orders of December 14, 2007 and January 8, 2008 for disobedience of this Court's prohibitions against the transfer of assets out of one of if its accounts located here in New York City, as well as for Majapara's repeated failure to provide Wachovia with a list of all of its assets and their respective locations.

As the Court is aware, on December 14, 2007, this Court issued a temporary restraining order prohibiting Majapara from transferring any of its assets pending the hearing and determination of Wachovia's application for prejudgment attachment.[2] During the time period while the temporary restraints were in place, however, Wachovia has learned that, in direct contravention of this Court's order, more than $60 million was transferred out of Majapara's Citibank account here in New York.

As this Court is also aware, by order dated December 14, 2007 and by order dated January 8, 2008, this Court *twice* required Majapara to provide Wachovia with a list identifying

---

1 Paramedics Electromedicina Comercial, Ltda v. GE Medical Systems Information Technologies, Inc., 369 F. 3d 645, 655 (2d Cir. 2004) (emphasis supplied).

2 The Court granted that application on December 20, 2007.

all of Majapara's assets and their respective location. Majapara completely ignored the December 14 mandate and then provided only a partial disclosure in response to the January 8 mandate. No wonder Majapara did not certify even its partial disclosure of assets as required by the Federal Rules of Civil Procedure and, thereafter, refused to represent that it was in compliance with this Court's orders.

This conduct should not be condoned and the instant application for contempt granted for the following reasons:

- This Court's orders were clear and unambiguous as to what it required of Majapara: they prohibited the transfer of assets and required full disclosure of all of Majapara's assets.

- The proof that Majapara has not complied with this Court's orders is clear and convincing: documents produced by Citibank establish that more than $60 million in funds were transferred out of Majapara's account between December 17 and December 20; and Majapara's own documents, plus others, establish that Majapara is concealing information and not providing a full disclosure of its assets.

- Majapara has not diligently attempted to comply with this Court's orders in a reasonable manner. There is simply no evidence that Majapara took *any* steps to comply with this Court's mandate prohibiting transfer of assets, nor that any effort went into making sure it fully complied with its obligation to disclose all of its assets – in fact, Majapara refused to respond to Wachovia's request that it represent that it was complying with this Court's orders.

## STATEMENT OF FACTS

### A. The Allegations of Wachovia's Complaint

This case arises out of foreign exchange spot transactions whereby Wachovia agreed to deliver 26 million Euros to Majapara in exchange for Majapara delivering more than $38 million (US$) to Wachovia. Amended Complaint, ¶¶ 1, 11-12. A copy of the Amended Complaint is annexed as Exhibit B to the accompanying Compendium of Exhibits.[3] Specifically, Wachovia

[3] All references to exhibits herein shall be to those exhibits annexed to and incorporated in the accompanying Compendium of Exhibits.

delivered 26 million Euros to Majapara's account as agreed, but Majapara never delivered the $38-plus million (US$) to Wachovia – Majapara then absconded with Wachovia's money. Id. Majapara admits that it owes Wachovia this money. See Exh. A. Accordingly, Wachovia commenced the within action against Majapara for breach of various agreements and for fraud. Amended Complaint (Exh. B), ¶¶ 17-53.

**B. This Court's Orders**

On the same day that Wachovia commenced the within action, Wachovia also made an application to this Court, brought by Order to Show Cause, for an order granting it prejudgment attachment of Majapara's assets. Declaration of Scott S. McKessy dated February 11, 2008 ("McKessy Decl.") ¶¶ 3, 10. The Court signed that order on December 14, 2007 and set a hearing date for the application for an order of attachment (the "December 14 Order"). See Exh. C. Included in the December 14 Order was a clear prohibition against Majapara transferring any of its assets pending a hearing and determination of Wachovia's application:

> IT IS FURTHER ORDERED THAT, pending the hearing and determination of this motion, Majapara, shall be and hereby is enjoined and restrained from transferring, selling, pledging, assigning or otherwise disposing of any of its assets.

Id. In this regard, the December 14 Order specifically referenced the Majapara account (by account number) held at Citibank here in New York. Id. The December 14 Order also required Majapara to disclose all of its assets no later than three (3) business days after service of the December 14 Order:

> IT IS FURTHER ORDERED THAT, Majapara shall produce a detailed list of the aforementioned assets and debts, including a description and location of each asset and debt owed to it, to plaintiff's counsel no later than (3) business days after service of this Order upon Majapara as set forth below.

Id.

At the hearing on Wachovia's application for prejudgment attachment, this Court issued an order granting that application (the "December 20 Order"). See Exh. D. The Court then issued a further order, on December 21, 2007, authorizing Wachovia to serve interrogatories upon third parties regarding assets the third parties may possess belonging to Majapara (the "December 21 Order"). See Exh. E. That same day, Wachovia served a set of interrogatories upon Citibank pursuant to the December 21 Order. See Exh. F.

Thereafter, on January 8, 2008, by endorsed letter (the "January 8 Order"), this Court again ordered Majapara to make a full disclosure of all of its assets as required pursuant to the Court's December 14 Order:

> Application Granted. Majapara is directed to provide [a detailed description, including location, of each asset and debt owed to Majapara] no later than 01/11/08.

See Exh. G.

**C. Majapara's Notice of the Orders and the Court's Restraints**

On December 14, pursuant to the Court's Order, Wachovia served a copy of the December 14 Order, along with the underlying papers and pleadings, upon Majapara via overnight delivery, registered mail, and first class mail. See Exh. H. As detailed by the FEDEX tracking receipt, Majapara received the December 14 Order, as well as other court papers, on December 17, 2007. See Exh. I.

In fact, Majapara's Chicago counsel (Celiza Braganca), represented that Majapara had a representative in the Southern District Courthouse on the afternoon of Friday, December 21, 2007. McKessy Decl. ¶ 16. Indeed, Majapara's recent filing with this Court confirms Majapara's claims that it was here on that date. If true, this means Majapara had notice and actual knowledge of this Court's December 14 Order.

**D. Majapara's Citibank Account**

In response to Wachovia's service of interrogatories upon Citibank, pursuant to the December 21 Order, Citibank provided a letter response, dated January 4, 2008, which detailed the closing-day's balance for the Majapara account located at Citibank as well as Majapara's December 2007 account statement. See Exhs. K and L. As detailed in the responses, the Majapara account held at Citibank here in New York has been steadily drained of funds since December 17, 2007. Id.

As of the close-of-business on December 17, 2007, there was a balance of more than $14.5 million in that account. Id. As of the close-of-business on December 20, 2007, there was less than $2 million. Id. And these figures do not even take into account the fact that tens of millions of additional dollars flowed in ***and out*** of that account during this time period. See Exh. L. This window of time (December 17th through December 20th), however, is the time period in which Majapara was prohibited from allowing its assets to be transferred out of its Citibank account pursuant to this Court's December 14 Order.

As a result, instead of having been able to attach funds sufficient to satisfy Wachovia's claim in excess of $24 million, Wachovia is left with an account that, as of January 2, 2008, had less than $2,500 – if even that remains. Id. Indeed, during the time period of December 17, 2007 through December 20, 2007 – the period covered by the December 14 Order – more than $60 million flowed out of this account. Id.

**E. Majapara's Disclosure Requirements**

The December 14 Order also provided, and was clear in its mandate, that Majapara provide Wachovia, within three business days after service of the December 14 Order, a detailed list of all of its assets and where they are located. See Exh. C. Despite having received this directive on December 17, 2007, Majapara never complied with that order. McKessy Decl. ¶ 24.

Indeed, not until this Court issued a *second* order, dated January 8th, directing Majapara to provide this information, did Majapara purport to produce the required information. Upon review of these "disclosures", however, the information provided is blatantly insufficient. McKessy Decl. ¶¶ 25-27; Exh. M. To begin with, none of the assets disclosed identify their location. Id. A Mexican corporation may hold US$ denominated accounts in Mexico: consequently, the location of the assets listed on document "Majapara 0004" can be located almost anywhere. McKessy Decl. ¶ 29. Moreover, the list of Majapara bank accounts is incomplete. For example, as detailed in the Amended Complaint, Majapara has five accounts with Wachovia (Amended Complaint ¶¶ 15, 55): "Majapara 0004" only identifies one of Majapara's Wachovia accounts. See Exh. M.

And, Majapara failed to disclose other assets as well. For example, Majapara, in its letter of December 13th, states that Majapara has extended credit to a number of third parties. See Exh. A. Majapara, however, has not listed, nor identified, any of these entities or these receivables in its disclosures. Additionally, in the letter from JOM Corp. (Mr. Ortiz's company), JOM Corp. claimed that it made significant purchases of currency from Majapara. See Exh. J. Indeed, JOM Corp. submitted documents in connection with the Illinois action that represented that, as of May 31, 2007, JOM Corp. owed Majapara up to $827,836.[4] See Exh. N. Majapara has not disclosed these (or these types of) accounts receivable either.

---

4 JOM Corp.'s balance sheet indicates that "Majapara & Paymasters" is owed $827,836. Exh. N.

## ARGUMENT

## POINT I

## THE COURT SHOULD HOLD MAJAPARA IN CIVIL CONTEMPT OF ITS DECEMBER 14, 2007 AND JANUARY 8, 2008 ORDERS

District courts have the power to impose fines, imprisonment, or both, for violation of its orders. 18 U.S.C. § 401(3). "It is a matter of respect for the judicial process." Paramedics Electromedicina Comercial, Ltda v. GE Medical Systems Information Technologies, Inc., 369 F.3d 645, 655 (2d Cir. 2004). Specifically, a party may be held in civil contempt for failure to comply with a court order if: (1) the order is clear and unambiguous; (2) the proof of noncompliance is clear and unambiguous; and (3) the contemnor has not diligently attempted to comply in a reasonable manner. Id. at 655; JSC Foreign Economic Association Technostroyexport v. Int'l Dev. & Trade Services, Inc., 2006 U.S. Dist. LEXIS 25884, at *6 (S.D.N.Y. Apr. 28, 2006); U2 Home Entertainment, Inc. v. Hong Wei Int'l Trading, Inc., 2005 U.S. Dist. LEXIS 14790, at *16–17 (S.D.N.Y. May 3, 2005). The party moving for such relief "need not [establish] that the violation was willful." Paramedics Electromedicina Comercial, Ltda, 369 F.3d at 655. Here, this Court's orders were unambiguous in their mandates, the proof of Majapara's violation of these orders is clear, and Majapara has not made reasonable and diligent efforts to comply with the Court's order.

### A. The Court's Orders Are Clear and Unambiguous

A clear and unambiguous order is "specific and definite enough to apprise those within its scope of the conduct that is being proscribed." JSC Foreign Economic Association Technostroyexport, 2006 U.S. Dist. LEXIS 25884, at *7; U2 Home Entertainment, Inc., 2005 U.S. Dist. LEXIS 14790, at *17 (citing N.Y. State Nat'l Org. for Women v. Terry, 886 F.2d

1339, 1352 (2d Cir. 1989)). The December 14 Order and January 8 Order were clear and unambiguous in their mandates.

First, as authorized by CPLR § 6210, the December 14 Order contained clear prohibitions against Majapara, pending a hearing and determination of Wachovia's attachment application, from, *inter alia*, transferring any of its assets:

> IT IS FURTHER ORDERED THAT, pending the hearing and determination of this motion, Majapara, shall be and hereby is enjoined and restrained from transferring, selling, pledging, assigning or otherwise disposing of any of its assets.

Exh. C. Indeed, the December 14 Order, which *specifically referenced* the Majapara Citibank account (by account number), located here in New York, is clear and unambiguous. See, e.g., JSC Foreign Economic Association Technostroyexport, 2006 U.S. Dist. LEXIS 25884, at *6–7 (holding order of attachment preventing "sale, transfer, or disposition" of defendant's assets to be clear and unambiguous).

Second, the December 14 Order also required Majapara to disclose all of its assets no later than three (3) business days after service of the December 14 Order. Id. The Court's January 8 Order, issued after Majapara failed to comply with the December 14 Order, gave Majapara a second chance to comply with this directive and again directed Majapara to provide the required information mandated by the December 14 Order no later than January 11, 2008. See Exh. G. Again, this Court's directions were clear and unambiguous as to what Majapara was required to provide to Wachovia. Clissuras v. City University of New York, 2005 U.S. Dist. LEXIS 31200, at *2, 7 (S.D.N.Y. Nov. 30, 2005) (holding permanent injunction enjoining and restraining defendant from continuing to prosecute claims in federal court against the defendants clear and unambiguous).

## B. The Proof of Majapara's Non-Compliance is Clear and Convincing

In order to establish that proof of non-compliance of a court order is clear and convincing, the movant must put forth "a quantum of proof adequate to demonstrate a 'reasonable certainty' that a violation occurred." Levin v. Tiber Holding Corp., 277 F.3d 243, 250 (2d Cir. 2002). Here, the documentary evidence demonstrates beyond "reasonable certainty" that Majapara has violated two of this Court's directives: (a) allowing the transfer of more than $60 million out of its Citibank account despite its knowledge of this Court's prohibition against any such transfers during the relevant time period; and (b) repeated failures to provide full disclosure of its assets.

### 1. Non-Compliance With the Temporary Restraints

The December 14 Order prohibited Majapara from transferring any of its assets during the time period from December 17, 2007 (the date Majapara received notice of the December 14 Order) through and including December 20, 2007 (the date the attachment order was granted). Documents produced by Citibank, however, establish that Majapara's Citibank account, located here in New York, has been steadily drained of funds since December 17, 2007. See Exh. K. For example, as of the close-of-business on December 17, 2007, there was a balance of more than $14.5 million in that account, while as of the close-of-business on December 20, 2007, there was less than $2 million. Id. But these figures do not accurately reflect the volume of funds that Majapara allowed to flow out of that account during this four-day window of time. Indeed, a review of Majapara's Citibank December 2007 account statement reveals that more than $60 million flowed out of Majapara's account in violation of this Court's December 14 Order's

prohibitions. See Exh. L. And what makes this conduct even more egregious is the fact that the Citibank account number was specifically identified in the December 14 Order.[5]

### 2. Non-Compliance With the Disclosure Orders

Both the December 14 Order and the January 8 Order required Majapara to provide Wachovia with a full disclosure of its assets. And even though there is only scant documentary evidence available at this point in time, this evidence establishes that Majapara has failed to provide a full disclosure of its assets as this Court has **twice** directed. Specifically, notwithstanding this Court's explicit order to provide Wachovia, within three business days of December 17, 2007, a detailed list of all of its assets and where they are located, Majapara never complied. McKessy Decl. ¶ 24. Indeed, it was not until after this Court issued a ***second*** order, on January 8, 2008, directing Majapara to, once again, provide this information that Majapara purported to produce the required information.

After reviewing these documents, Wachovia discovered that the information provided was blatantly insufficient. See Exh. M. To begin with, none of the assets disclosed identify their location. A Mexican corporation may hold USD$ denominated accounts in Mexico. Consequently, the location of the assets listed on document "Majapara 0004" can be located almost anywhere. McKessy Decl. ¶ 26. Also, the list of Majapara's bank accounts is incomplete. Majapara has five accounts with Wachovia (Amended Complaint ¶¶ 15, 55): "Majapara 0004," however, only discloses a single account with Wachovia. See Exh. M. What other undisclosed accounts has Majapara chosen to omit from its list of assets?

And Majapara has failed to disclose other assets as well. For example, Majapara, in its letter of December 13th, states that Majapara has extended credit to a number of third parties.

---

[5] Indeed, the transfer of funds out of Majapara's New York account continued through at least January 2, 2008, when there was less than $2,500 in that account. Id.

See Exh. A ("The lines that Wachovia provided MAJAPARA were in turn provided to MAJAPARA's clients. We are recovering those funds. . . ."). Majapara, however, has not listed nor identified these entities or these receivables in its "disclosures". Additionally, in the letter from JOM Corp., JOM Corp. claimed that it makes significant purchases of currency from Majapara. See Exh. J (". . . JOM Corp. purchases pesos from Majapara in Mexico to pay Mexican beneficiaries of Illinois customers in their local currency"). Indeed, JOM Corp. submitted documents in connection with the Illinois State Court action that represented that during 2007, JOM Corp. owed Majapara as much as $827,836. See Exh. N. Where is the disclosure of this account receivable? Or the disclosure of these types of accounts receivable? And these are just the omitted assets Wachovia is able to uncover at this early stage of the litigation. What else is Majapara hiding?

In light of this documentary evidence, Majapara's non-compliance of the December 14 Order and January 8 Order is clear and convincing. JSC Foreign Economic Association Technostroyexport, 2006 U.S. Dist. LEXIS 25884, at *7–8 (finding defending in civil contempt for violating order of attachment); U2 Home Entertainment, Inc., 2005 U.S. Dist. LEXIS 14790, at *17 (holding defendants in civil contempt for violating permanent injunction).

**C. Majapara Has Not Diligently Attempted to Comply in a Reasonable Manner**

Finally, Majapara has not shown any reasonable and diligent attempts to comply with this Court's orders. As noted above, Majapara has not only violated this Court's order preventing the transfer of its assets, but it has also violated multiple directives of this Court ordering it to disclose its assets. To begin with, Federal Rule of Civil Procedure 26(g) mandates certification for "[e]very discovery request, response or objection." Fed. R. Civ. Pro. 26(g)(1)-(2). This requirement is strict and the standard of care is objective. See, e.g., Apex Oil Co. v. The Belcher

Co. of New York, Inc., 855 F.2d 1009, 1015 (2d Cir. 1988). Majapara's "asset disclosures" were not certified.

But, to make matters worse, on January 12, 2008, after having received Majapara's purported "asset disclosures," Wachovia requested that Majapara confirm that it was in full compliance with this Court's orders. See McKessy Decl. ¶ 29; Exh. O. To date, Majapara has chosen to ignore that request and remain silent as to Majapara's compliance with this Court's orders. Id. Wachovia now knows why. See, e.g., JSC Foreign Economic Association Technostroyexport, 2006 U.S. Dist. LEXIS 25884, at *16 (noting that repeated violations of Court order evidences the defendant's willfulness); U2 Home Entertainment, Inc., 2005 U.S. Dist. LEXIS 14790, at *19 (same).

**POINT II**

**THE COURT SHOULD GRANT MONETARY AND OTHER RELIEF TO COMPENSATE WACHOVIA FOR MAJAPARA'S PAST VIOLATIONS AND TO ENSURE FUTURE COMPLIANCE**

"The imposition of civil contempt sanctions may serve dual purposes: to secure future compliance with court orders and to compensate the party that has been wronged." Paramedics Electromedicina Comercial, Ltda, 369 F.3d at 657. Accord Panix Promotions, Ltd. v. Lexis, 2004 WL 421937, at *2–3 (S.D.N.Y. Mar. 5, 2007). "The Court has broad discretion to fashion sanctions to coerce compliance with its orders and compensate [a plaintiff] for [a defendant's] noncompliance." U2 Home Entertainment, Inc., 2005 U.S. Dist. LEXIS 14790, at *20. Accord Paramedics Electromedicina Comercial, Ltda, 369 F.3d at 657.

Here, damages are needed to compensate Wachovia for its loss of security. Majapara should be directed, pending resolution of this action, to deposit into Court an amount sufficient to satisfy Wachovia's claims against Majapara. See JSC Foreign Economic Association Technostroyexport, 2006 U.S. Dist. LEXIS 25884, at *20 (ordering defendant to "purge her

contempt" by turning over assets transferred in violation of order of attachment). Wachovia should also be awarded its reasonable attorney's fees incurred in making the instant application. See Clissuras, 2005 U.S. Dist. LEXIS 31200, at *7 (granting plaintiffs compensatory damages and attorney's fees); SEC v. Northshore Asset Management, LLC, 2006 U.S. Dist. LEXIS 39255, at *8–9 (S.D.N.Y. June 14, 2006) (same).

Additionally, to ensure that Majapara has not transferred any other assets in violation of the Court's orders, Majapara should be required to: (a) provide a full and complete verified disclosure of all of its assets (including, but not limited to, its accounts receivables), along with copies of Majapara's audited and unaudited financial statements covering the last six months (including, but not limited to, whatever financial statements Majapara used, in connection with its pending motion to vacate, claiming to have been a $90 million-going-concern as of December 31, 2007); (b) provide all documents relating to the Euros transferred pursuant to the underlying spot transactions (including, but not limited to, the names, addresses and account numbers of each entity or individual that received any of the Euros transferred in connection with the underlying spot transactions); (c) produce Jorge Ortiz Munoz, at the offices of Reed Smith, 599 Lexington Avenue, New York, New York, for immediate deposition regarding Majapara's assets, financial condition, conduct since December 14, 2007, and efforts Majapara made to comply with this Court's orders; and (d) for such other, further, and different relief as this Court deems just and proper.

**CONCLUSION**

For the foregoing reasons and those set forth in the accompany McKessy Declaration, Wachovia's motion should be granted in its entirety, along with such other, further, and different relief as the Court deems just, proper, and equitable.

Dated: New York, New York
February 11, 2008

REED SMITH LLP

By:______________________

Scott S. McKessy
Casey D. Laffey
599 Lexington Avenue
New York, New York 10022
Tel. (212) 521-5400
Fax. (212) 521-5450

*Attorneys for Plaintiff*
*Wachovia Bank, National Association*