Scott S. McKessy (SM-5479)
Casey D. Laffey (CL-1483)
REED SMITH LLP
599 Lexington Avenue
New York, New York 10022
Tel. (212) 521-5400
Fax. (212) 521-5450
Attorneys for Plaintiff
Wachovia Bank, National Association

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

WACHOVIA BANK, National Association,      :    07 Civ. 11230 (BSJ)(RLE)

     Plaintiff,        :

    - against -        :

CASA DE CAMBIO MAJAPARA S.A. de C.V. a/k/a: 
MAJAPARA CASA DE CAMBIO S.A. de C.V.,    :

     Defendant.       :

-------------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANT'S APPLICATION TO VACATE
## <u>THIS COURT'S PRE-JUDGMENT ORDER OF ATTACHMENT</u>

**REED SMITH LLP**
599 Lexington Avenue, 29th Floor
New York, New York 10022
(212) 521-5400

*Attorneys for Plaintiff*
*Wachovia Bank, National Association*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................. 1

STATEMENT OF FACTS .................................................................... 3

ARGUMENT ............................................................................. 3

POINT I
PLAINTIFF IS ENTITLED TO AN ORDER
AWARDING PRE-JUDGMENT ATTACHMENT................................................. 3

    A.   Wachovia is Entitled to an Order of Attachment Under CPLR § 6201(1) ..................... 4

    B.   Wachovia is Entitled to an Order of Attachment Under CPLR § 6201(3) ..................... 5

    C.   Wachovia is Likely to Succeed on the Merits ................................................. 7

    D.   Wachovia is Seeking Over $24 Million In Damages,
          While Defendant Has No Viable Counterclaims ........................................... 7

    E.   The Order of Attachment Should Be Continued............................................ 9

POINT II
THIS COURT'S TEMPORARY RESTRAINING ORDER WAS PROPER......................... 10

POINT III
NOT ONE OF THIS COURT'S ORDERS
WAS ENFORCED EXTRATERRITORIALLY................................................. 13

POINT IV
NO BASIS FOR MODIFYING THE BOND.................................................. 14

POINT V
MAJAPARA'S REQUEST TO HAVE WACHOVIA
DEPOSIT FUNDS INTO COURT IS BASELESS............................................. 16

CONCLUSION.......................................................................... 18

## TABLE OF AUTHORITIES

**Page**

### CASES

A&M Exports, Ltd. v. Meridien Int'l Bank, Ltd., 222 A.D.2d 378, 636 N.Y.S.2d 35
(1st Dep't 1995)..................................................................................................... 13

AB Electrolux v. Bermil Industries Corp., 481 F.Supp.2d 325 (S.D.N.Y. 2007) ........................ 15

Adelphi Comm. Corp. v. Rigas, 2003 U.S. Dist. LEXIS 9349 (S.D.N.Y. June 4, 2003)............. 10

Agnew v. Alicanto, S.A., 125 F.R.D. 355 (E.D.N.Y. 1989).......................................................... 13

Ames v. Clifford, 863 F.Supp. 175 (S.D.N.Y. 1994) ..................................................................... 5

Apex Oil Co. v. The Belcher Co. of New York, Inc., 855 F.2d 1009 (2d Cir. 1988)..................... 9

Arzu v. Arzu, 190 A.D.2d 87, 597 N.Y.S.2d 322 (1st Dep't 1993) .............................................. 7

Bank of Leumi Trust Co. of New York v. Istim, Inc., 892 F.Supp. 478 (S.D.N.Y. 1995)............. 8

Capital Ventures Int'l v. Republic of Argentina, 443 F.3d 214 (2d Cir. 2006)............................ 6

Carlos Franco Associates, inc. v. Seaboard Drug Co., Inc., 4 Misc.2d 794, 162 N.Y.S.2d
380 (Sup. Ct. N.Y. Co. 1956) ............................................................................... 15

Comverse Technology, Inc., 2006 U.S. Dist. LEXIS 62227 (E.D.N.Y. Aug. 31, 2006) ............. 10

Contichem LPG, 170 F.Supp.2d 416 (S.D.N.Y. 2001) ............................................................... 12

CSC Holdings, Inc. v. Redisi, 309 F.3d 988 (7th Cir. 2002)....................................................... 10

Dean v. James McHugh Construction Co., 56 A.D.2d 716, 392 N.Y.S.2d 946
(4th Dep't 1977)................................................................................................... 15

DIC Animation City, Inc. v. The McNaught Syndicate, Inc., 1993 U.S. Dist. LEXIS 17974
(S.D.N.Y. Dec. 16, 1993)...................................................................................... 8

Doctor's Associates, Inc. v. Stuart, 85 F.3d 975 (2d Cir. 1996)................................................. 15

Experience Hendrix, LLC v. Chalpin, 461 F.Supp.2d 165 (S.D.N.Y. 2006) .............................. 12

Ferguson v. Tabah, 288 F.2d 665 (2d Cir. 1961)........................................................................ 14

Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308 (1999) ........... 10

Int'l Equity Investments, Inc. v. Opportunity Equity Partners Ltd., 441 F.Supp.2d 552
(S.D.N.Y. July 26, 2006) ...................................................................................... 15

Interlink Int'l Financial Services, Inc. v. Block, 145 F.Supp.2d 312 (S.D.N.Y. 2001).... 14, 15, 16

Libancell S.A.L. v. The Republic of Lebanon, 2006 U.S. Dist. LEXIS 29442
(S.D.N.Y. May 16, 2006)....................................................................................... 10

Louie v. David & Chu Place Restaurant, Inc., 261 A.D.2d 150, 689 N.Y.S.2d 476
(1st Dep't 1999)..................................................................................................... 13

## TABLE OF AUTHORITIES
(continued)

Page

Macella's Appliances Sales and Services, Inc. v. General Electric Credit Corp., 76 A.D.2d 990, 429 N.Y.S.2d 86 (3d Dep't 1980)..................................................................... 16

Merrill Lynch Private Capital, Inc. v. Khadra, 1990 U.S. Dist. LEXIS 14975 (S.D.N.Y. Nov. 7, 1990) ................................................................................................ 8

Mineola Ford Sales Ltd. v. Rapp, 242 A.D.2d 371, 661 N.Y.S.2d 281 (2d Dep't 1997).............. 7

Mishkin v. Kenney & Branisel, Inc., 609 F.Supp. 1254 (S.D.N.Y. 1985) .................................... 8

Nanjing Textiles IMP/EXP Corp. Ltd. v. NCC Sportswear Corp., 2006 WL 2337186 (S.D.N.Y. Aug. 11, 2006)........................................................................................... 7

New York Janitorial Service, Inc. v. Easthampton DeWitt Corp., 100 Misc.2d 814, 420 N.Y.S.2d 100................................................................................................. 11

Olbi USA, Inc. v. Agapov, 283 A.D.2d 227, 724 N.Y.S.2d 839 (1st Dep't 2001) ....................... 5

Omnipoint Communications, Inc. v. Port Authority of New York and New Jersey, 1999 WL 494120 (S.D.N.Y. July 13, 1999) ................................................................. 17

OSRecovery, Inc. v. One Groupe Int'l, Inc., 305 F.Supp.2d 340 (S.D.N.Y. 2004) .................. 4, 5

Provisional Protective Committee v. Williams, 121 A.D.2d 271, 503 N.Y.S.2d 47 (1st Dep't 1986)...................................................................................................... 11

Sierra USA Communications, Inc. v. Int'l Telephone & Satellite, Corp. 14 Misc.3d 528, 824 N.Y.S.2d 560 (Sup. Ct. N.Y. Co. 2006) ........................................................... 12

Societe Generale Alsacienne De Banque, Zurich v. Flemingdon Development Corp., 118 A.D.2d 769, 500 N.Y.S.2d 278 (2d Dep't 1986)................................................. 6

Standard Chartered Bank v. DAA Sales Inc., 1991 U.S. Dist. LEXIS 10730 (S.D.N.Y. Aug. 5, 1991) ........................................................................................... 8

Thornapple Assocs., Inc. v. Sahagen, 2007 WL 747861 (S.D.N.Y. Mar. 12, 2007)............ 4, 5, 11

## STATUTES & RULES

CPLR § 6201........................................................................................................... passim

CPLR § 6210........................................................................................................... passim

CPLR § 6211.................................................................................................................. 12

CPLR § 6212.................................................................................................................... 7

Fed. R. Civ. P. 26(g)(1)-(2)............................................................................................. 9

Report of the Judicial Conference for the Calendar Year January 1, 1976 Through December 31, 1976, 22 N.Y. Jud. Conf. Rep. 249 (1976)........................ 12

## PRELIMINARY STATEMENT

Plaintiff Wachovia Bank, National Association ("Wachovia" or "Plaintiff") submits this Memorandum of Law in opposition to defendant Casa de Cambio Majapara S.A. de C.V. a/k/a Majapara Casa De Cambio S.A. de C.V.'s ("Majapara" or "Defendant") instant application seeking, *inter alia*, to vacate this Court's order of attachment, dated December 20, 2007.

As this Court is well aware, this case arises from a series of foreign exchange spot transactions Majapara entered into with Wachovia on December 5, 2007. In short, Wachovia was to deliver 26 million Euros to Majapara – which it did; and Majapara was to deliver to Wachovia more than $38 million (USD) – which it did not. And not only did it not deliver the $38 million (USD) to Wachovia, but Majapara refused to return any of the 26 million Euros it misappropriated. Consequently, Wachovia commenced the within action and, at the same time, made an application to this Court seeking an order for prejudgment attachment. That application was premised upon, as well as granted upon, two separate grounds: CPLR §§ 6201(1) and 6201(3). The Court also issued a temporary restraining order as authorized by CPLR § 6210, prohibiting Majapara from, *inter alia*, transferring its assets pending a hearing and determination of Wachovia's application.

Majapara now comes to this Court in an attempt to recast the perpetrator as the victim by blaming all of Majapara's woes relating to ***Majapara's*** misappropriation of millions of dollars of Wachovia's money ***upon Wachovia***. If this sounds disingenuous: it is. If this sounds incredible: it is. If this sounds like the desperate act of a defendant that has absolutely no defense for the actions it took: it is. And this lack of merit is nowhere better showcased than in Majapara's instant motion papers.

Here, Majapara moves to vacate the order of attachment on the ground that this Court was not provided with all of the relevant facts (*but the only additional "facts" Majapara provides this Court are documents relating to transactions that have nothing to do with the underlying action*); that this Court did not have the power to issue temporary restraints against Majapara (*despite a specific statute providing for such relief*), and that the bond amount is

insufficient (*but Majapara does not provide this Court with any proof that it should be modified*). Majapara also appears to seek mandatory injunctive relief from this Court by requiring Wachovia to place certain monies into Court (*but then provides no factual or legal basis for seeking such drastic relief*).

Accordingly, the instant motion is without merit and should be denied for each of the following reasons:

> Majapara seeks to vacate the order of attachment because it claims CPLR § 6201(3) is not satisfied; but even if it were not (which it is), Majapara does not challenge the fact that Wachovia is entitled to the order of attachment, pursuant to CPLR § 6201(1), when: "the defendant is a nondomiciliary residing outside of the state, or is a foreign corporation not qualified to do business in the state" – Majapara is both; and this basis for attachment remains satisfied and unchallenged.

> The requirements of CPLR § 6201(3) have been established and nothing in Majapara's instant papers – Majapara's papers make many claims, but virtually none are supported by any proof – provides any additional facts that warrant any other result.

> CPLR § 6210 specifically provides this Court with a statutory basis for imposing temporary restraints upon a party pending the hearing and determination of the application for an order of attachment.

> Majapara's unsubstantiated, unqualified and unquantified assertion of a counterclaim is insufficient to warrant a modification of the order of attachment.

> The order of attachment issued by this Court has not been enforced outside of this Court's jurisdiction: the order of attachment has only been served upon entities present in New York. Indeed, Wachovia commenced an action in Illinois State Court seeking an order of attachment to attach funds located there – it did not attempt to use this Court's order.

> Majapara has presented this Court with absolutely no evidence that would warrant a modification of the amount of the bond posted – particularly in the amount suggested by Majapara's papers since neither the attachment nor the temporary restraints have caused Majapara any damage: indeed, Majapara ignored the temporary restraints mandated by this Court, resulting in there being no assets in New York to attach (at least none Majapara has disclosed).

**STATEMENT OF FACTS**

The Court is respectfully referred to the accompanying Declarations of Carlos A. Perez, dated February 11, 2008 ("Perez Decl."), Andrew Gross, dated February 11, 2008 ("Gross Decl."), Scott S. McKessy, dated February 12, 2008 ("McKessy Decl."), and the Amended Complaint filed in this action, for a full and complete rendition of the applicable facts.[1]

**ARGUMENT**

**POINT I**

**PLAINTIFF IS ENTITLED TO AN ORDER
AWARDING PRE-JUDGMENT ATTACHMENT**

Majapara brings this motion seeking to have this Court vacate its December 20 Order permitting Wachovia to attach Majapara's property. This motion, however, is flawed and without support, both factually and legally, for a number of reasons.

First, the sole basis for Majapara's instant motion is that, if the Court were aware of all of the "facts," the Court would never have granted the order of attachment pursuant to CPLR § 6201(3). See Memorandum of Law in Support of Motion of Casa de Cambio Majapara to Vacate Order of Attachment and Increase Undertaking/Bond of Wachovia, dated January 22, 2008 ("Df. Br.") at pp. 9-11. But what Majapara's motion does not address is the fact that the order of attachment was *granted on multiple grounds* and Majapara is not claiming that the grounds set forth in CPLR § 6201(1) are not satisfied. Second, the requirements of CPLR § 6201(3) are satisfied in that Majapara threatened to frustrate collection of any judgment obtained by Wachovia – no one from Majapara has averred to the contrary – and has, *in fact*, frustrated collection efforts. Third, Wachovia is more than likely to succeed on the merits of its claims – this is not challenged in Majapara's papers, in fact, it is conceded. Next, Majapara does not have any viable counterclaims, let alone any that have any merit. And, finally, based upon Majapara's

---

[1]      All references to "Exhibits" herein shall refer to the exhibits annexed to the accompanying Compendium of Exhibits. And all defined terms herein shall have the same meaning as the defined terms used in the accompany declarations.

conduct and present financial condition, the order of attachment should continue – indeed,

Majapara has offered nothing to suggest that the need for an attachment has abated.

**A.    Wachovia is Entitled to an Order of Attachment Under CPLR § 6201(1)**

To begin with, the December 20 Order was expressly granted on two grounds:  CPLR §§

6201(1) and 6201(3).

> It appearing from the Amended Complaint and Declarations
> submitted by Wachovia that Wachovia has a cause of action for a
> money judgment against defendant Casa De Cambio Majapara
> S.A. de C.V. a/k/a Majapara Casa de Cambio S.A. de C.V.
> ("Majapara") for $24,810,975.00 with interest from December 7,
> 2007, and that it is probable that Wachovia will succeed on the
> merits and recover that sum from Majapara exceeding all
> counterclaims of which Wachovia is aware, and it is further
> appearing that ***Wachovia is entitled to an order of attachment
> against the property of Majapara on the grounds that: (a)
> Majapara is a non-domiciliary foreign corporation not qualified
> to do business in the state under CPLR § 6201(1); and (b)
> Majapara intends to remove assets from Wachovia's reach with
> the intention of frustrating the enforcement of an eventual
> judgment in favor of Wachovia under CPLR § 6201(3);*** and that
> the amount to be secured by this order of attachment, including any
> interest, costs, and fees and expenses to be paid to the United
> States Marshal, or other appropriate Federal or State Law
> Enforcement Agent, totals at least $24,810,975.00, and that
> Wachovia has furnished the undertaking required by law.

Exh. H (emphasis supplied).

Here, Majapara does not challenge that the grounds under CPLR § 6201(1) have been

satisfied.  How could it:  a plaintiff is entitled to an order of attachment under CPLR § 6201(1)

upon a showing that "the defendant is a nondomiciliary residing without the state, or is a foreign

corporation not qualified to do business in the state." CPLR § 6201(1).  Majapara is both.  See

December 13, 2007 declaration of Carlos Perez ("Perez December Decl."), ¶ 5 (Exh. A);

Amended Complaint ¶ 6 (Exh. C).

Accordingly, CPLR § 6201(1) is satisfied two ways.  See, e.g., Thornapple Assocs., 2007

WL 747861, at *3 (holding that plaintiff satisfied CPLR § 6201(1) by demonstrating that

defendant was a Delaware company not registered to do business in New York); OSRecovery,

Inc. v. One Groupe Int'l, Inc., 305 F.Supp.2d 340, 348 (S.D.N.Y. 2004) ("The record before the Court establishes that all of the corporate One Groupe Defendants are foreign corporations not qualified to do business in New York . . . and that plaintiffs are likely to prevail against them. They therefore are entitled to an order of attachment with respect to any assets of those defendants in the State of New York."); Olbi USA, Inc. v. Agapov, 283 A.D.2d 227, 724 N.Y.S.2d 839, 840 (1st Dep't 2001) (reversing vacatur of order of attachment and holding that plaintiff satisfied CPLR § 6201(1) by showing that defendant was a non-domiciliary and plaintiff had a likelihood of success on the merits).

And Wachovia's proof even satisfies the sometime imposed requirement (even though it is not contained in the statute) that a plaintiff seeking an attachment under CPLR § 6201(1) show that the defendant's "financial position and conduct pose a significant risk of the enforcement of a future judgment." Thornapple Assocs., Inc. v. Sahagen, 2007 WL 747861, at *5 (S.D.N.Y. Mar. 12, 2007) (citing Ames v. Clifford, 863 F.Supp. 175, 177 (S.D.N.Y. 1994)). As set forth in Majapara's December 13th letter, as well as demonstrated by its current state of affairs, Majapara is illiquid, appears to be closing its offices and is experiencing problems paying its customers. See Perez Decl. ¶ 27, Exhibits O and Q. Consequently, Wachovia now faces a more than significant risk concerning the enforcement of its future judgment, especially since Majapara allowed the transfer of more than $60 million out of its Citibank account here in New York during a period of time when this Court had prohibited such transfers, and has refused to disclose the whereabouts of all its assets, also in violation of this Court's orders. McKessy Decl. ¶¶ 21-22, 34-35, 42.

**B.    Wachovia is Entitled to an Order of Attachment Under CPLR § 6201(3)**

In addition to satisfying CPLR § 6201(1), Wachovia is also entitled to an order of attachment under CPLR § 6201(3). Majapara now claims that if the Court was aware of all of the facts at the time it issued its order, it would not have granted an attachment based upon CPLR § 6201(3). And while Majapara's memorandum of law is chock-full of purported statements of "fact," virtually none are supported by any proof. Indeed, Majapara's sole support

for its motion is the lone declaration of its Treasurer – which declaration only serves the purpose of providing this Court with documents relating to foreign exchange spot transactions *totally unrelated to the ones underlying Wachovia's claims herein!* Consequently, there is nothing before this Court that would warrant a result other than that contained in the December 20 Order.

In this regard, in order to prevail under CPLR § 6201(3), a plaintiff must demonstrate: (1) that the defendant has, or is about to conceal his or her property; and (2) that defendant has acted or will act with the intent to defraud his or her creditors or to frustrate the enforcement of a judgment for the plaintiff. Capital Ventures Int'l v. Republic of Argentina, 443 F.3d 214, 219 (2d Cir. 2006); Societe Generale Alsacienne De Banque, Zurich v. Flemingdon Development Corp., 118 A.D.2d 769, 772, 500 N.Y.S.2d 278, 281 (2d Dep't 1986).

Here, Wachovia has demonstrated just that. First, Wachovia provided this Court with facts establishing Majapara's intent to frustrate Wachovia's efforts to collect a judgment in New York – and now Wachovia has proof that Majapara has. As set forth in the Perez December Decl., Mr. Ortiz (the CEO of Majapara) told Carlos Perez that if Wachovia commenced legal action Wachovia would recover nothing. Exh. A, at ¶ 21. No one from Majapara has submitted a declaration to refute this threat. Indeed, Majapara has now made good on Mr. Ortiz's threat. In this context, this Court's December 14 Order prohibited Majapara from transferring its assets. Exh. E. In direct contravention of that mandate, in the four days immediately prior to the hearing on Wachovia's attachment application, Majapara allowed a significant volume of assets to be transferred out of its Citibank account located here in New York. Indeed, more than $60 million was transferred out between December 17, 2007 and December 20, 2007. McKessy Decl. ¶ 42; Exhs. J and K.

Further, Majapara has also refused to properly comply with this Court's orders directing Majapara to fully disclose all of its assets to Wachovia: Majapara has failed to disclose all of its bank accounts (McKessy Decl. ¶ 36); Majapara has failed to disclose all of the loans it issued with Wachovia's 26 million Euros (Exh. P; McKessy Decl. ¶ 37); and Majapara has failed to disclose other assets as well. McKessy Decl. ¶ 37. For example, Majapara failed to disclose any

of its accounts receivable – JOM Corp., a U.S. entity, has already disclosed that, as of May 31, 2007, it owed "Majapara & Paymasters" more than $800,000. Exh. Q; McKessy Decl. ¶ 37. This concealed information raises serious issues of intent as to why Majapara is failing to disclose all of its assets. See, e.g., Arzu v. Arzu, 190 A.D.2d 87, 92, 597 N.Y.S.2d 322, 325 (1st Dep't 1993) (holding attachment warranted "[i]n light of [defendant]'s patently incredible and almost entirely undocumented explanation as to what happened to hundreds of thousands of dollars belonging to plaintiff . . . ."); Mineola Ford Sales Ltd. v. Rapp, 242 A.D.2d 371, 371–72, 661 N.Y.S.2d 281, 282 (2d Dep't 1997) (affirming order of attachment upon showing of, *inter alia*, diversion of funds rightfully belonging to plaintiff).

Consequently, the requirements for issuing an order of attachment pursuant to CPLR § 6201(3) have been satisfied.

**C.    Wachovia is Likely to Succeed on the Merits**

Next, Wachovia is not only likely to succeed on the merits of its claims, Majapara concedes this fact. This is a simple case of two parties exchanging currencies: one party did; the other party did not. Not only did Majapara not exchange its currency, it refused to give back the currency it received. There does not appear to be a lot of room for defenses for this inexplicable conduct, which explains why, in its motion papers, Majapara concedes liability. See Df. Br. at pp. 2, 3, 5-6.[2]

**D.    Wachovia is Seeking Over $24 Million In**
**Damages, While Defendant Has No Viable Counterclaims**

As noted above, a plaintiff seeking an order of attachment must also demonstrate that "the amount demanded from the defendant exceeds the amount of all counterclaims known to the plaintiff." CPLR § 6212(a). Here, Majapara does not have any viable counterclaims. And while Majapara makes unsupported hints that it will assert counterclaims that will exceed Wachovia's

---

[2]    This concession of liability makes Majapara's reliance upon Nanjing Textiles IMP/EXP Corp. Ltd. v. NCC Sportswear Corp., 2006 WL 2337186 (S.D.N.Y. Aug. 11, 2006) misplaced. There, the court denied both injunctive relief and attachment because the plaintiff could not establish a likelihood of success on the merits.

claims: any "counterclaims", while presently unidentified and unquantified, most certainly will be without merit.  Perez Decl. ¶ 28.

Indeed, when evaluating counterclaims, in this context, courts "are to examine only the amount of the counterclaims *that the plaintiff concedes are just*." Bank of Leumi Trust Co. of New York v. Istim, Inc., 892 F.Supp. 478, 482 (S.D.N.Y. 1995) (emphasis supplied).  Accord DIC Animation City, Inc. v. The McNaught Syndicate, Inc., 1993 U.S. Dist. LEXIS 17974, at *3 (S.D.N.Y. Dec. 16, 1993); Standard Chartered Bank v. DAA Sales Inc., 1991 U.S. Dist. LEXIS 10730, at *2 (S.D.N.Y. Aug. 5, 1991); Merrill Lynch Private Capital, Inc. v. Khadra, 1990 U.S. Dist. LEXIS 14975, at *6 (S.D.N.Y. Nov. 7, 1990).  Accordingly, the mere assertion of counterclaims by a defendant will not prevent the plaintiff from obtaining an order of attachment where – like here – the plaintiff disputes the merits of any counterclaims.  Bank of Leumi Trust Co., 892 F.Supp. at 482 ("Because [plaintiff] contends that [defendant's] counterclaims are entirely without merit, [the statutory] requirement is satisfied."); Merrill Lynch, 1990 U.S. Dist. LEXIS 14975, at * 6 ("Since [defendant's] only existing counterclaim is vigorously disputed by [plaintiff], it is not a bar to attachment."); Standard Chartered Bank, 1991 U.S. Dist. LEXIS 10730, at *2 (holding that defendant's proposed counterclaim was insufficient to defeat attachment because plaintiff disputed the claim).

Furthermore, unsworn allegations asserted by counsel, without affidavit or evidentiary support, are insufficient to establish viable counterclaims and defeat attachment.  See Mishkin v. Kenney & Branisel, Inc., 609 F.Supp. 1254, 1257 (S.D.N.Y. 1985) (granting order of attachment and rejecting defendant's counterclaims which were asserted by counsel without "a single affidavit" attesting to the underlying allegations), aff'd, 779 F.2d 35 (2d Cir. 1985).  Here, there is no client declaration establishing the allegations of any counterclaim; here, there is no attorney declaration; and here, there is no documentary support for the assertion of any claim.  As a result, comments made in Majapara's Memorandum of Law concerning potential counterclaims are insufficient to prevent an order of attachment.

**E.**    <u>**The Order of Attachment Should Be Continued**</u>

In its motion papers, Majapara does not claim that circumstances have changed such that there is no longer a need to continue the order of attachment. Its sole argument is that, based upon the "facts" Majapara now puts before this Court, CPLR § 6201(3) is not satisfied. Indeed, however, Majapara's conduct since this action was commenced only serves to confirm that the order of attachment was appropriate and should remain in effect. In this respect, Wachovia, so far, has not been able to attach any assets here in New York. McKessy Decl. ¶ 42. This can be attributed to two facts. First, Majapara disobeyed a direct mandate of this Court by allowing tens of millions of dollars to be transferred out of Majapara's bank account located here in New York City in the days just prior to this Court issuing the order of attachment and while this Court's prohibitions were in place. <u>Id.</u> Second, of the more than $60 million that was transferred into that account between December 17, 2007 and December 20, 2007, the account had less than three thousand dollars on January 2, 2008. Exhs. J and K. Majapara promised judgment collection to be difficult if Wachovia took legal action (Perez December Decl. ¶ 21), and now it has delivered on that promise.

As if this were not bad enough, Majapara has failed to comply with two of this Court's orders requiring it to disclose to Wachovia all of its assets and their location. McKessy Decl. ¶¶ 36-37. Moreover, to the extent Majapara did partially respond, Majapara did not certify that response pursuant to Federal Rule of Civil Procedure Rule 26. <u>See</u> Exh. M. Rule 26 mandates certification requirement for "[e]very discovery request, response or objection." Fed. R. Civ. P. 26(g)(1)-(2). This requirement is not optional and the Rule contemplates sanctions for its disobedience. <u>See</u>, e.g., <u>Apex Oil Co. v. The Belcher Co. of New York, Inc.</u>, 855 F.2d 1009, 1015 (2d Cir. 1988).

In short, since this action was commenced, Majapara has refused to disclose all of its assets and where they are located (in violation of this Court's orders), allowed tens of millions of dollars to be removed from Majapara's account here in New York (also in violation of this Court's order), and, to the extent it did provide discovery responses to this Court's orders,

refused to certify its responses pursuant to Federal Rule of Civil Procedure 26. Indeed, Majapara has even refused to represent that it is in compliance with this Court's orders. McKessy Decl. ¶ 39; Exh. N. Consequently, not only has the justification for an order of attachment not abated, but the need for one has increased significantly.

**POINT II**

**THIS COURT'S TEMPORARY RESTRAINING ORDER WAS PROPER**

Majapara also contends that there is absolutely no authority for this Court's issuance of a temporary restraining order to preserve the status quo pending determination of Wachovia's motion for an order of attachment.[3] This is simply an untenable argument and unsupported by Majapara's own case law.

Indeed, the Supreme Court in Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308 (1999), sustained a district court's ability to impose prejudgment remedies pursuant to Federal Rule of Civil Procedure 64 when those remedies are authorized by state law. 527 U.S. at 330-31. Here, CPLR § 6210 provides a statutory basis for the issuance of a temporary restraining order pending determination of a motion for attachment. See Libancell S.A.L. v. The Republic of Lebanon, 2006 U.S. Dist. LEXIS 29442, at *15-16 (S.D.N.Y. May 16, 2006) (upholding power of district court to grant a TRO pending hearing on motion for order of attachment).

Pursuant to CPLR § 6210, in connection with an application for an order of attachment, a court may, without notice to the defendant, "grant a temporary restraining order prohibiting the

---

[3]      Majapara also appears to argue that, based upon Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308 (1999), a district court may not restrain the transfer of assets as set forth in the December 20 Order. And while the December 20 Order has never been enforced in this manner, this argument simply has no basis or support. The Grupo decision is not a blanket prohibition against preliminary restraints and does not apply when a suit seeks equitable relief. See CSC Holdings, Inc. v. Redisi, 309 F.3d 988, 996 (7th Cir. 2002) ("The [Supreme Court] specifically noted that a restraint on assets was still proper if a suit sought equitable relief."). Here, Wachovia's Amended Complaint seeks equitable relief. See Amended Complaint (Exh. C) Counts II & III. Accordingly, the restraints contained in this Court's December 20 Order are proper. See, e.g., In re Comverse Technology, Inc., 2006 U.S. Dist. LEXIS 62227, at *6-7 (E.D.N.Y. Aug. 31, 2006); Adelphi Comm. Corp. v. Rigas, 2003 U.S. Dist. LEXIS 9349, at *13-14 (S.D.N.Y. June 4, 2003). But, again, this issue is of no moment as Majapara has never abided by this Court's orders.

-10-

transfer of assets by a garnishee" pending a hearing and determination of the motion for an order of attachment.[4]  And even though the statute refers to garnishees, courts have held that this statute "authorizes ex parte temporary restraining orders aimed at *defendants*, as well as garnishees, who allegedly have control of the property at issue." Provisional Protective Committee v. Williams, 121 A.D.2d 271, 273, 503 N.Y.S.2d 47, 48 (1st Dep't 1986) (emphasis supplied).

By doing so, the New York State Legislature intended to prevent a defendant from absconding with its assets pending a hearing and determination of the attachment motion and thereby making the remedy of attachment meaningless. See Vincent C. Alexander and Joseph M. McLaughlin, Commentaries to CPLR § 6210, at pp. 1-2 (noting that it would be easy for a defendant to abscond with its assets if given prior notice of a motion for attachment is given and concluding that it was the legislature's intent that "the temporary restraining order envisioned in CPLR § 6210 should be able to reach both a garnishee and the defendant himself."); see also New York Janitorial Service, Inc. v. Easthampton DeWitt Corp., 100 Misc.2d 814, 815, 420 N.Y.S.2d 100, 101 (Sup Ct. Onondaga Co. 1979) (noting that before the enactment of CPLR § 6210, attachment on notice, was "seldom used since it offered plaintiffs no assurance whatever even that of surprise that assets would still be available by the time an order of attachment was granted."). This is exactly what Wachovia attempted to avoid here.  Majapara's removal of assets from this jurisdiction was a legitimate concern to Wachovia when it made its original application, and now that concern has become a reality as a result of Majapara's disobedience of this Court's prohibitions by allowing more than $60 million to flow out of Majapara's accounts here in New York.  McKessy Decl. ¶ 42.

---

[4]        Pursuant to Federal Rule of Civil Procedure 64, "at the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment."  Consequently, this Court will look to New York State law governing the issuance of pre-judgment attachments.  Thornapple Assocs., Inc. v. Sahagen, 2007 WL 747861, at *2 (S.D.N.Y. Mar. 12, 2007).  Under New York law, orders of attachment are governed by Article 62 of New York's Civil Practice Law and Rules ("CPLR").

In fact, when enacting CPLR § 6210, the legislative history provided as follows:

> Proposed new CPLR 6210 would effect two basic changes. It would expressly provide in statutory form that the plaintiff may apply for an order of attachment on notice. It would further provide that the court may prohibit the transfer of assets by a garnishee *or the defendant*, as provided in CPLR 6214(b), through a temporary restraining order, issued *ex parte*.

> At present, the only explicit provision governing the granting of an order of attachment to the plaintiff sets forth an *ex parte* procedure (CPLR 6211). Thus, proposed CPLR 6210 would codify plaintiff's option of proceeding on notice which was always available in practice, although not spelled out in a separate provision in the CPLR. However, the plaintiff's option was rarely used because the motion-on-notice method offered no protection to plaintiff in restraining the transfer of assets by the garnishee before the hearing.

Report of the Judicial Conference for the Calendar Year January 1, 1976 Through December 31, 1976, 22 N.Y. Jud. Conf. Rep. 249 (1976), at pp. 252-53[5].

In fact, since enactment of the statute, New York state and federal courts have readily granted temporary restraining orders in connection with motions for an order of attachment. Experience Hendrix, LLC v. Chalpin, 461 F.Supp.2d 165, 168 (S.D.N.Y. 2006) (granting temporary restraining order against defendants pending hearing on plaintiff's motion for an order of attachment and preliminary injunction); Sierra USA Communications, Inc. v. Int'l Telephone & Satellite, Corp. 14 Misc.3d 528, 530, 824 N.Y.S.2d 560, 561, fn. 4 (Sup. Ct. N.Y. Co. 2006) (granting plaintiff a TRO freezing defendant's assets pending determination of motion for attachment and noting, "[i]n seeking either an attachment, *see* CPLR 6210, or a preliminary injunction, *see* CPLR 6313, a petitioner may obtain a TRO, to remain in effect until the motion for the underlying provisional relief is granted or denied."); In re Contichem LPG, 170 F.Supp.2d 416, 417 (S.D.N.Y. 2001) ("On October 13, 1999, Judge McKenna of this Court issued Continchem's application for a TRO and order of attachment against [defendant] pursuant

---

[5]   For the convenience of the court, a copy of the Report is annexed as an Appendix to the back of this Memorandum of Law.

to New York Civil Practice Law and Rules ('CPLR') §§ 6201, 6210, and 7502(c).''); Louie v.
David & Chu Place Restaurant, Inc., 261 A.D.2d 150, 150, 689 N.Y.S.2d 476, 477 (1st Dep't
1999) ("The court set a hearing date for the attachment motion, and granted a temporary
restraining order that restricted defendants from transferring any assets to the extent of $1 million
while the motion was pending."); A&M Exports, Ltd. v. Meridien Int'l Bank, Ltd., 222 A.D.2d
378, 379, 636 N.Y.S.2d 35, 36 (1st Dep't 1995) ("In connection with its application of an order
of attachment pursuant to CPLR § 6201(1), plaintiff obtained a temporary restraining order
(CPLR § 6210) prohibiting the transfer of $1,394,000 in assets maintained by defendants in a
New York bank."); Agnew v. Alicanto, S.A., 125 F.R.D. 355, 357 (E.D.N.Y. 1989) ("Plaintiffs
by Order to Show Cause moved for an order of attachment against defendants' property . . . and
for an *ex parte* temporary restraining order to restrain defendants from transferring assets.  The
court granted a temporary restraining order on December 30, 1986.").

Accordingly, the Court acted pursuant to statutory authority in issuing temporary
restraints to prevent Majapaja from dissipating its assets pending a determination on Wachovia's
application for an order of attachment.

**POINT III**

**NOT ONE OF THIS COURT'S ORDERS**
**WAS ENFORCED EXTRATERRITORIALLY**

Majapara also complains that the December 20 Order of attachment is improper because
it is extraterritorial.  This is not true for a number of reasons.

First, the only entities upon which the December 20 Order was served were those with a
place of business here in New York.  McKessy Decl. ¶ 44.  Indeed, Wachovia even commenced
an action in Illinois State Court seeking an order of attachment for Majapara's assets located
there – Wachovia did not attempt to use this Court's December 20 Order to attach those funds.
Id.

Second, this argument is exceedingly disingenuous coming from Majapara.  To begin
with, Wachovia is not aware, nor does Majapara claim, that Majapara has taken any actions to

-13-

comport itself, outside of this Court's jurisdiction (or within), with the court mandates set forth in the December 14 Order or the December 20 Order – it simply makes no claim to having been affected, in any way, by this Court's orders. But what makes Majapara's present argument even more insincere is the fact that, while Majapara complains of enforcement outside of this Court's jurisdiction, Majapara has refused to comport itself with any Court order for activities that are within this Court's jurisdiction.

Specifically, the December 14 Order prohibited Majapara from transferring any assets located at its Citibank account here in New York City. McKessy Decl. ¶ 18; Exh. E. After receiving notice of that restraint, Majapara, in the days just prior to Wachovia's attachment hearing, allowed more than $60 million to flow out of that account. McKessy Decl. ¶ 42. Majapara also failed to comply with this Court's mandates to provide a full disclosure of all of Majapara's assets, identifying their location, after having been directed to do so by this Court *TWICE*. McKessy Decl. ¶¶ 36-37.

There is simply no basis for vacating either the December 14 Order or the December 20 Order because those orders are "extraterritorial." Accordingly, the December 14 Order and the December 20 Order should remain in place.

## POINT IV

### NO BASIS FOR MODIFYING THE BOND

Majapara next argues that the amount of the bond posted ($1 million) should be increased *90 fold* because $1 million is inadequate to cover damages suffered by Majapara as a result of attaching property here in New York. Again, Majapara's argument is without basis in law or fact.

To begin with, there is no dispute among the parties that Federal district courts are "vested with wide discretion" when setting the appropriate amount of the undertaking. Interlink Int'l Financial Services, Inc. v. Block, 145 F.Supp.2d 312, 314 (S.D.N.Y. 2001) (quoting Ferguson v. Tabah, 288 F.2d 665, 675 (2d Cir. 1961)); Df. Br. at p. 13. Indeed, a district court may even dispense with the bond requirement entirely where the parties enjoined or restrained

"have not shown that they will likely suffer harm absent the posting of a bond." Id. at 315

(quoting, *inter alia*, Doctor's Associates, Inc. v. Stuart, 85 F.3d 975, 985 (2d Cir. 1996)).

But when a party seeks to modify or increase the amount of the security set by the court,

as Majapara does herein, it is the moving party that has the burden of establishing "a rational

basis" for the increased amount proposed. AB Electrolux v. Bermil Industries Corp., 481

F.Supp.2d 325, 337 (S.D.N.Y. 2007)[6]; Int'l Equity Investments, Inc. v. Opportunity Equity

Partners Ltd., 441 F.Supp.2d 552, 556 (S.D.N.Y. July 26, 2006).  The Court will not order

security for asserted economic damages that are merely "speculative".  Interlink Int'l Financial

Services, Inc., 145 F.Supp.2d at 315; AB Electrolux, 481 F.Supp.2d at 337; Int'l Equity

Investments, Inc., 441 F.Supp.2d at 556.  But speculative, specious, and unsupported is all

Majapara can muster in this regard.

First, while Majapara purports to describe a series of "facts" to this Court to support its

instant request, none of those "facts" are supported by any proof.  Indeed, the only place these

purported "facts" appear is in Majapara's memorandum of law, ***nowhere else***: not in client

declarations; not in an attorney declaration; and not in any documentary support.  Mere

conclusory statements that the attachment or injunction has caused damages to the defendant's

business reputation are insufficient to justify such relief.  Carlos Franco Associates, inc. v.

Seaboard Drug Co., Inc., 4 Misc.2d 794, 795, 162 N.Y.S.2d 380, 381 (Sup. Ct. N.Y. Co. 1956).

In addition, damages incurred from unrelated counterclaims are not recoverable under the bond.

Dean v. James McHugh Construction Co., 56 A.D.2d 716, 717, 392 N.Y.S.2d 946, 947 (4th

Dep't 1977).  Here, Wachovia has not been successful in attaching any property in New York –

primarily for reasons caused by Majapara's disobedience of this Court's orders – nor has

Majapara restrained itself from any conduct violative this Court's orders.  McKessy Decl. ¶ 42.

What damage has Majapara incurred?  In essence, Wachovia posted a $1 million bond to secure

---

[6]     Majapara actually cites AB Electrolux v. Bermil Industries, 481 F.Supp.2d 325 (S.D.N.Y. 2007), as
authority on this issue.  AB Electrolux holds that, for a court to even consider "lost profits" as a factor, proof of lost
profits must be submitted to the court.  Here, Majapara offers no proof of any damages, and Majapara said it best
when it paraphrased AB Electrolux's holding: "because evidence not presented to court, bond not set on that basis."
Df. Br. at p. 14.

(to date) the attachment of *nothing*. The present situation provides no rational basis for increasing the amount of a $1 million bond.

Next, the valuation of Majapara as a going concern at $90 million as of December 31, 2007 is pure fantasy. <u>See</u> Df. Br. at p. 14. And while this amount is wholly unsupported, it is also $20 million higher than the unsupported $70 million going-concern valuation Majapara's Chief Executive Officer claimed on December 13, 2007 – *prior to Wachovia commencing this action*. Exh. O. Is Majapara now claiming that Wachovia's actions, since December 13th, have caused a more than 28% increase in Majapara's value?

Finally, security is not intended to cover damages "for claims against the party who instituted the action other than those *directly attributable* to the improvidently issued injunction." <u>Interlink Int'l Financial Services, Inc.</u>, 145 F.Supp.2d at 315 (emphasis supplied). When seeking to recover damages from a wrongfully entered injunction or order of attachment, the defendant is only permitted to recover damages that "materially and proximately resulted from the order of attachment." 12-62 New York Civil Practice: CPLR 6212:12 (Matthew Bender & Co., Inc. 2007). <u>Accord</u> <u>Macella's Appliances Sales and Services, Inc. v. General Electric Credit Corp.</u>, 76 A.D.2d 990, 990, 429 N.Y.S.2d 86, 86 (3d Dep't 1980). Again, here, while Wachovia had multiple bases for granting the attachment, it has not successfully attached any Majapara assets pursuant to this Court's orders, nor has Majapara established it has suffered any damages. There is simply no basis – let alone a rational one – for requiring an increased bond.

**POINT V**

**MAJAPARA'S REQUEST TO HAVE WACHOVIA**
**<u>DEPOSIT FUNDS INTO COURT IS BASELESS</u>**

Finally, Majapara's motion also seeks to compel Wachovia to place approximately $14 million into Court pending the resolution of this action. Df. Br. at pp. 13-15. This part of Majapara's application is not supported by any case law, statute or factual underpinnings. Indeed, this generalized request for relief appears to be an application for a mandatory injunction

to compel Wachovia to take certain action.  Such a request for a mandatory injunction is unsupported and inappropriate.

In order to be entitled to the drastic relief of a mandatory injunction, a party must first establish: (1) irreparable harm; (2) equities favoring the moving party; and (3) a "clear" or "substantial" showing of a likelihood of success.  Omnipoint Communications, Inc. v. Port Authority of New York and New Jersey, 1999 WL 494120, at *5-6 (S.D.N.Y. July 13, 1999) (Jones, J.).  Not only does Majapara not establish any of these elements in its papers, but it cannot.

Indeed, Wachovia's right to take the approximate $14 million as setoff is unchallenged by Majapara.  In this regard, the Terms & Conditions that govern Majapara's accounts at Wachovia specifically provides:

> If [Majapara] owes Wachovia, acting in any capacity, money as a depositor, borrower, guarantor, judgment debtor or in connection with any trade payment or otherwise . . . and it becomes due, Wachovia has the right under the law (called "setoff") and under these Terms & Conditions to use the money from [Majapara's] Account to pay the debt.

See Exh. D.  Thus, Majapara's instant request is wholly unsupported by any proof and it should be denied.

## CONCLUSION

For the foregoing reasons and those set forth in the accompanying McKessy Declaration, Perez Declaration, Gross Declaration, and the Amended Complaint, Majapara's motion to vacate should be denied and the Court's preliminary restraints and order of attachment should be sustained in their entirety, along with such other and further relief as the Court deems just, proper, and equitable.

Dated:    New York, New York
          February 12, 2008

                                REED SMITH LLP


                                By: _____
                                    Scott S. McKessy (SM-5479)
                                    Casey D. Laffey (CL-1483)
                                599 Lexington Avenue
                                New York, New York 10022
                                Tel. (212) 521-5400
                                Fax. (212) 521-5450


                                *Attorneys for Plaintiff*
                                *Wachovia Bank, National Association*

# **<u>Appendix</u>**



NEW YORK LAW INSTITUTE
31828000861143

Legislative Docume       No. 90

## STATE OF NEW YORK

### REPORT

OF

## THE JUDICIAL CONFERENCE

### THE JUDICIAL CONFERENCE

AND

### THE OFFICE OF COURT ADMINISTRATION

FOR THE CALENDAR YEAR
## JANUARY 1, 1976 THROUGH DECEMBER 31, 1976

#### ADMINISTRATIVE BOARD OF THE JUDICIAL CONFERENCE

CHARLES D. BREITEL, Chairman

| | |
|---|---|
| HAROLD A. STEVENS | HAROLD E. KOREMAN |
| FRANK A. GULOTTA | JOHN S. MARSH |

#### MEMBERS OF THE JUDICIAL CONFERENCE

| | |
|---|---|
| CHARLES G. TIERNEY | JOHN H. COOKE |
| JOHN E. CONE | DANIEL J. DONAHOE |
| DE FOREST C. PITT | M. MARVIN BERGER |
| GILBERT H. KING | OREST V. MARESCA |
| GERALD SAPERSTEIN | ALFRED S. ROBBINS |
| GEORGE W. MARTHEN | H. BUSWELL ROBERTS |

DUNCAN S. MACAFFER

RICHARD J. BARTLETT
*State Administrative*
*Judge*

249

nt statute under which fifty
ozen by service of process on
ial authority. The case was
iple to wages, "a specialized
t problems in our economic
U.S. 67 (1972), the Florida
s that allowed seizure by a
of hearing or judicial order
*Mitchell v. W. T. Grant Com-*
ina statute allowing ex parte
ibject to a vendor's lien was
and Pennsylvania laws, it
ation of the ground for the
creditor, and recognized the
ision by posting a bond, and
he debtor to seek dissolution
*h Georgia Finishing, Inc. v.*
75), the impounding, in a
's bank account pursuant to
found unconstitutional be-
earing at which the creditor
at least "probable cause" to

ional requirements was sub-
States Supreme Court upon
iding the case to the three-
o abstain from a decision on
il the parties had an oppor-
he New York law from the
in *Carey v. Sugar,* 425 U.S.

istrict Court below was cor-
*Commission v. Pullman Co.*
44, 84 L. Ed. 971, 974 (1941)
in this Court, see, e.g *North*
, 419 U.S. 601 95 S. Ct. 719,
*v. W. T. Grant Co.* 416 U.S.
2d 406 (1974); *Fuentes v.*
, 32 L. Ed 2d 556 (1972) the
'PLR § 6223 to preclude an
o the merits of a plaintiff's
*. Indiana Employees Assn.*
L. Ed. 2d 148 (1975). On the
ree-judge court itself recog-
ld conclude otherwise. The
lready held that an attach-
y" appears "that the plain-
nerits. *Wulfsohn v. Russian*
ic, 234 N.Y. 372, 377, 138
*. Levon Properties,* 45 A.D.
1 Dept. 1973); *Richman v.*
'.S. 2d 52 (3rd Dept. 1973);

*Martin Enterprises, Inc. v. M. S. Kaplan Co.,* 45 A.D. 2d 883, 358 N.Y.S. 2d 160. The precise nature of any inquiry into the merits which will be made by the New York courts under this rubric is unclear, but an enquiry consistent with the constitutional standard is by no means automatically precluded. Indeed, two New York trial courts have expressly held subsequent to the decision below, that where fact issues are raised, on a motion to vacate an attachment, with respect to the underlying claim, a preliminary hearing will be held on these issues. *Regnell v. Page,* 82 Misc. 2d 506, 369 N.Y.S. 2d 936 (S. Ct. N.Y. Co., 1975); *New York Auction Co. v. Belt* 368 N.Y.S. 2d 98, N.Y.L.J. April 9, 1975, p. 17, col. 3 (S. Ct. N.Y. Co.).

The Advisory Committee, upon review of the relevant judicial decisions and Professor Donnelly's study, and upon consideration of the many practical procedural problems arising under Article 62 as now written, recommends the foregoing legislation. The revisions recommended by the Advisory Committee assure the constitutionality and effectiveness of New York's attachment procedures. They strike a fair balance between defendant's right to due process and plaintiff's interest in preserving the utility of the attachment procedures. The major revisions may be summarized as follows:

(1) The status of the defendant as a foreign corporation is no longer, in and of itself, a sufficient ground for attachment, unless the foreign corporation is not qualified to do business in the state (CPLR 6201).

(2) The nature of the particular action is no longer, in and of itself, a sufficient ground for attachment (CPLR 6201), unless the action is based on a sister state judgment entitled to full faith and credit or on a foreign country judgment entitled to registration in New York.

(3) The utility of obtaining an order of attachment on notice is enhanced by authorizing, upon motion of the plaintiff, the issuance of an ex parte temporary restraining order (CPLR 6210 (new)).

(4) Where an ex parte application for attachment is used, the defendant is protected by a new requirement that the levy be swiftly followed by a motion to confirm the attachment (CPLR 6211 (b) (new)).

(5) The plaintiff's liability to the defendant for an improper or wrongful attachment is not limited to the amount of the undertaking (CPLR 6212(e) (new)).

(6) Attached monies can no longer be held in non-interest bearing accounts (CPLR 6218(a)).

(7) At all stages of the proceeding, whether attachment is sought on notice or ex parte, including a hearing upon a motion to confirm, vacate or modify an attachment, the burden rests upon the plaintiff to show the grounds for the attachment, the need for the attachment, and the probability of the plaintiff's ultimate success on the merits (CPLR 6211(b) (new), 6212(a), and 6223(b) (new)).

Several minor changes, designed to correct cross-references,

clarity language, or ensure adequate notice of various proceedings to interested persons, are also recommended.

The Advisory Committee believes that comparable constitutional principles apply to all the provisional remedies, but that their application differs because of the peculiar nature of each remedy. Arrest involves the person of the defendant, not merely his property. In attachment there is a unique feature that makes the due process issue especially acute. The property of the defendant subject to seizure in attachment unquestionably belongs to the defendant, not the plaintiff. It is not the subject of the action it may provide a basis for exercising jurisdiction and secure the enforcement of plaintiff's claim. In contrast to other provisional remedies and replevin, the plaintiff has a claim to, or interest in, the very property that is the subject of the action. This is true in respect to receivership and lis pendens. Even in the preliminary injunction relates to the identical relief sought in the action for a permanent injunction, or to the very subject matter of the action. In *Mitchell* the Supreme Court recognized that both plaintiff and defendant had some color of right to the disputed property in the sequestration proceeding and that a balancing of interests was required. The Advisory Committee believes the cases require greater protection for the plaintiff's interest in the attached property. The stricter attitude of the courts in *North Georgia Finishing, Inc.* and in *Sugar* may well be explained on this basis. Therefore, the Advisory Committee concludes that an attachment statute must provide especially clear and effective protections to the defendant to assure constitutionality.

An analysis of each section of the proposed bill follows:

CPLR § 6201 Proposed Change

It is recommended that CPLR 6201 be amended as follows:

§ 6201. Grounds for attachment. An order of attachment may be granted in any action, except a matrimonial action, where the plaintiff has demanded and would be entitled, in whole or in part, or in the alternative, to a money judgment against one or more defendants, when:

1. the defendant is a [foreign] corporation or not a resident or domiciliary of] *nondomiciliary residing without or is a foreign corporation not qualified to do business in the state;* or

2. the defendant resides or is domiciled in the state and cannot be personally served despite diligent efforts to so; or

[3. the defendant, with intent to defraud his creditors or to avoid the service of summons, has departed or is about to depart from the state, or keeps himself concealed therein; or

4.] 3. the defendant, with intent to defraud his creditors, has assigned, disposed of, *encumbered* or secreted property, or removed it from the state or is about to do any of these acts; or

[5. the defendant, in an action upon a contract, express or

260

implied, has been guilty of a fraud in contracting or incurring the liability; or

6. the action is based upon the wrongful receipt, conversion or retention by the aiding or abetting thereof, of any property held or owned by any governmental agency, including a municipal or public corporation, or officer thereof; or

7[.] 4. the cause of action is based on a judgment, decree or order of a court of the United States or of any other court which is entitled to full faith and credit in this state, or on a judgment which qualified for recognition under the provisions of article 53 [.; or]

[8. there is a cause of action to recover damages for the conversion of personal property, or for fraud or deceit.]

Comment

The proposed amendment of subparagraph 1 of this section would subject foreign corporations to attachment only where such corporations are not qualified to do business in the state. There is never a need for a jurisdictional attachment when a foreign corporation has obtained a certificate of authority to do business in New York.

Present subparagraph 3 is eliminated as archaic and unnecessary. While at one time such a provision was needed to secure jurisdiction in certain cases, the provision has been outmoded by the availability of new jurisdictional tools (CPLR 308(5)). Moreover, the provision largely overlaps with present subparagraphs 1 and 2. The Weinstein, Korn and Miller Treatise (§ 6201.11) properly points out that "it is difficult to imagine an instance in which attachment could be granted under subparagraph 3 against a defendant trying to avoid service that would not fall within subparagraphs 1 and 2." If the defendant is a resident or domiciliary, or a corporation qualified to do business in the state, the plaintiff should be able to effect personal service without resorting to attachment. If the defendant is a nondomiciliary residing without the state or a foreign corporation not qualified to do business in the state, attachment is available under subparagraph 1 as proposed to be amended.

Paragraphs 5, 6 and 8 are repealed because each of the provisions grounds attachment solely on the nature of the action (fraud in inducing contract (paragraph 5)); (speculation (paragraph 6)); (conversion, fraud or deceit (paragraph 8)). The present statute, in authorizing attachment in these cases, apparently indulges in the unproven presumption that defendants charged with the stated wrongs are more likely to indulge in conduct frustrating the enforcement of a future judgment in plaintiff's favor than defendants in other cases. There is no reason why a defendant charged, for example, with conversion is more likely to tamper with his property than one sued for assault, wrongful death or negligence. In the absence of compelling reasons, drastic interference with the free use and enjoyment of defendant's property should not be authorized on the basis of limited judicial cogni-

261

252

tion, long before defendant has his full day in court and his liability has been established.

Paragraph 7 would be renumbered paragraph 4, but would otherwise remain as it is presently reads, because attachment should be available to secure judgments entitled to full faith and credit or qualifying for registration under Article 53. These are situations sui generis where the defendant had his day in court, or at least an opportunity for a day in court, although the court was foreign rather than domestic.

CPLR § 6202 Proposed Change

It is recommended that CPLR 6202 be amended as follows:

§ 6202. Debt or property subject to attachment; proper garnishee. Any debt or property against which a money judgment may be enforced as provided in section 5201 is subject to attachment. The proper garnishee of any such property or debt is the person designated in section 5201; for the 'purpose of applying the provisions to attachment, references to a "judgment debtor" in section 5201 and in subdivision (h)(i) (i) of section 105 shall be construed to mean "defendant."

Comment

The cross-reference to subdivision (h) of section 105 would be amended to refer to subdivision (i) of section 105, as relettered by Chapter 238 of the Laws of 1973. This is a corrective amendment.

CPLR § 6210 (new) Proposed Change

It is recommended that a new § 6210 be inserted into the CPLR to read as follows:

§ 6210. Order of attachment on notice; temporary restraining order; contents. Upon a motion on notice for an order of attachment, the court may, without notice to the defendant, grant a temporary restraining order prohibiting the transfer of assets by a garnishee as provided in section 6214(b). The contents of the order of attachment granted pursuant to this subdivision shall be as provided in section 6211(a).

Comment

Proposed new CPLR 6210 would effect two basic changes. It would expressly provide in statutory form that the plaintiff may apply for an order of attachment on notice. It would further provide that the court may prohibit the transfer of assets by a garnishee or the defendant, as provided in CPLR 6214(b), through a temporary restraining order, issued in part.

At present the only explicit provision governing the granting of an order of attachment to the plaintiff sets forth the procedure (CPLR 6211). Thus, proposed CPLR 6210 would codify plaintiff's option of proceeding on notice which was always

253

available in practice, although not spelled out in a separate provision in the CPLR. However, the plaintiff's option was rarely used because the motion-on-notice method offered no protection to the plaintiff in restraining the transfer of assets by the garnishee before the hearing.

Spelling out the proposed procedure, with the restraining order component, would codify a practice employed by some courts as a result of constitutional concerns about the ex parte procedure. The utility of obtaining an order of attachment on notice is enhanced by permitting the use of an ex parte temporary restraining order pending the hearing on the motion. This both encourages pre-attachment hearings (protecting defendants) and permits use of a temporary restraining order (protecting plaintiffs).

Ordinarily the most practicable method of moving on notice for an order of attachment, while simultaneously seeking a temporary restraining order without notice, would be to proceed by order to show cause on a single set of motion papers. However, nothing would preclude a plaintiff from proceeding on separate motion papers, by ordinary motion on notice, for an order of attachment and for a temporary restraining order. The temporary restraining order is designed to protect the plaintiff during the period which will elapse from the time the plaintiff moves for an order of attachment to the time the sheriff is able to levy upon each garnishee under the order, after it has been granted.

By making reference to CPLR 6214(a), this provision also makes it clear that the contents of an order of attachment obtained on notice are the same as the contents of an order of attachment obtained ex parte.

CPLR § 6211 Proposed Change

It is recommended that CPLR 6211 be amended as follows:

§ 6211. Order of attachment without notice. (a) When granted; contents. An order of attachment may be granted without notice, before or after service of summons and at any time prior to judgment. It shall specify the amount [of the plaintiff's demand] to be secured by the order of attachment including any interest, costs and sheriff's fees and expenses, be indorsed with the name and address of the plaintiff's attorney and shall be directed to the sheriff of any county or of the city of New York where any property in which the defendant has an interest is located or where a garnishee may be served. The order shall direct the sheriff to levy within his jurisdiction, at any time before final judgment, upon such property in which the defendant as an will satisfy the plaintiff's demand together with probable interest, costs, and sheriff's fees and expenses[ amount specified in the order of attachment.

(b) Confirmation of order. An order of attachment granted without notice shall provide that within a period not to exceed five days after levy, the plaintiff shall move, on such notice as the court shall direct to the defendant, the garnishee, if any, and the

sheriff, for an order confirming the order of attachment and any levy thereunder shall have no further effect and shall be vacated upon motion. Upon the motion to confirm, the provisions of section 6223(b) shall apply. An order of attachment granted without notice may provide that the sheriff refrain from taking any property levied upon into his actual custody, pending further order of the court.

254

## Comment

The present section, now headed "order of attachment", would be amended to make it clear that it applies to an order granted ex parte. The section would be divided into two subdivisions, (a) and (b), the text of subdivision (b) being new.

Subdivision (a) would be clarified to indicate that the amount specified in the order of attachment is the amount to be secured by that order, including any interest, costs and sheriff's fees and expenses.

New subdivision (b) would provide that where the ex parte motion for attachment is used, the defendant is protected by the requirement that within ... the defendant shall ... the levy, the plaintiff shall move, on such notice as the court shall direct, to ... the defendant, the garnishee, if any, and the sheriff for an order confirming the order of attachment. If plaintiff fails to make the order of attachment and any levy thereunder shall have no further effect. Thus, where an ex parte motion for attachment is used, the defendant is protected by the requirement that the levy be swiftly followed by a motion by the plaintiff to confirm the attachment. This procedure largely codifies the minimum guidelines for attachment contained in the directive of October 28, 1974 of Honorable Edward Thompson, Administrative Judge of the Civil Court of the City of New York, and a similar rule promulgated by the Appellate Division, Fourth Judicial Department (22 NYCRR 1059.13).

Under the procedure established by the proposed amendment, a garnishee would no longer be bound by the levy or the attachment if the motion to confirm was not made within five days of the levy, or within a shorter period set by the court. Although a motion of vacatur is not required to void the attachment and levy under this provision, it is permitted. A defendant, for example, may desire to make a motion to secure an order formally vacating the attachment in order to lay a procedural foundation for recovering damages suffered on account of an improper attachment.

The time period of five days after levy within which the motion to confirm may be brought is the statutory maximum period. The court, in its discretion, may set a shorter period where appropriate. The notice of the motion to confirm envisioned by this provision is, of course, that notice best calculated as most likely, under the circumstances, to give the defendant actual notice (see Mullane v. Central Hanover Bank and Trust Co., 339 U.S. 306 (1950)).

---

While ordinarily it may be anticipated that the plaintiff will proceed by motion on notice coupled with a temporary restraining order, and usually by order to show cause, often enabling swifter service on the defendant, the plaintiff may instead utilize the ex parte procedure. An advantage of the ex parte procedure to the plaintiff is that priority of lien is established only by delivery of the order of attachment to the sheriff (see CPLR 6226).

255

## CPLR R.6212 Proposed Change

It is recommended that CPLR 6212 be amended as follows:

Rule 6212. Motion papers; undertaking; filing; demand; damages. (a) Affidavit, other papers. On a motion for an order of attachment, or for an order to confirm an order of attachment, the plaintiff shall show, by affidavit and such other written evidence as may be submitted, that there is a cause of action, *that it is probable that the plaintiff will succeed on the merits,* and [the] *that* one or more grounds for attachment provided in section [6203] *6201* [that] exist, and the amount demanded from the defendant above all counterclaims known to the plaintiff

(b) Undertaking. On a motion for an order of attachment the plaintiff shall give an undertaking, in a total amount fixed by the court, but not less than [two hundred fifty] *five hundred* dollars, a specified part thereof conditioned that the plaintiff shall pay to the defendant all [legal] costs and damages, *including reasonable attorney's fees,* which may be sustained by reason of the attachment if the defendant recover judgment or if it is finally decided that the defendant's property, and the balance conditioned that the plaintiff shall pay to the sheriff all of his allowable fees for such fees.

(c) Filing. Within ten days after the granting of an order of attachment, the plaintiff shall file it and the affidavit and other papers upon which it was based and the summons and complaint in the action. Unless the time for filing has been extended, the order shall be invalid if not so filed, except that, if a person upon whom it is served shall not be liable for acting upon it as if it were valid without knowledge of the invalidity.

(d) Demand for papers. At any time after property has been levied upon, the defendant may serve upon the plaintiff a written demand that the papers upon which the order of attachment was granted and the levy made be served upon him. Not more than one day after service of the demand, the plaintiff shall cause the papers demanded to be served at the address specified in the demand. A demand under this subdivision shall not of itself constitute an appearance in the action.

(d) *Damages. The plaintiff shall be liable to the defendant for all costs and damages, including reasonable attorney's fees, which may be sustained by reason of the attachment if the defendant recovers judgment, or if it is finally decided that the plaintiff was not entitled to an attachment of the defendant's property;*

256

*Plaintiff's liability shall not be limited by the amount of the undertaking.*

Comment

Subdivision (a) would be amended to contain a new requirement that the plaintiff's affidavit, on the motion for an order of attachment or for a confirming order, show that it is probable that the plaintiff will succeed on the merits and that one or more grounds for attachment exist. This would conform the statutory requirement to dicta in the United States Supreme Court cases cited previously. An erroneous cross-reference would also be corrected.

Subdivision (b) would be amended to increase the $250 minimum amount of an undertaking to $500 to reflect inflation since 1963 when the CPLR became effective and to make it clear that reasonable attorney's fees are recoverable costs under the undertaking.

Subdivision (c) is new. It would provide that the plaintiff shall be liable for all costs and damages, including reasonable attorney's fees, if the defendant recovers judgment or if it is finally decided that plaintiff is not entitled to an attachment. This is based on the fact that attachment is a drastic remedy to be used with care. The new provision that plaintiff's liability shall not be limited by the amount of the undertaking does away with the necessity of continual motions to increase the undertaking and improves the remedy for damages.

CPLR § 6214 Proposed Change

It is recommended that CPLR 6214 be amended as follows: § 6214. Levy upon personal property by service of order. (a) Method of levy. The sheriff shall levy upon any interest of the defendant in personal property, or upon any debt owed to the defendant, by serving a copy of the order of attachment upon the garnishee, or upon the defendant if property to be levied upon is in the defendant's possession or custody, in the same manner as a summons except that such service shall not be made by delivery of a copy to a person authorized to receive service of summons solely by a designation filed pursuant to a provision of law other than rule 318.

(b) Effect of levy prohibition of transfer. A levy by service of an order of attachment upon a person other than the defendant is effective only if, at the time of service, [he] *such person* owes a debt to the defendant or [he] is in the possession or custody of property in which [he] *such person* knows or has reason to believe the defendant has an interest, or if the plaintiff has stated in a notice which shall be served with the order that a specified debt is owed by the person served to the defendant or that the defendant has an interest in specified property in which possession or custody of the person served. All property in which the defendant is known or believed to have an interest then in and thereafter coming into the possession or custody of such person, including any specified in the notice, and all debts of

such a person, including any specified and thereafter coming due to the defendant served with the order shall forthwith transfer property, and pay all such debts upon maturity to the any document necessary to effect the payment, transfer or delivery *specified in the order of attachment*, to the sheriff and ery. After such payment, transfer or delivery, property coming into the possession or custody of the garnishee, or debt incurred by him, shall not be subject to the levy. Until such payment, transfer or delivery is made, or until the expiration of ninety days after the service of the order of attachment upon him, or if such further time is provided by any subsequent order of the court served upon him, whichever event first occurs, the garnishee is forbidden to make or suffer any sale, assignment or transfer of, or any interference with any such property, or pay over or otherwise dispose of any such debt, to any person other than the sheriff, except upon direction of the sheriff or pursuant to an order of the court. A garnishee, however, may collect or redeem an instrument received by him for such purpose and he may sell or transfer in good faith property held as collateral or otherwise than pursuant to pledge thereof or at the direction of any person other than the defendant authorized to direct sale or transfer, provided that the proceeds in which the defendant has an interest be retained subject to the levy. A plaintiff who has specified personal property or debt to be levied upon in a notice served with an order of attachment shall be liable to the owner of the property or the person to whom the debt is owed, if other than the defendant, for any damages sustained by reason of the levy.

(c). Seizure by sheriff, *notice of satisfaction*. Where property or debts have been levied upon by service of an order of attachment, the sheriff shall take into his actual custody all such property capable of delivery and shall collect and receive all such debts. *When the sheriff has taken into his actual custody property or debts having value sufficient to satisfy the amount specified in the order of attachment, the sheriff shall notify the defendant and each person upon whom the order of attachment was served that the order of attachment has been fully executed.*

(d) Proceeding to compel payment or delivery. Where property or debts have been levied upon by service of an order of attachment, the plaintiff may commence a special proceeding against the garnishee served with the order to compel the payment, delivery or transfer to the sheriff of such property or debts, or to secure a judgment against the garnishee. Notice of petition shall also be served upon the *parties to the action and* the sheriff. A garnishee may interpose any defense or counterclaim which he might have interposed against the defendant if sued by him. The court may permit any adverse claimant to intervene in the proceeding and may determine his rights in accordance with section 6221.

(e) Failure to proceed. At the expiration of ninety days after a levy is made by service of the order of attachment, or of such

258

further time as the court, upon motion of the plaintiff *on notice to the parties to the action,* has provided, the levy shall be void except as to property or debts which the sheriff has taken into his actual custody, collected or received or as to which a proceeding under subdivision (d) has been commenced.

### Comment

The amendments to the several subdivisions of this section, relating to levy by the sheriff upon personal property pursuant to an order of attachment, are designed to clarify the language and to require that parties and other interested persons receive appropriate notice of proceedings authorized under this statute. The addition of the phrase "unless the court orders otherwise" in § 6214(b) in respect to the transfer of assets to the sheriff is required to conform to new § 6211(b) which permits the court in its discretion in an ex parte order of attachment to provide that the sheriff refrain from taking the property levied upon into his actual custody.

### CPLR § 6216 Proposed Change

It is recommended that CPLR 6216 be amended as follows:

§ 6216. Levy upon real property. The sheriff shall levy upon any interest of the defendant in real property by filing with the clerk of the county in which the property is located a notice of attachment indorsed in which the name and address of the plaintiff's attorney and stating the names of the parties to the action, the amount [of the plaintiff's claim] *specified in the order of attachment* and a description of the property levied upon. The clerk shall record and index the notice in the same books, in the same manner and with the same effect, as a notice of the pendency of an action.

### Comment

The phrase "the amount of plaintiff's claim" would be superseded by the phrase "the amount specified in the order of attachment," which is more precise. It applies to all items to be secured by the order of attachment, including interest, costs and the sheriff's fees and expenses.

### CPLR § 6218(a) Proposed Change

It is recommended that subdivision (a) of CPLR 6218 be amended as follows:

(a) Retention of property. The sheriff shall hold and safely keep all property or debts paid, delivered, transferred or assigned to him or taken into his custody to answer any judgment that may be obtained against the defendant in the action, unless otherwise directed by the court or the plaintiff, subject to the payment of the sheriff's fees and expenses. *Any money shall be held for the benefit of the parties to the action in an interest-bearing trust account at a national or state bank or trust com-*

pany. If the urgency of the case, requires... sale or other disposition of property, specifying... terms thereof, with (or without) notice to the parties *and the garnishee who had possession of such property.*

### Comment

This provision would be amended to assure that any attached monies shall be held for the benefit of the parties to the action in an interest-bearing trust account at a national or state bank or trust company. The desirability and fairness of such a provision is self-evident as preserving for the party who ultimately prevails the interest on attached funds. This amendment is an effort to assure that the prevailing party is made whole.

The provision would also be amended to require notice to parties and garnishees when the court directs the sale or other disposition of attached property.

### CPLR § 6221 Proposed Change

It is recommended that CPLR 6221 be amended as follows:

§ 6221. Proceedings to determine adverse claims. Prior to the application of property or debt to the satisfaction of a judgment, any interested person may commence a special proceeding against the plaintiff to determine the rights of adverse claimants to the property or debt, by serving a notice of petition upon the sheriff and upon each party in the same manner as a notice of motion. The proceeding may be commenced in the county where the property was levied upon, or in the county where the order of attachment is filed. The court may vacate or discharge the attachment, void the levy, direct the disposition of the property or debt, direct that undertakings be provided or released, or direct the damages be awarded. Where there appear to be disputed questions of fact, the court shall order a separate trial, indicating the person who shall have possession of the property pending a decision and the undertaking, if any, which such person shall give. If the court determines that the adverse claim was fraudulent, it may require the claimant to pay the plaintiff the reasonable expenses incurred in the proceeding, including reasonable attorney's fees, and any other damages suffered by reason of the claim. *The commencement of the proceeding... not of itself subject the adverse claimant to... with respect to any matter other than the matter... proceeding.*

### Comment

This section, governing proceedings to determine adverse claims, would be clarified by providing that the commencement of the proceeding shall not of itself subject the adverse claimant to personal jurisdiction with respect to any matter other than the claim asserted in the proceeding. The Advisory Committee believes this provision is fair. While it probably reflects present law, the amendment will eliminate any ambiguity that might exist.