Scott S. McKessy (SM-5479)
Casey D. Laffey (CL-1483)
REED SMITH LLP
599 Lexington Avenue
New York, New York 10022
Tel. (212) 521-5400
Fax. (212) 521-5450
Attorneys for Plaintiff
Wachovia Bank, National Association

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
WACHOVIA BANK, National Association,        :
                                            :    07 Civ. 11230 (BSJ)(RLE)
                        Plaintiff,          :
                                            :
            - against -                     :    **DECLARATION
                                            :    OF SCOTT S. MCKESSY**
CASA DE CAMBIO MAJAPARA S.A. de C.V. a/k/a  :
MAJAPARA CASA DE CAMBIO S.A. de C.V.,       :
                                            :
                        Defendant.          :
-------------------------------------------------------------X

I, SCOTT S. MCKESSY, hereby declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1.   I am a member of the law firm of Reed Smith LLP, attorneys for Wachovia Bank, National Association ("Wachovia"), the plaintiff in this action. I submit this Declaration in opposition to the motion of defendant Casa de Cambio Majapara S.A. de C.V. a/k/a Majapara Casa de Cambio S.A. de C.V. ("Majapara") to, *inter alia*, vacate this Court's order of attachment dated December 20, 2008.

### Introduction

2.   This is a simple case where two entities agreed to exchange equal amounts of currency: Wachovia did; Majapara did not; and Majapara then refused to return Wachovia's money. As a result, Wachovia commenced the within action and sought and

obtained an order for prejudgment attachment. Majapara now comes before this Court telling a story that Majapara (not Wachovia) is the victim of Majapara's misappropriation of $38-plus million of Wachovia's money. Consequently, Majapara now seeks to have this Court's order of attachment vacated. But this attempt to recast Majapara as the victim is as misplaced as is it unsupported, and, accordingly, Majapara's instant motion should be denied for various reasons.

3. ***First***, Majapara's instant motion is completely unsupported. While its memorandum of law recites pages and pages of purported "facts" upon which Majapara bases its motion, virtually none of those "facts" are supported by any proof. And the solitary two-page client declaration that Majapara does submit in connection with its motion, does not challenge any of Wachovia's factual allegations but is submitted solely to attach documents that have nothing to do with the instant action. In essence, Majapara complains that this Court was not provided with all of the relevant facts and then does not provide this Court with any relevant facts. Without proof, Majapara's motion should not even be considered by this Court.

4. ***Second***, Majapara's initial moving papers established two grounds for this Court to grant prejudgment attachment of Majapara's assets, and this Court's order of attachment was granted on each separate basis. Majapara's present motion, however, only challenges one of those grounds. So even assuming Majapara's motion has merit (which it does not), the order of attachment was still well-issued.

5. ***Third***, the only relevant facts not previously before this Court are the facts that Majapara has violated numerous mandates from this Court. In short, since this action was commenced, Majapara has failed to disclose all of its assets and where they are

2

located (in violation of this Court's December 14 and January 8 orders), allowed tens of millions of dollars to be removed from Majapara's account here in New York (also in violation of that Court's December 14 order), and refused to represent that it is in compliance with this Court's orders.

6. ***Fourth***, Majapara does not claim to have suffered any damages as a result of the issuance of any of this Court's orders. To begin with, Majapara never claims to have conducted itself in accordance with the terms of this Court's orders, and does not provide this Court with any proof of any damage. Despite this lack of harm, Wachovia posted a $1 million bond in connection with the order of attachment, but has not successfully attached any of Majapara's assets within this jurisdiction – primarily due to Majapara's efforts to frustrate any such attachment. Based upon these facts, however, Majapara now makes the incredible complaint that the bond should be increased 90 fold! There is simply no basis – let alone a rational one – for Majapara's demand.

7. ***Fifth***, the order of prejudgment attachment obtained from this Court is not extraterritorial and has not been served upon any entity that is not located here in New York.

8. ***Sixth***, Majapara provides this Court with no basis for demanding Wachovia deposit approximately $14 million into Court. Indeed, as is unchallenged by Majapara, Wachovia exercised this right as per the Terms and Conditions governing Majapara's accounts.

### Factual Background

9. Majapara is a Mexican corporation, does not maintain any offices in New York, and is in the business of retail and wholesale foreign exchange. See Declaration of

Carlos Perez, dated December 13, 2007 ("Perez December Decl.") ¶ 5 (previously submitted to this Court in connection with Wachovia's December 14, 2007 Order to Show Cause), a copy of which is annexed to the accompanying Compendium of Exhibits as Exhibit A.[1]

10. In the late 1990's, Majapara and First Union National Bank ("First Union") (a predecessor to Wachovia) agreed to enter into foreign exchange transactions. Perez December Decl. (Exh. A), ¶ 6. Majapara would agree to purchase from First Union a certain amount of one currency in exchange for Majapara selling to First Union an equivalent amount of another currency at the applicable exchange rate. Id. In order to facilitate these exchange transactions, on or about April 6, 2000, Majapara and First Union entered into a First Union Online FX Subscription Agreement ("FX Subscription Agreement"), a copy of which is annexed as Exhibit B.

11. In 2002, First Union and Wachovia merged. Perez December Decl. (Exh. A), ¶ 8.

12. Majapara also held a number of other accounts with Wachovia. Amended Complaint ¶ 15; a copy of which is annexed as Exhibit C. Upon the opening of Majapara's New York account, Majapara agreed that Wachovia's Terms & Conditions For Global Financial Institutions ("Wachovia's Terms & Conditions"), amongst other documents, governed all of the parties' business relationships and dealings. Perez December Decl. (Exh. A), ¶ 9. A copy of Wachovia's Terms & Conditions is annexed as Exhibit D.

---

[1] All exhibits will be annexed to the accompanying Compendium of Exhibits.

13. On or about December 5, 2007, Majapara and Wachovia agreed to do a series of seven (7) transactions, all of which were to be settled on December 7, 2007. Perez December Decl. (Exh. A), ¶ 12.

14. Pursuant to the parties' agreement, the seven (7) foreign exchange transactions were to close on December 7, 2007. Id. ¶ 13. Wachovia transferred its half of the currency exchange. Id. Majapara did not deliver its half. Id.

15. On December 11, 2007, however, as was its right under Wachovia's Terms & Conditions, Wachovia was able to secure, as an offset to the debt owed, $9,460,000 Majapara attempted to transfer out of Wachovia to a Majapara account located in Citibank in New York. Id. ¶ 15. Accordingly, the total debt owed by Majapara to Wachovia is reduced based upon this offset. Wachovia also was able to secure an additional $3,960,155.00 in offset funds against the amount owed by Majapara. Id.

### Procedural History

16. On Friday, December 14, 2007, Wachovia commenced the within action against Majapara. See Exh. C. At that same time, Wachovia made an application to this Court, brought by Order to Show Cause, for a prejudgment order of attachment. The Court signed that order, set December 21, 2007 as the return date for that application and issued a temporary restraining order prohibiting Majapara, pending the hearing and determination of Wachovia's application for an order of attachment, from transferring any of its assets (the "December 14 Order"). A copy of the December 14 Order is annexed as Exhibit E.

17. Included in the December 14 Order was a clear prohibition against Majapara, pending a hearing and determination of Wachovia's application, from, *inter alia*, transferring any of its assets:

> IT IS FURTHER ORDERED THAT, pending the hearing and determination of this motion, Majapara, shall be and hereby is enjoined and restrained from transferring, selling, pledging, assigning or otherwise disposing of any of its assets.

18. The December 14 Order also specifically referenced the Majapara account (by account number) held by Citibank here in New York. The December 14 Order further required Majapara to disclose all of its assets to Wachovia no later than three (3) business days after service of the December 14 Order.

19. The December 14th Order, as well as certain other court papers, were received by Majapara on December 17th. Copies of the Certificate of Service and FEDEX tracking receipt are annexed as Exhibits F and G, respectively. Upon the hearing date of the order of attachment, which was advanced by this Court to December 20th, the Court, by order dated December 20, 2007 ("December 20 Order"), granted Wachovia's application. A copy of the December 20 Order is annexed as Exhibit H.

20. The next day, this Court issued an order, dated December 21, 2007, providing for, *inter alia*, expedited third-party discovery ("December 21 Order"). A copy of the December 21 Order is annexed as Exhibit I. Pursuant to the December 21 Order, Wachovia served interrogatories upon Citibank here in New York City. In response to those interrogatories, Citibank provided a letter detailing the closing-day balances for the Majapara account at Citibank from December 14, 2007 through January 2, 2007, as well as produced Majapara's December 2007 Account Statement. Copies of the January 4 Letter and December 2007 Account Statement are annexed as Exhibits J and K.

21. The December 14th order also required Majapara to provide a detailed list of all of its assets. It never did. This Court then, by endorsed letter, dated January 8, 2008, again directed Majapara to make this disclosure pursuant to the Court's prior directive ("January 8 Order"). A copy of the January 8 Order is annexed as Exhibit L. While Majapara eventually provided certain documentation, Wachovia discovered that Majapara failed to provide a full disclosure of all of its assets. A copy of Majapara's "disclosures" is annexed hereto as Exhibit M.

22. Indeed, on January 12, 2008, Wachovia requested that Majapara represent that it was in full compliance with this Court's orders. A copy of this request is annexed as Exhibit N. To date, however, Majapara has failed to provide Wachovia with any such representation – the reason why, unfortunately, is now clear.

23. Majapara now moves to vacate the December 20 Order.

### Majapara's Instant Motion Is Unsupported

24. Majapara's present motion claims that it is being made so that the Court can have before it all of the relevant facts that Wachovia did not disclose to this Court.

25. This is an odd theory upon which Majapara now proceeds as it does not refute, with any proof, the facts Wachovia established in its initial moving papers, it does not provide any proof for virtually any "fact" that purportedly supports its motion, and does not present this Court with any proof of relevant facts not previously disclosed by Wachovia.

26. To begin with, in Wachovia's initial moving papers it established that circumstances existed that indicated Majapara committed a fraud upon Wachovia. Perez December Decl. (Exh. A), ¶¶ 12-15. Majapara offers no testimony to refute this.

Majapara also offers no proof to refute the fact that it intended to frustrate Wachovia's collection of a judgment. Id. ¶¶16-21. Moreover, as more fully detailed in the accompanying Declarations of Carlos Perez and Andrew Gross, most of Majapara's unsupported "facts" are directly rebuffed.

27.     Next, Majapara's motion papers are almost entirely devoid of any proof – and the scant proof it does supply is mostly irrelevant to the instant action. For example, Majapara provides this Court with documents which it contends demonstrate it paid Wachovia for spot transactions. Declaration of Miguel Meza Rousseau at Exhs. A and B. But the spot transactions to which Majapara refers have nothing to do with the present dispute. Majapara also annexes a Mexican statute claiming (again, without any evidentiary foundation) that this provision permits Majapara to lend money. Id. at Exh. E. A simple read of the statute reveals that the provision supplied grants no such authorization.

28.     Finally, of the handful of facts Majapara supplies that have evidentiary support and are relevant, Wachovia previously disclosed them to this Court. For example, Majapara claims that Wachovia did not reveal that Majapara had been doing business with Wachovia for years (Df. Br. at p. 8); did not reveal that Majapara had offered to repay Wachovia (Id.); and did not reveal that Majapara conceded liability for the spot transactions (Id. at p. 5). But the fact is, Wachovia disclosed each of these facts to this Court in Wachovia's initial moving papers: Wachovia established that it had been doing business with Majapara since 2002 (Exh. A, ¶¶ 7-9); divulged that Majapara conceded liability (Id. ¶ 17); and disclosed that Majapara claimed it might be able to

repay the debt in two months. (Id. ¶ 19). There is simply no merit to Majapara's instant application.

29. The instant motion should be denied for its complete failure of proof.

### The Order of Attachment Was Well Founded

30. On December 20, 2007, this Court granted Wachovia's application for prejudgment attachment based upon the papers filed in connection with its Order to Show Cause dated December 14, 2007.

31. As set forth in Wachovia's initial moving papers, there were two separate statutory grounds for this Court to award Wachovia prejudgment attachment. And this Court granted the December 20 order upon **both** grounds:

> Wachovia is entitled to an order of attachment against the property of Majapara on the grounds that: (a) Majapara is a non-domiciliary foreign corporation not qualified to do business in the state under CPLR § 6201(1); and (b) Majapara intends to remove assets from Wachovia's reach with the intention of frustrating the enforcement of an eventual judgment in favor of Wachovia under CPLR § 6201(3).

Exh. H.

32. Indeed, as established in Wachovia's initial moving papers, as well as in its present papers in opposition to the instant motion, both statutory bases are established:

- Majapara is a non-domiciliary residing without the state (Perez December Decl. ¶ 5);

- Majapara is a foreign corporation not qualified to do business in New York (Id.);

- Majapara's financial condition poses a significant risk of enforcement of a future judgment – Majapara contends it is illiquid (Perez December Decl. ¶ 17), appears to be having issues paying its customers (Perez Dec. ¶ 27) and is going out of business (Df. Br. at p. 6);

- Majapara's conduct demonstrates its intent to frustrate enforcement of a future judgment – Majapara has failed to disclose all of its assets and where they are located (Exh.

9

M), all the while allowing more than $60 million to be drained from its account here in New York, in the days immediately preceding this Court's attachment hearing, in violation of this Court's clear and unambiguous prohibitions from doing so (Exhs. J and K).

**The Only Relevant Facts Not Previously Before
This Court Only Re-confirm That Attachment Was Appropriate**

33.     Again, Majapara brings its instant motion upon the theory that this Court was not provided with all of the relevant facts. But the only relevant facts not previously before this Court only re-confirm that attachment was warranted. In this regard, since Majapara received this Court's December 14 Order on December 17, it refused to comply with this Court's clear prohibitions and allowed more than $60 million to flow out of Majapara's Citibank account here in New York. See Exhs. J and K.

34.     Additionally, the December 14 Order required Majapara to provide Wachovia with a detailed list of all of its assets and where they are located. See Exh. E. Despite having received this directive on December 17, 2007, Majapara never complied with this order.

35.     Indeed, not until this Court issued the January 8 Order directing Majapara, once again, to provide this information, did Majapara purport to produce the required information. Upon review of these "disclosures", however, the information provided is blatantly insufficient. See Exh. M.

36.     In this regard, none of the assets disclosed identify their location. I am informed that a Mexican corporation may hold US$ denominated accounts in Mexico: consequently, the location of the assets listed on document "Majapara 0004" can be located in New York, Mexico, or elsewhere. Also, the list of bank accounts is incomplete. For example, as detailed in the Amended Complaint, Majapara has five accounts with Wachovia (Amended Complaint (Exh. C) ¶¶ 15, 55): "Majapara 0004"

only indicates Majapara has one with Wachovia. What other undisclosed accounts has Majapara chosen to omit from its list of assets?

37. Further, where is the disclosure of Majapara's assets other than bank accounts and real property? For example, Majapara, in its letter of December 13th, states that Majapara has extended credit to a number of third parties. A copy of the December 13 Letter is annexed as Exhibit O. Where is the listing and identification of any of these entities or these receivables? Additionally, in the letter from JOM Corp. (Jorge Ortiz Munoz's company), dated December 19, 2007, JOM Corp. claimed that it made significant purchases of currency from Majapara. A copy of JOM Corp.'s letter is annexed as Exhibit P. Indeed, JOM Corp. submitted documents in connection with the Illinois State Court action that represented that during 2007, JOM Corp. owed Majapara as much as $827,836. Copies of the relevant filings are annexed as Exhibit Q. Where is there any disclosure of this account receivable?

38. And these are just the items Wachovia is able to show now (without any discovery from Majapara).

39. On January 12, 2008, after having received Majapara's purported "asset disclosures," Wachovia requested that Majapara confirm that it was in full compliance with this Court's orders. See Exh. N. To date, Majapara has chosen to ignore that request and remains silent as to Majapara's compliance with this Court's orders.

40. Wachovia now knows why and has made a motion to hold Majapara in contempt of this Court's December 14 Order and January 8 Order.

### Majapara Has No Damages

41. Majapara also argues that the amount of the bond posted ($1 million) should be increased *90 fold* because $1 million is inadequate to cover damages suffered by Majapara as a result of attaching property here in New York. Again, Majapara's argument is without any factual basis.

42. First, Majapara offers no proof that is has suffered any damages as a result of this Court's December 20 Order. Indeed, how could it. Wachovia has not been able to attach any assets here due, primarily, to the fact that Majapara violated multiple court orders by refusing to disclose the identity and location of all of its assets and by removing more that $60 million from this jurisdiction just before the attachment hearing.

43. Next, Majapara's claim to have been a $90 million going-concern, as of December 31, 2007, is completely unsupported. Majapara provides no proof of this financial valuation or EBITDA multiplier, even though it submitted a declaration from its Treasurer. This figure also conflicts with Mr. Ortiz's going-concern valuation of Majapara of $70 million as of December 13, 2007. See Exh. P. Apparently, Majapara's value has increased by more than $20 million since Wachovia commenced this action.

### The Order of Attachment Was Never Served Outside of New York

44. Majapara also claims that the December 20 Order should be vacated because it is extraterritorial. This is simply not the case. The December 20 Order was never served outside of the State of New York. Indeed, Wachovia did not use the December 20 Order to attach funds at Harris Bank in Illinois. Wachovia commenced a separate action there for that attachment.

### Wachovia Exercised Its Contractual Right of Setoff

45.     Majapara also demands that Wachovia place the approximate $14 million in setoff into Court. There is no factual basis for this demand. Indeed, there cannot be as Wachovia exercised its right of setoff as per the parties' agreement governing Majapara's account. The Terms and Conditions specifically provides:

> If [Majapara] ever owes Wachovia, acting in any capacity, money as a depositor, borrower, guarantor, judgment debtor or in connection with any trade payment or otherwise, . . . and it becomes due, Wachovia has the right under the law (called "setoff") owed under these Terms & Conditions to use the money from [Majapara's} Account to pay the debt.

Exh. D.

46.     This is not challenged by Majapara.

### Conclusion

**WHEREFORE,** for the foregoing reasons and those set forth in the accompanying Perez Declaration, Gross Declaration, and Memorandum of Law, Majapara's motion should be denied in its entirety and this Court's temporary restraints and order of attachment should be affirmed, along with such other and further relief as the Court deems just, proper, and equitable.

Executed this 12th day of February, 2008.

_____
SCOTT S. MCKESSY