IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

WACHOVIA BANK, N.A.,                    )
                                        )
            Plaintiff,                  )
                                        ) No. 07 Civ. 11230 (BSJ)(RLE)
      v.                                )
                                        )
CASA de CAMBIO                          ) **ANSWER and COUNTERCLAIMS**
MAJAPARA S.A. de C.V.,                  )
                                        ) TRIAL BY JURY TRIAL REQUESTED
            Defendant.                  )

      Defendant Casa de Cambio Majapara S.A. de C.V. ("Majapara"), by its attorneys

Tannenbaum Helpern Syracuse & Hirschtritt LLP, for its answer and counterclaims to the

Amended Complaint filed by Plaintiff, Wachovia Bank, N.A. ("Wachovia"), sets forth as

follows:

## PRELIMINARY STATEMENT

      1.      Majapara denies the allegations contained in Paragraph 1 of the Amended

Complaint.

## VENUE/JURISDICTION

      2.      Majapara denies the allegations contained in Paragraph 2 of the Amended

Complaint.

      3.      Majapara denies the allegations contained in Paragraph 3 of the Amended

Complaint.

      4.      Majapara admits the allegations contained in Paragraph 4 of the Amended

Complaint.

## PARTIES

5.      Majapara admits the allegations in Paragraph 5. Furthermore, Majapara states Wachovia also maintains offices in many other locations, including Miami, Chicago and a representative office in Mexico City.

6.      Majapara admits the allegations in Paragraph 6.

## FACTS COMMON TO ALL COUNTS

### The Majapara Relationship With Wachovia

7.      For over ten years, Majapara has been doing business with Wachovia and its predecessor, First Union. As part of the business relationship Majapara had credit available through overdraft privileges, the ability to submit unlimited remittance to Wachovia for processing among others (collectively the "operating facilities"). These operating facilities had existed for many years.

Majapara denies the remaining allegations of this Paragraph 7.

8.      After years of doing business with First Union, First Union developed an online website through which FX transactions could be placed. In order to use its new website, First Union asked Majapara to sign the First Union Online FX Subscription Agreement ("Online FX Agreement"). The Online FX Agreement does not purport to set terms relating to FX transactions beyond online transactions. Those terms were what they had always been between Majapara and First Union. By its own terms, the Online FX Agreement limited its application to the use of the First Union website to place FX transaction orders. While the Online FX Agreement provides that First Union reserves the right without notice to modify, suspend, discontinue, or terminate the FX website or revoke any customer's access, it expressly states that

the parties' rights and obligations concerning online and other transactions shall not be impaired or otherwise affected by such actions.

Majapara denies the remaining allegations of Paragraph 8 of the Amended Complaint.

9.      Because Majapara is without sufficient knowledge or information to form a belief as to the truth of these allegations, Majapara denies the allegations of Paragraph 9 of the Amended Complaint.

10.      Majapara admits that it signed and sent the two documents attached to Wachovia's Amended Complaint as Exhibits B and C, but does not believe they are complete documents and denies Wachovia's characterization of the documents.  Exhibit B (the 2003 letter) deals exclusively with the use of one particular bank account in connection with online FX transactions. It provides that Majapara will use one particular account at Wachovia for the processing of its FX transactions with Wachovia.  The same is true of Exhibit C (the March 2006 agreement).   Neither Exhibit B nor Exhibit C contains terms specifically governing FX transactions. Majapara denies the remaining allegations contained in Paragraph 10 of the Amended Complaint.

**The Foreign Exchange Transactions At Issue**

11.      Majapara admits the allegations contained in the first sentence of Paragraph 11 of the Amended Complaint. Majapara denies that the transaction's were a departure from the parties ordinary dealings, Majapara denies the remaining allegations of Paragraph 11 of the Amended Complaint.

12.      Majapara placed FX transaction orders on December 5, 2007.  Wachovia delivered 26 million Euros to Majapara.  Because of Wachovia's breach of its contract with Majapara, Wachovia prevented Majapara from being able to make its payment to Wachovia on

December 7. Majapara denies the remaining allegations of Paragraph 12 of the Amended Complaint.

13.     Majapara denies the allegations contained in Paragraph 13 of the Amended Complaint.

14.     Majapara admits that Wachovia seized approximately $13.4 million that was in Majapara's accounts at Wachovia, but denies that Wachovia had any right to "secure" those funds or to "recover" any amounts purportedly "owed." Majapara denies the remaining allegations contained in Paragraph 14 of the Amended Complaint.

15.     Majapara admits that it maintained five accounts with Wachovia, but denies the remaining allegations of Paragraph 15 of the Amended Complaint.

16.     The Wachovia Terms and Conditions do not purport to set out the rights and obligations of parties to FX transactions. Thus, Majapara denies the allegations contained in Paragraph 16 of the Amended Complaint.

## COUNT I

### (Breach of Contract)

17.     Majapara incorporates its response to Paragraphs 1-16 above.

18.     On each business day for many years, Majapara would enter into millions of dollars of FX transactions with Wachovia. Each of those individual transactions took place in the context of the overall contractual relationship between Wachovia and Majapara. That contractual relationship is evidenced by the course of dealing between the parties over many years and the ordinary custom and practice in the foreign exchange business. On the basis of that contractual relationship, Majapara reasonably believed that should Wachovia decide to terminate Majapara's operating facilities, Wachovia would provide reasonable notice so that Majapara

would have time to move its business to another bank.  Wachovia breached its contractual duty to Majapara by terminating Majapara's operating facilities without cause and without providing Majapara any advance notice whatsoever.  Wachovia's breach caused significant disruption to Majapara's business because Majapara was left with no advance notice during which it could arrange for a substitute bank. Except as so stated, Majapara denies the allegations contained in Paragraph 18 of the Amended Complaint.

19.    Majapara denies the allegations contained in Paragraph 19 of the Amended Complaint.

20.    Majapara denies the allegations contained in Paragraph 20 of the Amended Complaint.

21.    Majapara denies the allegations contained in Paragraph 21 of the Amended Complaint.

## COUNT II

### (Promissory Estoppel – Alternate Count)

22.    Majapara incorporates its response to paragraphs 1-16 above.

23.    Majapara denies the allegations contained in Paragraph 23 of the Amended Complaint.

24.    On December 5, when Majapara placed the orders for the FX transactions, Majapara had every intention and expectation that these transactions would take place just as they had for more than ten years.  Wachovia would provide Majapara with one currency, and Majapara would provide Wachovia with the other one or two days later.  Wachovia's improper cancellation of Majapara's operating facilities, however, frustrated Majapara's intention and

expectation. Majapara denies the remaining allegations contained in Paragraph 24 of the Amended Complaint.

25.     Majapara admits that Wachovia delivered approximately $38 million worth of currency to Majapara, but denies that Wachovia did so in reliance upon Majapara's agreement to delivery certain currency to Wachovia.  Majapara denies the remaining allegations of Paragraph 25 of the Amended Complaint.

26.     Wachovia demanded that the funds be paid in full immediately. By virtue of its inequitable conduct, Wachovia had no right to demand payment from Majapara on December 7. Accordingly, Majapara denies the allegations contained in Paragraph 26 of the Amended Complaint.

27.     Majapara has not paid because Wachovia breached its agreement with Majapara and taken actions that frustrate Majapara's ability to. Accordingly, Majapara denies the allegations contained in Paragraph 27 of the Amended Complaint.

28.     Majapara admits that Wachovia seized approximately $13.4 million that was in Majapara's accounts at Wachovia, but denies that Wachovia had any right to "obtain" these funds, or to "offset" any remaining amount purportedly "owed." Majapara accordingly denies the allegations of Paragraph 28 of the Amended Complaint.

29.     Majapara denies the allegations contained in Paragraph 29 of the Amended Complaint.

30.     Majapara denies the allegations contained in Paragraph 30 of the Amended Complaint.

## COUNT III

### (Unjust Enrichment – Alternate Count)

31.    Majapara incorporates its response to Paragraphs 1-16 above.

32.    Majapara denies the allegations contained in Paragraph 32 of the Amended Complaint.

33.    On December 5, when Majapara placed the orders for the FX transactions, Majapara had every intention and expectation that these transactions would take place just as they had for more than ten years.  Wachovia would provide Majapara with one currency, and Majapara would provide Wachovia with the other one or two days later.  Wachovia's improper cancellation of Majapara's operating facilities, however, frustrated Majapara's intention and expectation. Accordingly, Majapara denies the allegations contained in Paragraph 33 of the Amended Complaint.

34.    Majapara denies the allegations contained in Paragraph 34 of the Amended Complaint.

35.    Majapara has not paid because Wachovia breached its agreement with Majapara and taken actions that frustrate Majapara's ability to.  Accordingly, Majapara denies the allegations contained in Paragraph 35 of the Amended Complaint.

36.    Majapara admits that Wachovia seized approximately $13.4 million that was in Majapara's account at Wachovia, but denies that Wachovia had any right to "obtain" these funds, or to "offset" any remaining amount purportedly "owed." Accordingly, Majapara denies the allegations contained in Paragraph 36 of the Amended Complaint.

37.    Wachovia demanded that the funds be paid in full immediately. By virtue of its

inequitable conduct, Wachovia had no right to demand payment from Majapara on December 7. Accordingly, Majapara denies the allegations contained in Paragraph 37 of the Amended Complaint.

38.    Majapara has not paid because Wachovia breached its agreement with Majapara and taken actions that frustrate Majapara's ability to. Majapara denies the allegations contained in Paragraph 38 of the Amended Complaint.

39.    Majapara denies the allegations contained in Paragraph 39 of the Amended Complaint.

40.    Majapara denies the allegations contained in Paragraph 40 of the Amended Complaint.

41.    Majapara denies the allegations contained in Paragraph 41 of the Amended Complaint.

**COUNT IV**

**(Fraud)**

42.    Majapara incorporates its response to paragraphs 1-16 above.

43.    Majapara placed orders for FX transaction on December 5, 2007 in reliance upon its longstanding contractual relationship and course of dealing with Wachovia. Wachovia accepted those orders knowing that later that day Wachovia was going to terminate Majapara's operating facilities. Expected as so stated, Majapara denies the allegations continued in Paragraph 43 of the Amended Complaint.

44.    Majapara placed orders for FX transaction on December 5, 2007 in reliance upon its longstanding contractual relationship and course of dealing with Wachovia. Wachovia accepted those orders knowing that later that day Wachovia was going to terminate Majapara's

operating facilities. Expected as so stated, Majapara denies the allegations continued in Paragraph 44 of the Amended Complaint.

45.     Majapara placed orders for FX transaction on December 5, 2007 in reliance upon its longstanding contractual relationship and course of dealing with Wachovia. Wachovia accepted those orders knowing that later that day Wachovia was going to terminate Majapara's operating facilities. Thus, at the time Majapara placed its December 5 orders with Wachovia it had no knowledge that Wachovia would later terminate its operating facilities. Expect as so stated, Majapara denies the allegations continued in Paragraph 45 of the Amended Complaint.

46.     Majapara denies the allegations contained in Paragraph 46 of the Amended Complaint.

47.     Majapara denies the allegations contained in Paragraph 47 of the Amended Complaint.

48.     Majapara denies the allegations contained in Paragraph 48 of the Amended Complaint.

49.     Majapara denies the allegations contained in Paragraph 49 of the Amended Complaint.

50.     Majapara denies the allegations contained in Paragraph 50 of the Amended Complaint.

51.     Majapara denies the allegations contained in Paragraph 51 of the Amended Complaint.

52.     Majapara denies the allegations contained in Paragraph 52 of the Amended Complaint.

53.     Majapara denies the allegations contained in Paragraph 53 of the Amended

Complaint.

## COUNT V

### (Breach of Contract/Anticipatory Breach)

54.    Majapara incorporates its response to paragraphs 1-16 above.

55.    Majapara admits that it maintained five accounts with Wachovia, but denies the remaining allegations of Paragraph 55 of the Amended Complaint.

56.    Because Majapara is without sufficient knowledge or information to form a belief as to the truth of these allegations, Majapara denies the allegations of Paragraph 56 of the Amended Complaint.

57.    Because Majapara is without sufficient knowledge or information to form a belief as to the truth of these allegations, Majapara denies the allegations of Paragraph 57 of the Amended Complaint.

58.    Majapara denies the allegations contained in Paragraph 58 of the Amended Complaint.

59.    Majapara denies the allegations contained in Paragraph 59 of the Amended Complaint.

60.    Majapara denies the allegations contained in Paragraph 60 of the Amended Complaint.

## ADDITIONAL AND AFFIRMATIVE DEFENSES

### First Defense

61.    Majapara incorporates by reference its Counterclaims in this matter.  By reason of the matters set forth therein and the wrongs Wachovia has committed against Majapara – including Wachovia's breach of its contractual duties, obtaining a wrongful injunction and

wrongful attachments - Wachovia is due no recovery here and its Complaint should be dismissed..

**Second Defense**

62.    Wachovia's claims against Majapara are barred in whole or in part by the doctrine of estoppel.  Wachovia induced Majapara to give it most of Majapara's business, including through the extension of the operating facilities, from which Wachovia earned substantial fees over many years.  Wachovia is estopped from claiming damages because it was Wachovia's termination of Majapara's operating facilities without cause and without notice that caused Majapara to be unable to pay Wachovia on December 7, and its falsely accusing Majapara of fraud and theft in order to obtain attachments and an injunction that destroyed Majapara's business.

**Third Defense**

63.    Wachovia's claims against Majapara are barred in whole or in part by the doctrine of unclean hands.    Wachovia induced Majapara to give it most of Majapara's business, including through the extension of the operating facilities, from which Wachovia earned substantial fees over many years.  Wachovia's termination of Majapara's operating facilities without cause and without notice caused Majapara to be unable to pay Wachovia on December 7, and its falsely accusing Majapara of fraud and theft in order to obtain attachments and an injunction destroyed Majapara's business.

**Fourth Defense**

64.    Wachovia's claims against Majapara are barred in whole or in part by Wachovia's failure to mitigate its damages.  As a result of Wachovia falsely accusing Majapara of fraud and

theft, Majapara's business was destroyed, making Majapara unable to pay Wachovia for the outstanding FX transactions.

**Fifth Defense**

65.    Wachovia's claims against Majapara are barred in whole or in part by the doctrine of duress. Wachovia induced Majapara to give it most of Majapara's business, by among other things, the extension of the operating facilities from which Wachovia earned substantial fees Wachovia knew that Majapara was dependent on these operating facilities. Wachovia's termination of Majapara's operating facilities without cause and without notice left Majapara unable to pay Wachovia on December 7, and Wachovia's falsely accusing Majapara of fraud and theft in order to obtain attachments and an injunction caused Majapara's entire business to be destroyed.

Majapara hereby reserves the right to amend this Answer and Counterclaims to include additional defenses as they become known to Majapara.

## COUNTERCLAIMS

### Introduction and Nature of the Case

66.    As a result of Wachovia's unwarranted and wrongful actions, Majapara's entire business has been destroyed and over 600 Majapara employees are out of work.

67.    After having done business with Majapara for over ten years, Wachovia, without cause and without advance notice, terminated all operating credit facilities extended to Majapara.

68.    Less than ten days after this termination, Wachovia filed two lawsuits against Majapara seeking *ex parte* prejudgment attachments and an injunction. Wachovia knew that in such *ex parte* proceedings the Courts would necessarily have to trust Wachovia to make full and fair disclosure of all facts material to the Courts because – of course – Majapara would not be

there. Wachovia took this opportunity, instead, to withhold material facts from the Court, assuring that the Courts would grant Wachovia the injunction and attachments that it sought.

69.    Although Wachovia claimed that Majapara had not paid it $38 million that it owed for certain foreign exchange transactions, Wachovia did not disclose to the Courts the reason Majapara could not pay – because Wachovia had terminated Majapara's operating facilities without cause and without notice.  Wachovia did not disclose to the Courts that just months earlier it had induced Majapara to move business Majapara was doing with Harris Bank to Wachovia.  Wachovia did not disclose to the Courts information showing that the withdrawals of funds by Majapara from its Wachovia account – withdrawals that Wachovia claimed were intended to frustrate any attempts by Wachovia to collect its debt – were, in fact, done in the ordinary course of Majapara's business.

70.    Wachovia breached its contractual duties to Majapara, tortiously interfered with Majapara's relations with other banks, and then wrongfully obtained an injunction and attachments from two Courts.  Wachovia's actions not only violate the law, but also fundamental principles of justice, equity, and good conscience.  For the substantial losses Majapara has suffered at the hands of Wachovia, Majapara seeks redress including an award of compensatory damages, and punitive damages which are definitely warranted in this case.

**Parties, Jurisdiction, and Venue**

71.    Counterplaintiff Majapara began operations as foreign exchange bureau (casa de cambio) in 1989 and had grown by December 2007 to have over 600 employees and offices throughout Mexico.  Majapara has no offices outside of Mexico.  Its principal place of business is in Mexico City, Mexico.

72.    Upon information and belief, Counterdefendant Wachovia is a national banking

association with its principal place of business in North Carolina and various offices in the U.S. and abroad, including New York, Illinois, and Mexico City.

73.    This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, and 12 U.S.C. § 632, in that this is a suit (i) of a civil nature at common law or in equity to which Wachovia, which is organized under the laws of the United States, is a party; and (ii) arising out of transactions involving international or foreign banking, or out of other international or foreign financial operations, and as such is deemed to arise under the laws of the United States.  This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, in that this is a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between a citizen of a State and a citizen or subject of a foreign state.  This Court also has pendent jurisdiction over these counterclaims.

**General Allegations**

74.    Majapara has operated as a foreign exchange bureau (casa de cambio) in Mexico since 1989.  Majapara's business grew from a 17 person office to over 600 employees by December 2007.

75.    Majapara is subject to the regulation of the Mexican banking authorities.  In accordance with Mexican law, Majapara engaged in FX transactions and the purchase and sale of items like bill payment orders, checks, and drafts in foreign currencies.  Pursuant to Mexican law, Majapara was authorized to enter into transactions for the purchase and sale of these items that would settle up to two days later.  Thus, Majapara would accept checks drawn on U.S. banks from its customers and provide cash to the customers the same day.  Then Majapara would electronically transmit those checks to Wachovia.  Wachovia would credit Majapara's account

for those checks on the same day. Wachovia would then negotiate the check via the US Interbank Clearing System or other method.

76.   Majapara has endeavored to operate the highest quality business operations possible. As such, in 2004 Majapara voluntarily subjected itself and its anti-money laundering processes to the scrutiny of outside auditors in order to obtain ISO 9001 certification. Majapara had an independent accreditation organization conduct an audit of those processes for effectiveness and conformance to the rigorous standards of ISO 9001:2000. As a result of this audit, Majapara obtained the ISO 9001 certification.

**Majapara's Course of Dealing with Wachovia**

77.   Majapara had a longstanding business relationship with Wachovia going back more than ten years. In addition to Wachovia's longstanding practice of providing a day or two of float to Majapara in connection with FX transactions, Wachovia also provided Majapara with operating lines of credit, overdraft privileges, and the ability to process unlimited remittances. These "operating facilities" had been in place for many years.

78.   While these operating facilities were not memorialized in writing, Wachovia knew that Majapara was dependent upon them and that terminating them without notice would be damaging to Majapara's business.

79.   In February 2007, Wachovia induced Majapara to transfer to Wachovia certain business that it had previously been doing with Harris Bank. At that time, Majapara cleared remittances through Harris Bank as well as Wachovia. Wachovia sought to earn the fees that Majapara had previously been paying to Harris Bank for its clearing services. Thus, Wachovia sought a meeting with Majapara in Mexico City at which Wachovia representatives requested that Majapara transfer the Harris Bank clearing business to Wachovia. Majapara agreed. Over

the next few months, Majapara transferred to Wachovia virtually all of the business it had been doing with Harris Bank.

80.    Majapara would never have agreed to Wachovia's request if it believed that Wachovia could give Majapara absolutely no advance notice that it was terminating Majapara's operating facilities.   Majapara reasonably believed that Wachovia was obligated to provide such notice by their longstanding course of dealing.

**Wachovia's Reaction to Bad Publicity**

81.    Some time later, Wachovia was the subject of embarrassing press reports that it had been doing business with certain businesses engaged in laundering the proceeds of the illegal drug trade.   A November 15, 2007 Forbes article, entitled "Banking on Drugs," reported that a Wachovia customer, Casa de Cambio Puebla ("Puebla") was linked to a business jet carrying tons of cocaine that crashed in September in Mexico.   Puebla also was linked to the purchase of another plane carrying tons of cocaine that was seized by Mexican officials a year earlier. Puebla is not related in any way to Majapara.

82.    Upon information and belief, Wachovia decided to cease doing business with businesses outside the U.S. as a reaction to embarrassing press reports of Wachovia's dealings with Puebla.

**Wachovia Terminates Majapara Without Cause and  Without Notice**

83.    Late in the day on December 5, 2007, Majapara was visited by Carlos Perez and Juanita Gomez of Wachovia who hand delivered a letter informing Majapara that Wachovia's operating facilities were terminated.   These operating facilities were being terminated without cause.  As the letter from Carlos Perez stated:

> [a]s part of the ongoing review and re-evaluation of our long-term global strategy, Wachovia Bank, National Association ("Wachovia") has determined to cease

providing correspondent banking services to exchange companies outside the United States. . . . Wachovia and I wish to thank you for your loyalty during our business relationship and wish you continued commercial success.

(attached hereto as Exhibit A)  The letter then informed Majapara that "your existing credit lines with Wachovia have been cancelled.  Any current outstanding utilized credit will remain in place until it has come to maturity."  In case there was any doubt, Mr. Perez made it clear – Majapara's operating facilities were terminated effective immediately.  Majapara pleaded with Mr. Perez to continue its operating facilities for a short time in order to give Majapara time to arrange for a substitute bank, but he refused.

**After Termination, Majapara Scrambles to Deal With
Dire Situation, Yet Pays Almost $40 Million to Wachovia**

84.    In an effort to deal with this situation, Majapara began contacting other banks seeking a substitute for the operating facilities that Wachovia had just terminated.  Majapara also approached other foreign exchange bureaus seeking to negotiate operating alliances or the sale of lines of Majapara's business.

85.    Not surprisingly, Majapara rapidly began experiencing liquidity problems that continued to worsen over the next few days.  Despite the fact that Wachovia had caused Majapara's liquidity problems, Majapara paid to Wachovia almost $40 million to settle FX transactions the day after receiving this devastating news.

86.    Despite its best efforts, Majapara lacked sufficient funds to be able to settle the approximately $38 million in FX transactions that Wachovia had entered into with Majapara on December 5 – before Wachovia delivered its devastating news.  At the time Majapara entered into those transactions, Majapara had no idea that Wachovia was going to terminate its operating facilities later that day.  At the time Wachovia accepted Majapara's orders for these transactions, however, Wachovia would have known this.

87.    Over the next few days, Majapara continued trying to line up a substitute for Wachovia. Banks that Majapara approached required time to obtain information about Majapara in order to present the information to the bank credit committees and otherwise obtain necessary approvals. Majapara contacted other Mexican foreign exchange bureaus in an effort to enter into operating alliances or to sell them certain lines of business.

88.    On December 13, Majapara's CEO, Jorge Ortiz Muñoz telephoned Wachovia's Carlos Perez to again ask him to continue Majapara's operating facilities until the company could make substitute arrangements. Mr. Ortiz informed Mr. Perez that Majapara was doing everything possible to pay Wachovia, but that Majapara was having difficulty dealing with the abrupt cancellation of its longstanding operating facilities. Mr. Ortiz informed Mr. Perez that reasonable notice would have enabled Majapara to replace Wachovia's operating facilities with another bank. Finally, Mr. Ortiz offered to provide Wachovia with security for the debt. Mr. Perez did not agree. Mr. Ortiz summarized his conversation with Mr. Perez in a December 13 letter that he sent to Mr. Perez. (attached hereto as Exhibit B)

**Wachovia's Misrepresentations to the Court**

89.    The next day, December 14, Wachovia filed an action in this Court seeking emergency *ex parte* prejudgment relief including an attachment of Majapara's bank accounts and an injunction. Wachovia simultaneously filed an action in Illinois state court seeking an *ex parte* attachment (attached as Exhibit C).

90.    In order to obtain relief from this Court, Wachovia submitted a complaint (attached as Exhibit D), memorandum of law (attached as Exhibit E), and sworn declarations of Wachovia's Carlos Perez and attorney Scott McKessy (attached as Exhibit F and G,

respectively). On the basis of those submissions, the Court entered the December 14 Order to Show Cause, which included an injunction against Majapara. (attached as Exhibit H)

91.    In the Declaration of Mr. McKessy filed by Wachovia with the Court, Mr. McKessy stated under oath that expedited *ex parte* relief was being sought "because of the likelihood that, if notified of the instant application before hand, defendant Majapara Casa De Cambio S.A. de C.V. ("Majapara") will dissipate or transfer assets which are the subject of this application." Mr. McKessy also stated under oath that Majapara had "absconded with over $38 million" of Wachovia's funds and had made a "threat" to make itself judgment proof and frustrate any attempt by Wachovia to collect.

92.    Mr. McKessy's declaration failed to disclose to the Court that Wachovia had without cause and without notice terminated Majapara operating facilities. His declaration failed to disclose the almost $40 million that Majapara paid to Wachovia on December 6 – the day after Majapara's operating facilities were terminated. These are material facts of which Mr. McKessy knew or reasonably should have ascertained before filing Wachovia's request for emergency relief and should have disclosed these facts to the Court in his declaration.

93.    In the Declaration of Mr. Perez that Wachovia filed with the Court, Mr. Perez stated under oath that Majapara had reneged on its transactions and "absconded with Wachovia's money." Mr. Perez stated under oath that Majapara knew of its liquidity crisis before the closing of the December 5 FX transactions. Mr. Perez stated that Majapara had "engaged in illegal loans in relation to its foreign exchange transactions." Finally, Mr. Perez stated that "based upon [his December 13] conversation [with Mr. Ortiz], it is my belief that Majapara engaged in fraud…."

94.    Mr. Perez's declaration failed to disclose to the Court the reason Majapara had not been able to pay Wachovia on time – that Wachovia *caused* Majapara's liquidity crisis by

terminating its operating facilities without cause and without advance notice *after* Majapara had placed the December 5 FX transactions. Mr. Perez's declaration failed to disclose to the Court that the day after getting this devastating news, Majapara paid to Wachovia almost $40 million. These are material facts of which Mr. Perez knew or reasonably should have known and should have disclosed to the Court in his declaration.

95.    After years of doing business with Majapara, Mr. Perez knew or reasonably should have known that Majapara was not engaged in any illegality. Since Wachovia had been providing millions of dollars of credit to Majapara for years, it is difficult to believe that Wachovia did not know Majapara's business.

96.    Wachovia's memorandum of law, upon which the Court expressly relied in entering its December 14 Order to Show Cause, misrepresented to the Court that Majapara had "caused itself" to go out of business. Wachovia knew that it had terminated Majapara's operating facilities on December 5 without cause and without any advance notice. Wachovia knew that months earlier it had induced Majapara to move even more of its business to Wachovia. As a result, Wachovia knew or reasonably should have known that this statement simply was not true.

97.    Wachovia's memorandum of law contains additional materially misleading statements ostensibly made in order to induce the Court to enter the temporary restraining order it sought. In its memorandum of law, Wachovia represented to the Court that Majapara had "already attempted to remove certain funds from its Wachovia accounts." Wachovia knew or should have known that any transfers of funds into or out of Majapara's accounts were done in the ordinary course of Majapara's business. Nevertheless, Wachovia made false and materially misleading statements to the Court in order to lead the Court to believe that Majapara was

attempting to move assets beyond Wachovia's reach.  Moreover, Wachovia knew that it was not entitled to a TRO or preliminary injunction because an inability to collect a money judgment does not satisfy the requisite of irreparable harm.

98.    Wachovia's complaint is rife with misrepresentations and fails to disclose the material facts set forth above.  In the complaint, Wachovia accuses Majapara of fraud because **"at the time Majapara entered into the December 5, 2007 agreement, it knew it was illiquid and insolvent and incapable of performing its obligations under the parties' agreement."** (emphasis added) Wachovia could not have believed this to be true when it knew that the genesis of Majapara's liquidity crisis was Wachovia's termination of Majapara's operating facilities. Therefore, Wachovia knew or reasonably should have known at the time it made this statement that it was not true.

99.    Thus Wachovia induced the Court to enter the Order to Show Cause providing that "Majapara, shall be and hereby is enjoined and restrained from transferring, selling, pledging, assigning or otherwise disposing of any of its assets."  (attached hereto as Exhibit H) The Order to Show Cause was based solely upon representations that Wachovia made to the Court.

100.    The Order of Attachment entered by the Court on December 20 was based upon the same materially false and misleading representations made by Wachovia to the Court in support of the Order to Show Cause and was entered without adequate notice to Majapara. (attached hereto as Exhibit I)

101.    Wachovia made substantially the same false and misleading representations to the Circuit Court of Cook County Illinois in order to induce it to grant an order of attachment. (attached hereto as Exhibit J)

**Wachovia Disseminates Orders**
**Obtained Through Misrepresentations to Courts**

102.    After Wachovia induced this Court and the Illinois state court to enter Orders against Majapara that Wachovia knew or reasonably should have known were based upon false statements, Wachovia then embarked upon a course of disseminating those Orders to others. Wachovia disseminated this Court's Orders and the Orders of the Illinois state court along with other materials to banks including Harris Bank, Citibank, JP Morgan Chase, Deutsche Bank, Standard Chartered, Bayerische Hypo- und Vereins Bank AG, Wells Fargo, and the Royal Bank of Canada.  Because Wachovia obtained these Orders on the basis of sworn declarations and other statements that it knew or reasonably should have known were false and misleading, Wachovia knew that it was not entitled to the Orders.  Thus, Wachovia was not privileged to disseminate these Orders to the banks nor was the dissemination of the Orders done in furtherance of Wachovia's legitimate interests in pursuing its interests in litigation.  Wachovia's dissemination of these Orders was wrongful and the severe damage such dissemination caused to Majapara's reputation and ability to continue as a foreign exchange bureau was in no way justified.

103.    Upon information and belief, Wachovia repeated the misleading statements in the documents filed with the Court to other foreign exchange bureaus and banks in Mexico in order to interfere with Majapara's efforts to obtain alternative financing, to interfere with Majapara's efforts to enter into operating alliances with other foreign exchange businesses, and/or to interfere with Majapara's efforts to sell certain lines of business.  Wachovia's interference was malicious, unlawful, and not undertaken for any legitimate purpose or to advance any legitimate interest of Wachovia.  As a result of Wachovia's interference, banks and foreign exchange bureaus with whom Majapara had been negotiating abandoned all discussions with Majapara.

104.    Upon information and belief, shortly after filing its cases, Wachovia made substantially the same false and misleading statements made in the documents filed with the Court to banking regulators in Mexico, in order to induce the regulators to take action against Majapara.

105.    Shortly after Wachovia initiated this action and the Illinois state court action, the affidavit of Carlos Perez was published on an internet website. On February 13, 2008 another website reported facts from documents filed with the Court on February 11. Upon information and belief, Wachovia has excessively and impermissibly published these court filings. Upon information and belief Wachovia or others acting on its behalf have made substantially the same false and misleading statements made in the documents filed with the Court to the media in order to induce the media to publish such statements.

## COUNT I

### Breach of Contract

106.    Majapara incorporates paragraphs 66 through 105 above as if fully set forth herein.

107.    As set forth above, for many years Wachovia and Majapara had a contractual relationship whereby Wachovia provided operating facilities to Majapara.  That contractual relationship is evidenced by the course of dealing between the parties over many years.

108.    Wachovia owed Majapara a contractual duty to provide Majapara with reasonable notice that Wachovia was terminating its operating facilities so that Majapara would have time to make substitute arrangements.

109.    Wachovia breached its contractual duty to Majapara by terminating the operating facilities without cause and without providing Majapara any advance notice whatsoever.

110.   Majapara suffered significant damages as a result of Wachovia's breach.

WHEREFORE, Majapara respectfully requests that this Court:

a.      enter judgment in its favor;

b.      award Majapara compensatory damages, including interest as allowed by law;

c.      award Majapara its costs and fees as allowed by law; and

d.      award Majapara such other and further relief as the Court may deem just and proper.

## COUNT II

### <u>Wrongful Injunction</u>

111.   Majapara incorporates paragraphs 66 through 105 above as if fully set forth herein.

112.   On December 14 and 20, 2007, Wachovia obtained injunctive relief against Majapara from this Court.  Because Wachovia obtained these injunctions by making false and misleading statements to this Court, it was never entitled to such injunctive relief.

113.   Wachovia knowingly or recklessly made false and misleading statements to this Court, including the following:

- Majapara engaged in fraud because "at the time Majapara entered into the December 5, 2007 agreement, it knew it was illiquid and insolvent and incapable of performing its obligations under the parties' agreement;"

- Majapara engaged in fraud because it did not intend to repay Wachovia for the December 5 FX transactions;

- Majapara engaged in fraud because Majapara was engaged in illegal and illicit lending activities in violation of Mexican law;

- Majapara had tried to move funds from the account it had with Wachovia as part of an effort to place its assets beyond the reach of Wachovia in order to frustrate Wachovia's ability to collect on any judgment.

114.    Wachovia knew or reasonably should have known that these statements were false and materially misleading because Wachovia knew facts to the contrary, including the following:

- Wachovia caused Majapara's liquidity crisis by terminating Majapara's operating facilities *after* Majapara had placed the December 5 FX transactions;

- Despite its abrupt termination by Wachovia, Majapara still paid Wachovia almost $40 million the very next day to settle FX transactions;

- Majapara was unable to settle the remaining $38 million of FX transactions because of Wachovia's abrupt termination of Majapara's operating facilities;

- The purported "lending" that Majapara engaged in was authorized by Mexican law, and Wachovia knew it because it was Wachovia who processed the millions of dollars of remittances for Majapara every day.

115.    Thus, Wachovia knew or reasonably should have known that the statements made in paragraph 113 above were materially false and misleading.

116.    Wachovia made the false and misleading statements in paragraph 113 above in order to induce this Court to grant Wachovia *ex parte* prejudgment relief, including attachment of Majapara's bank accounts and an injunction. This Court expressly relied upon Wachovia's false and misleading statements in deciding to enter orders, including this Court's Order to Show Cause and Order of Attachment.

117.    Wachovia falsely represented to this Court that it would suffer irreparable injury if the injunction sought in its TRO motion was not granted despite knowing that its claim for purely money damages was insufficient to satisfy this requirement.

118.    As a result, Wachovia knew or reasonably should have known that it was not entitled to the injunction it obtained on December 14 and on December 20.

119.    As a result, Majapara suffered severe damages.

WHEREFORE, Majapara respectfully requests that this Court:

a.    enter judgment in its favor;

b.    award Majapara compensatory and punitive damages, including interest as allowed by law;

c.    award Majapara its costs and fees as allowed by law; and

d.    award Majapara such other and further relief as the Court may deem just and proper.

## COUNT III

### Wrongful Attachment

120.    Majapara incorporates paragraphs 66 through 105 and 111 through 119 above as if fully set forth herein.

121.    On December 20, 2007, Wachovia obtained an Order of Attachment from this Court. On December 14, Wachovia obtained an order of attachment from the Illinois state court. Because Wachovia obtained these attachment orders by making false and misleading statements to this Court and the Illinois state court, it was never entitled to such relief.  As set forth in Count II above, Wachovia knowingly or recklessly made false and misleading statements to this Court and the Illinois state court, as set forth in paragraph above.

122.    Wachovia knew or reasonably should have known that these statements were false and materially misleading because Wachovia knew facts to the contrary, including those facts set forth in paragraph 114.

123.    Thus, Wachovia knew or reasonably should have known that the statements made in paragraph 113 above were materially false and misleading.

124.    Wachovia made the false and misleading statements in paragraph 113 above in order to induce this Court and the Illinois state court to grant Wachovia *ex parte* prejudgment

relief, including attachment of Majapara's bank accounts. This Court and the Illinois state court expressly relied upon Wachovia's false and misleading statements in deciding to enter orders, including this Court's Order to Show Cause and Order of Attachment.

125.    As a result, Majapara suffered damages.

WHEREFORE, Majapara respectfully requests that this Court:

a.    enter judgment in its favor;

b.    award Majapara compensatory and punitive damages, including interest as allowed by law;

c.    award Majapara its costs and fees as allowed by law; and

d.    award Majapara such other and further relief as the Court may deem just and proper.

## COUNT IV

### Tortious Interference with Contract

126.    Majapara incorporates paragraphs 66 through 105 above as if fully set forth herein.

127.    Wachovia knew that although Majapara had most of its business with Wachovia, it also had relationships and contracts with other banks and financial institutions. Moreover, Wachovia knew that Majapara had relationships and contracts with its customers in Mexico.

128.    On information and belief, Wachovia maliciously and for improper purposes made accusations that Majapara was engaged in fraud and theft on information and belief Wachovia made those false accusations to banks including Harris Bank, Citibank, JP Morgan Chase, Deutsche Bank, Standard Chartered, Bayerische Hypo- und Vereinsbank AG, Wells

Fargo, and the Royal Bank of Canada.  On information and belief, Wachovia maliciously and for improper purposes made these false and misleading statements to customers of Majapara.

129.      As a result of Wachovia's wrongful interference, Majapara's relationship with it customers and with  banks with which it did business has been damaged.

WHEREFORE, Majapara respectfully requests that this Court:

a.      enter judgment in its favor;

b.      award Majapara compensatory and punitive damages, including interest as allowed by law;

c.      award Majapara its costs and fees as allowed by law; and

d.      award Majapara such other and further relief as the Court may deem just and proper.


JURY DEMAND

Majapara hereby demands trial by jury for all claims so triable as of right.


February 14, 2008                    Respectfully submitted,
                                     CASA DE CAMBIO MAJAPARA S.A. DE C.V.

                                     By:  ___/s/ Vincent J. Syracuse_____
                                          One of Its Attorneys

                                          Vincent J. Syracuse
                                          David A. Pellegrino
                                          George F. du Pont
                                          Tannenbaum Helpern Syracuse & Hirschtritt LLP
                                          900 Third Avenue
                                          New York, NY  10022
                                          Tel:  (212) 508-6743
                                          Fax:  (212) 202-7516

Of Counsel:
Celiza P. Braganca
(*pro hac vice* motion to be made at hearing)
SPERLING & SLATER, P.C.
55 West Monroe Street, Suite 3200
Chicago, Illinois 60603
Tel: (312) 641-3200
Fax: (312) 641-6492

# Exhibit A



Wachovia Bank, N.A.
International Division
Wachovia Financial Center
200 South Biscayne Blvd., 12" Floor
FL8079
Miami, FL 33131

WACHOVIA

December 6, 2007

Casa de Cambio Majapara S.A. de C.V.
Lago Margarita No. 16
Colonia Granada
C.P. 11520
México, D.F.

Attention: Carlos Acosta

Dear Mr. Acosta:

As part of the ongoing review and re-evaluation of our long-term global strategy, Wachovia Bank, National Association ("Wachovia") has determined to cease providing correspondent banking services to exchange companies outside the United States.  It is with sincere regret that I must advise you that effective January 4, 2008 (the "Termination Date") Wachovia will close out all business relationships with Casa de Cambio Majapara S.A. de C.V.(hereinafter "you" or "your").

Wachovia and I wish to thank you for your loyalty during our business relationship and wish you continued commercial success.

You receive some or all of the below products and services, to the extent these apply to your current business with Wachovia, we wish to advise you of the following:

Cash letters and checks sent for Final Credit Service or Collection received after December 13, 2007 will be returned. Checks presented for payment (against your account) during the period from the date of this letter up to the Termination Date ("Interim Period") will be paid up to the amount of the collected funds available in your account. Any checks presented after the Termination Date will be returned, "account closed".  This notice also includes drafts and checks drawn under any controlled disbursement arrangement with Wachovia.  So that your customers encounter minimal impact, we strongly urge you to cease drawing drafts effective immediately but in any event to stop this activity as quickly as possible.  Your existing credit lines with Wachovia have been cancelled. Any current outstanding utilized credit will remain in place until it has come to maturity.  Wachovia does not waive any rights, however, to demand payment in the event of an event of default or other event that permits Wachovia to demand early payment.

Outgoing funds transfers will be honored up until December 27, 2007 however Wachovia suggests you begin to redirect activity as soon as possible in order avoid any confusion. Please refrain from making any further deposits and funds transfers after this date.

Bulk Cash deposits will not be accepted or collected after December 20, 2007.

Pursuant to Wachovia's Terms and Conditions for Global Financial Institutions, you will receive any finally collected and available balance in your Wachovia account(s) within a reasonable period of time after the account(s) is closed. Your representative will work with you during the Interim Period to determine outstanding drafts, checks, wires, etc. that would require funds in your accounts for payment.  This will enable Wachovia to have a good estimate of the amount to hold in the account pending item presentation and payment.

After a reasonable time, any funds remaining in your account will be forwarded to you in the form of an official check at the address of record or, if you prefer, via wire transfer.  Please advise us, as soon as possible, regarding your preference for final payout of remaining balances.

As a result of this closure notification, Wachovia respectfully requests that you immediately remove all references to it as a correspondent service provider from your website or other external communications.

Should you have any questions, you may contact me at (305) 7896902.


Sincerely,

Carlos A. Perez
Managing Director
Americas Group
Global Financial Institutions and Trade Services

# Exhibit B

Mexico City, December 13, 2007.

Carlos A. Perez
Managing Director
Wachovia Bank, N.A.

Dear Carlos:

I hereby ratify the main issues discussed during our telephone conversation of earlier today:

1.  MAJAPARA acknowledges its indebtedness with Wachovia and is doing all things necessary to repay it as soon as practicable.
2.  The debt arose as a result of the abrupt cancellation of the operating lines that Wachovia had for many years granted to MAJAPARA. Reasonable notice would have enabled us to replace Wachovia's lines with lines from some other bank.
3.  The lines granted by Wachovia to MAJAPARA were, in turn, allocated to MAJAPARA's clients. We are in the process of recovering those funds, but our clients also require a reasonable period to replace such lines.
4.  We understand that Wachovia finds it unpleasant to have these items reported as past due, and are willing to secure our debt with shares of stock of MAJAPARA (we could also consider an option to capitalize such debt).
5.  MAJAPARA is a leading PLD institution, with over 15,000 clients, over 500 employees and a market value of approximately $70,000,000 dollars, which is more than sufficient to secure its debt with Wachovia.
6.  We must together find a win-win solution for both Wachovia and MAJAPARA. The business could lose its market value should Wachovia take action to preclude MAJAPARA's operations. The closed business would only be worth $10 million dollars, resulting in losses for both Wachovia and MAJAPARA.

We appreciate your understanding in light of the inconvenience and reiterate our willingness to together find a prompt solution to this problem.

Sincerely,

Jorge Ortiz Muñoz
CEO

Mexico D.F. a 13 de diciembre de 2007.

Carlos A. Perez
**Managing Director**
Wachovia Bank, N.A.



Estimado Carlos:

Me permito confirmarte los principales puntos expresados en nuestra conversación telefónica de hoy:

1.- MAJAPARA reconoce el adeudo que tiene con Wachovia y esta haciendo todo lo necesario para liquidarlo a la mayor brevedad posible.

2.- El origen del adeudo es la cancelación intempestiva de las líneas de operación que durante años Wachovia concedió a MAJAPARA. Un plazo razonable nos hubiera permitido sustituir las líneas de Wachovia por la de algún otro banco.

3.- La líneas que Wachovia otorgaba a MAJAPARA eran a su vez otorgadas a los clientes de MAJAPARA. Estamos recuperando esos recursos, pero los clientes a su vez requieren un plazo razonable para sustituir sus líneas.

4.- Entendemos que para Wachovia es incómodo tener esas partidas en deudores y estamos en disposición de garantizar el adeudo con acciones de MAJAPARA (incluso se puede considerar la opción de capitalizar el adeudo).

5.- MAJAPARA es una institución líder en PLD con mas de 15,000 clientes y mas de 500 empleados, su valor de mercado es de aproximadamente 70'0000,000 de dólares por lo que garantiza sobradamente el adeudo con Wachovia.

6.- Es necesario encontrar juntos una solución ganar-ganar para Wachovia y MAJAPARA. El negocio puede perder su valor de mercado si Wachovia emprende acciones tendientes a impedir la operación de MAJAPARA. El negocio cerrado valdría solamente 10 millones de dólares, con el consiguiente quebranto tanto para Wachovia como para MAJAPARA.

Agradecemos su comprensión por los inconvenientes causados y reiteramos nuestra disposición para encontrar juntos una pronta solución a este problema.

Atentamente

Jorge Ortiz Muñez
CEO



RECIBIDO

**CASA DE CAMBIO MAJAPARA**

OFICINA MATRIZ
LAGO MARGARITA NO. 16
COL. GRANADA 11520
MÉXICO D.F.

**AGUASCALIENTES**
AGUASCALIENTES
**BAJA CALIFORNIA**
TIJUANA
ENSENADA
**COAHUILA**
SALTILLO
**COLIMA**
COLIMA
MANZANILLO
**DISTRITO FEDERAL**
BOSQUES
GUADALUPE INN
MINERVA
VALLE
**ESTADO DE MÉXICO**
METEPEC
TLALNEPANTLA
**GUANAJUATO**
CELAYA
IRAPUATO
LEÓN
**JALISCO**
GUADALAJARA
**MICHOACÁN**
LÁZARO CÁRDENAS
MORELIA
**NUEVO LEÓN**
MONTERREY
**PUEBLA**
PUEBLA
**QUERÉTARO**
QUERÉTARO
**SAN LUIS POTOSÍ**
SAN LUIS POTOSÍ
**SONORA**
HERMOSILLO
**TAMAULIPAS**
ALTAMIRA
TAMPICO
**VERACRUZ**
VERACRUZ
CORDOBA
**YUCATÁN**
MÉRIDA

ISO 9001:2000

"LA HONESTIDAD DE
NUESTROS CLIENTES
NOS DISTINGUE"

AUT. SHCP DGSV-B-II-C-0599-DEL-26-12-68

State of Connecticut ⎤
                    ⎥ ss
County of Fairfield  ⎦

## AFFIDAVIT OF ACCURACY OF TRANSLATION

The undersigned, Gabriela Garate-Konstantinovic, hereby declares, under penalty of perjury that:

1.   I am an attorney duly qualified to practice law in the jurisdiction of Mexico;

2.   I am a native Spanish speaker. I also have full command of the English language, acquired through my academic education, professional experience and over fifteen years of residence in the United States;

3.   I am a recognized translator, from English into Spanish and *vice versa*, of all types of legal and financial documents. I have translated, from Spanish into English, the letter dated December 13, 2007, from Jorge Ortiz Muñoz to Carlos A. Perez. To the best of my knowledge and understanding, based upon 1 and 2 above, the English version of such document is a true, complete and correct translation of the Spanish version thereof.

IN WITNESS WHEREOF, I have affixed my signature onto this instrument on this 17th day of January, 2008.

# Exhibit C

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| WACHOVIA BANK,<br>NATIONAL ASSOCIATION,<br><br>　　　　*Plaintiff,*<br><br>　　　　v.<br><br>MAJAPARA CASA DE CAMBIO S.A. de C.V.,<br>a Mexican corporation,<br><br>　　　　*Defendant,*<br><br>HARRIS, N.A., an Illinois corporation,<br><br>　　　　*Garnishee.* | )<br>)<br>)<br>)　　Case No.<br>)<br>)<br>)<br>)　　2007L013958<br>)　　CALENDAR/ROOM T<br>)　　TIME 00:00<br>)　　Other Com Litigation<br>)<br>)<br>) |

### NOTICE OF EMERGENCY MOTIONS

PLEASE TAKE NOTICE that on December 14, 2007, at 9:15 a.m., or as soon thereafter as counsel may be heard, we shall appear before The Honorable Judge Alexander P. White, or any judge sitting in his stead, in the courtroom usually occupied by him in Room 2503 of The Richard J. Daley Center, Chicago, Illinois, for presentation of Plaintiff's Emergency Motion for Issuance of Order of Attachment and Ex-Parte Motion for Appointment of Special Process Server, copies of which are attached hereto and previously filed on December 14, 2007.

Dated: December 14, 2007

　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　WACHOVIA BANK, N.A.,

　　　　　　　　　　　　　　By: _____
　　　　　　　　　　　　　　　　One of Its Attorneys

Barry S. Rosen
Michael D. Richman
Michael S. Leib
REED SMITH, LLP
10 S. Wacker Drive
Chicago, Illinois 60606-7507
(312) 207-1000
Firm I.D. # 43456

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| WACHOVIA BANK,<br>NATIONAL ASSOCIATION, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| v. | ) | |
| | ) | |
| MAJAPARA CASA DE CAMBIO S.A. de C.V., | ) | |
| | ) | 2007L013905 |
| Defendant, | ) | CALENDAR/ROOM  7 |
| | ) | TIME 00:00 |
| HARRIS N.A., | ) | Other Com Litigation |
| | ) | |
| Garnishee. | ) | |

## PLAINTIFF'S EMERGENCY MOTION FOR ISSUANCE OF
## ORDER OF ATTACHMENT

Plaintiff Wachovia Bank, N.A. ("Wachovia"), through its attorneys, Reed Smith,

LLC, and pursuant to 735 ILCS 5/4-101 *et seq.* of the Code of Civil Procedure hereby

requests that this Court immediately grant Wachovia's motion for issuance of an Order of

Attachment in accordance with §4-110 of the Attachment Act, directed to and seizing any and

all property and accounts in the name of or for the benefit of defendant Majapara Casa De

Cambio S.A. de C.V. ("Defendant") held at or in the possession, custody or control of the

named garnishee herein, Harris Bank, located at 111 West Monroe, Chicago, Illinois,

including but not limited to Bank Account Number 2004919. In support thereof, Wachovia

states as follows.

## I.     FACTUAL BACKGROUND TO ISSUANCE OF ORDER OF ATTACHMENT.

This case involves the Defendant, Majapara Casa De Cambio S.A. de C.V.

("Majapara" or "Plaintiff"), a Mexican company, having taken from Wachovia over

$38,000,000.00 worth of Euros in a series of foreign exchange transactions and failing to

return the corresponding amount of U.S. Dollars. Defendant agreed with Wachovia on

Wednesday, December 5, 2007 to send Wachovia $38,132,700 (US$) in return for 26 million Euros. Yet on the agreed upon settlement date, December 7, 2007, Defendant received the 26 million Euros from Wachovia knowing it would not pay Wachovia the corresponding $38,132,700. Defendant has not provided Wachovia with the promised $38,132,700 (US$), nor has it returned the 26 million Euros Wachovia provided Defendant, thereby prompting the need for extraordinary relief in the form of a prejudgment attachment to protect Wachovia from further potential catastrophic loss.

Commencing in the late 1990's or early 2000's, Wachovia, and its predecessor, entered into a series of foreign exchange agreements with Defendant, a resident of the country of Mexico. (*See* Affidavit in Support of Attachment, filed concurrently herewith).[1] In these transactions, Defendant would agree to purchase from Wachovia (or its predecessor) a certain amount of one currency in exchange for Defendant selling to Wachovia an equivalent amount of another currently, at the applicable exchange rate then in effect.[2]

To facilitate the foreign exchange agreement process, Defendant and Wachovia, or its predecessor, entered into a written contract pursuant to which Defendant was permitted to execute foreign exchange transactions with Wachovia's predecessor over the Internet. By custom in the foreign exchange industry, these transactions are agreed to and close quickly and, as such, the foreign exchange industry is built on trust. If a party in a foreign exchange transaction fails to honor its contractual obligation in terms of delivering the promised currency by the settlement date, that party is deemed untrustworthy.

---

[1] The Facts recited in this Motion are supported by Wachovia's Affidavit, filed pursuant to §4-105 of the Attachment Act.

[2] Defendant is a non-Illinois resident. Nothing in the Illinois Secretary of State' records reflect that Defendant is currently licensed or authorized to conduct business in Illinois; nor do those records reflect that Defendant has currently procured a certificate of authority to conduct business in this State.

On or about December 5, 2007, Defendant entered into seven such foreign exchange transactions with Wachovia, which, when combined, were worth over $38 million United States dollars. All seven foreign exchange transactions were to have settled by December 7, 2007. Six of those transactions were executed through Wachovia's foreign exchange internet website. The one remaining transaction was executed over the telephone. As required by the seven foreign exchange transactions, on December 7, 2007—the scheduled settlement date—Wachovia sent Defendant 26 million Euros. Despite having entered into the transactions with Wachovia just two earlier, on December 5, 2007, Defendant never delivered the corresponding agreed upon $38,132,700 (US$) to Wachovia, as required, on December 7, 2007. After certain setoffs are applied in Defendant's favor, Wachovia has suffered a loss of $24,711,845.

Defendant's intentional act in accepting over $38 million worth of Euros with no intention of delivering the corresponding dollars shows their fraudulent conduct. But Wachovia has learned additional facts that lead it to believe Defendant is intentionally concealing or disposing of its assets or is about to do so. First, on or about December 7, 2007—the settlement date for the foreign exchange transactions at issue—Defendant requested that Wachovia enter into *further* cash transactions. Defendant made this request despite the fact that, by this point in time (December 7th), Defendant already knew it was *not* going to settle the outstanding foreign exchange transactions with Wachovia worth over $38 million. Second, on or about December 11, 2007, Majapara tried (unsuccessfully) to transfer over $9 million out of its Wachovia account. Finally, on or about December 13, 2007, a representatives of Wachovia spoke with Jorge Ortiz, the Chairman and CEO of Defendant. Mr. Perez told these representatives that Defendant took Wachovia's 26 million Euros and lent

- 3 -

it to other people even though, under Mexican law, a Casa de Cambio does not have a right to lend money. When Mr. Ortiz was told that what Defendant had done was not legal, Mr. Ortiz told the Wachovia representatives that Majapara was not liquid and he would need two months to repay Wachovia. He also told the representatives that if Wachovia took action to assert its legal rights, Wachovia would not recover anything. In addition, after Majapara failed to pay its obligation to Wachovia, Defendant attempted to drain its remaining assets in its Wachovia depository account, transferring them to Citibank, N.A.

For the past several years, and to Wachovia's knowledge, Defendant has regularly utilized the banking facilities of Harris Bank, located at 111 West Monroe Street, Chicago, Illinois ("Harris Bank"), for the purpose of furthering its foreign exchange business in this country. To Wachovia's knowledge, Defendant currently maintains one or more banking account at the Harris Bank in Chicago. At least one Bank Account at Harris Bank exists in Defendant's name under Account Number 2004919, thereby making this case ripe for the issuance of an order of attachment directed against Defendant and all its property now being held at Harris Bank. On information and belief, Defendant also engages in substantial and continuous business in Chicago.

II.  **THE ELEMENTS FOR ISSUANCE OF AN ORDER OF ATTACHMENT ARE PRESENT, WARRANTING AN ATTACHMENT BE ISSUED ON DEFENDANT'S PROPERTY AT HARRIS BANK.**

Wachovia requests that this Court enter an emergency order of attachment under the applicable provisions of the Attachment Act (735 ILCS 5/4-101 *et seq.*) directed to Defendant and any and all banking accounts or other property of any kind or nature kept or maintained at Harris Bank, in Chicago. In particular, that this Court enter an order of attachment directed to Defendant and Harris Bank, Account Number 2004919, or any other accounts or property maintained thereat by Defendant. *See also*, §4-126 of Attachment Act (attachment of debtor's property held by others). Wachovia has satisfied each of the requisite elements for issuance of such an Order.

There are, essentially, two central components that need be satisfied before the Court is empowered to issue an order of Attachment: (1) "cause" under §4-101 of the Act must be shown by demonstrating the existence of one of the nine statutory factors, and (2) the creditor need post a bond in the amount set forth in §4-107 (or, §4-108, if the value of the property being seized is ascertained at the time). Wachovia has satisfied both prongs, warranting the issuance of the Order against Defendant and Harris Bank.

A.  **The Presence of "Cause" Under §4-101(1) Supports An Attachment Order Because Defendant Indisputably Is Not An Illinois Resident.**

Several overriding principles support entry of an Attachment Order. *First,* attachment is the legal process by which the court seizes and holds the property of the defendant debtor until the rights of the parties are ultimately determined in the creditor's principal suit. *See, Peter Fischer Import Motors, Inc. v. Buckley,* 121 Ill. App. 3d 906, 910, 460 N.E.2d 346, 349 (1st Dist. 1984); *Old Kent Bank v. Stoller,* 254 Ill. App. 3d 1085, 1092, 627 N.E.2d 265,

273 (1st Dist. 1993); *Revolution Portfolio, LLC v. Beale*, 341 Ill. App. 3d 1021, 1026, 793

N.E.2d 900, 905 (1st Dist. 2003).   Attachment may be directed at either the defendant's

property "or his property in the possession of a third party." *Peter Fischer Imports*, 121 Ill.

App. 3d at 910, 460 N.E.2d at 349. Attachment is a mechanism instituted "before judgment

on the merits of the principal claim of the plaintiff creditor." *Id.* Thus, attachment lies to seize

property of the debtor in the possession of a third party, garnishee. In such a situation,

> "...**the plaintiff attempts to hold the defendant's property in the possession
> of a third party pending the disposition of the plaintiff's principal claim
> against the defendant.** Such a proceeding is actually a pre-judgment
> proceeding in attachment, where the defendant's property which is attached is in
> the possession of a third party."

(*Peter Fischer Imports*, 121 Ill. App. 3d at 910, 460 N.E.2d at 345.)[3]

   *Second*, the Attachment Act specifically provides that the Act shall be construed in a

"*liberal* manner for the detection of fraud." *See* §4-102. "The statute was one intended to

prevent fraud and must be liberally construed, and the courts should give it a reasonable

construction in order to attain that end." *Dodge v Yates*, 21 Ill. App. 547, 1886 WL 5713, at

*3 (2d Dist. 1886). Recent caselaw confirms this approach.  *See, Old Kent Bank*, 254 Ill.

App. 3d at 1097, 627 N.E.2d at 272 ("...section 4-102 of the Act requires a court to construe

the attachment statute 'in the most liberal manner for the detection of fraud.'"). That liberal

construction animating the Act bolsters supporting the issuance of the Order, since Wachovia

claims, in part, that the actions of Defendant were fraudulent in misappropriation of

Wachovia's monies.

---

3 All emphasis is added unless otherwise noted.

*Third,* since the Attachment Act clearly empowers the Court to seize the property of the debtor (the Defendant, herein) in the possession of a third party (here, Harris Bank), the next issue is whether Wachovia has satisfied the underlying grounds for issuance of an Attachment Order. The Act unambiguously provides it has. Section 4-101 of the Act lists the nine specific grounds needed for issuance of an Attachment Order, only one of which, though, need be satisfied to show the requisite "cause". *See, Old Kent Bank,* 254 Ill. App. 3d at 1094, 627 N.E.2d at 270 ("We first consider whether *any* of the provisions of section 4-101 of the Act were satisfied.") Section 4-101(1) provides Wachovia with such a statutory ground and states as follows:

"Where the debtor is not a resident of this State."

Here, the Defendant-debtor falls within the meaning of §4-101(1) of the Act, as it is *not* an Illinois resident. Instead, Defendant is a resident of and is located in Mexico City, Mexico. Defendant does not qualify as an Illinois "resident" since the Illinois Secretary of State records do not reflect it being currently authorized to do business in Illinois or having a current certificate of authority as a foreign corporation.

Two other statutory grounds support issuance of the Order of Attachment. Section 4-101(7), (8) states as follows:

"7.    Where the debtor has, within 2 years prior to the filing of such affidavit, fraudulently concealed or disposed of his or her property so as to hinder or delay his or her creditors."

"8.    Where the debtor is about fraudulently to conceal, assign, or otherwise dispose of his or her property or effects, so as to hinder or delay his or her creditors."

Here, the Affidavit submitted by Wachovia attests that, after Defendant had received Wachovia's Euros, Defendant improperly used that same money for purposes of alleviating the Defendant's alleged "liquidity crisis," rather than ensuring that Wachovia be paid in corresponding currency, as was required under the parties' foreign exchange agreements. The Affidavit specifically points out Defendant's intent to frustrate and hinder Wachovia from collecting any of its millions of dollars owed to it by Defendant if Wachovia elects to enforce its rights with respect to the transactions at issue. As noted by one Illinois appellate court: "The proper inquiry under the [Attachment] statute is whether [defendant's] actions were made with the intent to hinder or delay plaintiff." *Amcore Bank, N.A., Rock River Valley v. Hahnaman-Albrecht, Inc.*, 305 Ill. App. 3d 63, 710 N.E.2d 435, 438 (2d Dist. 1999). The submitted Affidavits clearly confirm this to have been the case given Defendant's improper disposition of its assets in an effort to frustrate Wachovia from receiving its entitled payment, Defendant's acknowledgement that it used Wachovia's Euros to make illegal loans, Defendant's statement that it is illiquid, and Defendant's attempt to take over $9 million out of its Wachovia account.

Nor is there any question that the *type of claim* to be asserted by Wachovia in its principal lawsuit against Defendant falls within the express language of §4-101. That provision empowers the court to issue an Order of Attachment when "a creditor ha[s] a money claim, whether liquidated or unliquidated, in contract or tort...." Wachovia has alleged such a claim in its Affidavit. Wachovia asserts that it has a claim against Defendant for money based in contract on either a liquidated or unliquidated amount.

Wachovia, therefore, has satisfied both key prongs under §4-101 for showing "cause" to issue an Order. Wachovia has shown that (a) Defendant is not an Illinois resident for

purposes of §4-101(1), and (b) its underlying claim to be asserted in the principal complaint sounds in "contract" for a "liquidated or unliquidated" amount. Given these twin facts, Wachovia has satisfied the requisite "cause" under §4-101 for issuance of an Order of Attachment. Indeed, Illinois courts have upheld the issuance of an order of attachment under §4-101 of the Act based, among other grounds, upon finding that a claim for monies due under a promissory note (the contract claim for a liquidated amount), when coupled with the debtor's non-Illinois residency (§4-101(1)). *See Old Kent Bank*, 254 Ill. App. 3d at 1094-1097, 627 N.E.2d at 270-272.

### B. Wachovia Has Satisfied The Bond Requirement Under Section 4-107 Of The Attachment Act.

The second key component that need be satisfied for issuance of an Order of Attachment is the posting of the requisite bond under §4-107 (or, potentially, under §4-108 if the circumstances warrant.) Wachovia stands ready, willing and able to duly satisfy that requirement.

## III. CONCLUSION

For all of the foregoing reasons, Plaintiff, Wachovia Bank, N.A., prays that this Court grant its Emergency Motion For Issuance of Order of Attachment, and enter an Order of Attachment directed against Defendant Majapara Casa De Cambio S.A. de C.V., and Harris Bank in Chicago, as more particularly described in the concurrently filed Affidavit.

Dated: December 14, 2007

Respectfully submitted,
*WACHOVIA BANK, N.A.*
Plaintiff,

By: _____
One of Its Attorneys

Barry S. Rosen
Michael D. Richman
Michael S. Leib
REED SMITH
10 S. Wacker Drive
Chicago, IL 60606

Attorneys for Plaintiff

CHILIB-2126850.2

- 10 -

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

WACHOVIA BANK, N.A.,          )

        )

      Plaintiff,       )

        )    Case No.

      v.            )

        )    2007L018958

MAJAPARA CASA DE CAMBIO S.A. de C.V., )    CALENDAR/ROOM T

        )    TIME 00:00

      Defendant,     )    Other Com Litigation

        )

Harris, N.A., a National Association,    )

        )

      Garnishee.     )

### AFFIDAVIT OF CARLOS A. PEREZ

I, Carlos A. Perez, being first duly sworn upon oath state as follows:

1.      I have personal knowledge of the facts contained herein and, if called upon as a witness, I could and would competently testify thereto.

2.      I am Managing Director, Americas Group, Global Financial Institutions & Trade Services, Wachovia Bank, N.A. ("Wachovia"). Wachovia has its principal place of business in Charlotte, North Carolina.

3.      Majapara Casa de Cambio S.A. de C.V. ("Majapara"), a Mexican corporation, is a customer of my group.

4.      Majapara resides and is located at Grecia No. 64, Colonia San Alvaro, Mexico City, C.P. 02090, Mexico.

5.      This Affidavit of Attachment is being brought in relation to the misappropriation of over $38 million by Majapara, through a series of foreign exchange transactions between the parties.

6.      On Wednesday to December 5, 2007, Majapara agreed with Wachovia to a series of foreign exchange transactions by which Wachovia would send Majapara 26 million Euros in return for Majapara sending Wachovia 38,132,700 U.S. Dollars at the applicable exchange rate. Each side was required to transmit the funds on December 7, 2007.

7.      Wachovia sent Majapara the agreed 26 million Euros on or about 2 am on December 7, 2007.

8.      Despite receiving and accepting over $38 million Wachovia's funds, Majapara has not provided Wachovia with the promised $38,132,700 (US$).  Nor has Majapara returned the 26 million Euros Wachovia provided to it.

9.      Majapara has an account with Harris Bank in Chicago and on information and belief, its engages in continuous and substantial business in Chicago.

10.     Majapara is in the business of "foreign exchange."

11.     Foreign Exchange contracts are trading contracts that involve minimum documentation.  It is the nature of foreign exchange contracts that each counterparty must transmit funds trusting the other to do so simultaneously.  Such contracts therefore involve a great deal of trust on each side.  A party to a foreign exchange transaction who fails to settle as required is thereby rendered untrustworthy and not deemed suitable for further transactions of this nature.  Should such information become public, this party would be unable to engage in such transactions with any substantial institution.  Given that foreign exchange is the foundation of Majapara's business, it would not have defaulted under its contract absent substantial economic difficulties, and its default is likely to spell its doom.

12.     Thus, in order to protect its rights, Wachovia seeks an attachment of a bank account Majapara keeps at Harris Bank.

13.     As background, since 1998, Majapara and First Union National Bank (a predecessor to Wachovia) agreed to enter into foreign exchange transactions together.  In these

2

transactions, Majapara would agree to purchase from First Union a certain amount of one currency in exchange for Majapara selling to First Union an equivalent amount of another currency at the applicable exchange rate.

14.    In order to facilitate Majapara and First Union National Bank ("First Union") entering into these currency exchange transactions, on or about April 6, 2000, Majapara and First Union entered into a First Union Online FX Subscription Agreement, a copy of which is attached hereto as Exhibit A.  Pursuant to this FX Subscription Agreement, Majapara was permitted to execute foreign exchange transactions with First Union over the Internet through First Union's foreign exchange website.  The FX Subscription Agreement did not preclude the parties from entering into foreign exchange transactions with each other in other manners.    This FX Subscription Agreement is governed by New York Law.  See Exhibit A ¶ 6.

15.    In September 2001, First Union Corporation and Wachovia Corporation merged. As a result of the merger, the FX Subscription Agreement was assigned to Plaintiff Wachovia Bank, N.A.

16.    On or about December 5, 2007, Majapara and Wachovia agreed to do a series of seven (7) transactions, all of which were to be settled on December 7, 2007, whereby Wachovia would deliver 26 million Euros to Majapara and Majapara would deliver $38,132,700 to Wachovia.  Instead of the dollars being deposited into Majapara's account at Wachovia and then Wachovia debiting the currency from the Majapara account, these transactions required Majapara to transfer dollars directly to Wachovia at a Wachovia-owned New York branch account.  Six (6) of the transactions were executed on Wachovia's foreign exchange internet website.  One (1) of the transactions was executed over the telephone.  A copy of confirmations of each of these transactions is attached hereto as Exhibit B.

3

17.    Pursuant to the seven (7) foreign exchange agreements, on December 7, 2007, Wachovia sent 26 million Euros to Majapara. Even though they had just entered into the deals two days earlier on December 5, 2007, Majapara did not deliver the agreed upon $38,132,700 to Wachovia, as required, on December 7, 2007.

18.    Despite its failure to deliver the dollars, Majapara continued to try to place additional trades with Wachovia on December 7, 2007, even though it knew it could not cover such additional trades or its obligation to deliver the dollars.    Wachovia was able to stop such additional trades from being executed.

19.    In addition, on December 11, 2007, two deposits came into Majapara's Wachovia account totaling $9,460,000.    Despite owing a multiple of this amount to Wachovia, Majapara sent instructions to Wachovia on December 11, 2007 to forward those funds to Majapara's account at Citibank. This action, essentially, would have cleaned out all of Majapara's assets in its Wachovia account.

20.    By opening an account at Wachovia, however, Majapara agreed to Wachovia's Terms & Conditions for Global Financial Institutions, which includes a provision providing Wachovia with setoff rights. See Terms and Conditions, attached hereto as Exhibit C. Through its setoff rights, Wachovia was able to prevent Majapara from draining the account, and obtained funds to compensate it for its loss, leaving $24,711,845 now due.

21.    In addition, Wachovia has additional exposure to Majapara to cover returned items in the federal check claims process (bounced checks), which may aggregate as to Majapara over $3 million per month, into the future.

22.    After Majapara defaulted, my department made contact with Majapara to demand payment and to understand why Majapara did not pay Wachovia, as it was required to do.

4

23. On Thursday December 13, 2007 at approximately 9:52 am Eastern, I spoke by telephone with Jorge Ortiz, Majapara's Chairman and CEO. I know Mr. Ortiz well and have met with him and spoken to him many times. I was joined in the telephone call by Juanita Gomez, a Vice President in my group who is our Mexico representative.

24. I asked Mr. Ortiz in our call what Majapara did with Wachovia's money.

25. Mr. Ortiz acknowledged and admitted that Majapara was obligated to provide the agreed upon currency to Wachovia and owed Wachovia over $30 million.

26. He then stated that Majapara had received Wachovia's Euros and used them for other purposes because it was experiencing "a liquidity crisis."

27. I then asked him if he lent the money to third parties. He said "yes."

28. I said, "That's not legal."

29. He said: "I recognize that we have done something that is not permitted."

30. Majapara is a Mexican "Casa de Cambio," a company in the business of currency exchange, such as exchanging Mexican pesos for dollars. Such companies, under Mexican law, are not permitted to make loans.

31. I then asked Mr. Ortiz when Majapara would be able to repay Wachovia.

32. He said that he "needed time to collect the money from others who he had lent Wachovia's money to." He said Majapara "would need two months to collect."

33. Based on the above information, it is my information and belief that Majapara engaged in a fraud. Due to its "liquidity crisis," Majapara did not have sufficient funds to complete the exchange with Wachovia and to engage in the other lending or other activities. It nonetheless accepted Wachovia's funds, knowing that it would not have the funds to repay Wachovia for a lengthy period of time, if at all. It then used Wachovia's funds to engage in

5

illegal lending transactions and otherwise dissipated the assets received from Wachovia, all the while failing to fulfill its immediate obligations to transfer over $38 million to Wachovia.

34.    Mr. Ortiz told me that if Wachovia took legal action against Majapara, Wachovia would end up with nothing.

35.    Under Wachovia's Terms & Conditions for Global Financial Institutions, the terms and conditions are governed by and construed in accordance with the laws of New York and Majapara agreed to submit to the jurisdiction of the courts located in Manhattan, New York.

36.    For the reasons stated above, Wachovia has a just claim against Majapara.

37.    I believe that Wachovia is entitled to recover against Majapara, after allowing all just credits and set-offs, $24,711,845, which is now due. I further expect that Majapara will have additional amounts owing to Wachovia for returned items, as described above.

38.    I have good reason to believe and do believe that Majapara is not a resident of this State and is, instead, a resident of Mexico.

39.    Further, for the reasons stated above, including the fact that Majapara accepted 26 million Euros from Wachovia without any intention of completing their end of the transaction, tried to get Wachovia to continue to trade with it on December 7, 2007 when they clearly knew they could not fulfill their end of any trade, tried to quickly take funds that were deposited in its Wachovia account and have them transferred to their Citibank account, admitted to me and Ms. Gomez that Majapara was illiquid, and stated that if Wachovia moved to assert its legal rights, it would not recovery anything, Wachovia has good reason to believe and does believe that Majapara either has already fraudulently concealed or disposed of its property so as to hinder or delay its creditors or is about to conceal, assign, or otherwise dispose of its property or effects, so as to hinder or delay its creditors.

**FURTHER AFFIANT SAYETH NOT.**

6

Under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, 735 ILCS 5/1-109, the undersigned certifies that the statements set forth in the foregoing Affidavit are true and correct, except as to matters therein stated to be on information and belief, and as to such matters, the undersigned certifies as aforesaid that he verily believes the same to be true.

Executed this 13th day of December 2007 in Miami, Florida.

By: _____
Carlos A. Perez

Signed and sworn to before me
this 13th day of December 13, 2007


Notary Public

CHI_LIB-2126822.3

ELENA PEREZ CAPIRO
MY COMMISSION # DD 705363
EXPIRES: August 15, 2011
Bonded Thru Notary Public Underwriters

7

# Exhibit D

Scott S. McKessy (SM-5479)
Casey Laffey (CL-1483)
Reed Smith LLP
599 Lexington Avenue
New York, New York 10022
Tel. (212) 521-5400
Fax. (212) 521-5450

**ORIGINAL**

Attorneys for Plaintiff Wachovia Bank, National Association

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

WACHOVIA BANK, NATIONAL ASSOCIATION,          :          07 Civ. 11230 (BSJ)(RLE)

                       Plaintiff,          :

  - against -          :          **AMENDED COMPLAINT**

CASA DE CAMBIO MAJAPARA S.A. de C.V a/k/a          :
MAJAPARA CASA DE CAMBIO S.A. de C.V.,          :

                 Defendant.          :

---------------------------------------------------------------X

       Plaintiff, Wachovia Bank, National Association ("Wachovia"), by its attorneys, Reed

Smith LLP, as and for its complaint against the defendant Case de Cambio Majapara S.A. de

C.V. a/k/a Majapara Casa de Cambio S.A. de C.V. ("Majapara"), alleges as follows:

### PRELIMINARY STATEMENT

      1.    This action arises from Majapara's misappropriation of over $38 million (US$) of

Wachovia's money relating to a series of foreign exchange spot transactions between the parties.

Foreign exchange spot transactions, due to their frequency, the speed at which the transactions

are agreed and closed, and the manner in which funds are simultaneously exchanged, are

founded upon trust.  Majapara, however, abused that trust -- a trust that was established through

years of currency trading with Wachovia -- to plunder more than $38 Million from Wachovia.

And this is not a mere renege on a multi-million dollar transaction wherein Majapara returned

Wachovia's property when it realized it could not complete the foreign currency exchange.

Subsequent conversations with Majapara make apparent that it never intended to honor its

commitments but, instead, had decided to wrongfully keep Wachovia's money and abscond with

it. In these after-the-fact conversations, Majapara admitted to Wachovia that it was illiquid, that

it had engaged in illicit activities in relation to its foreign exchange transactions and threatened

that, if Wachovia took any steps to enforce its rights, Wachovia's judgment would be

uncollectible. Through this action, Wachovia seeks a judgment against Majapara, in an amount

not less than $24,711,845.00, plus prejudgment interest.

### VENUE/JURISDICTION

2.      This Court has personal jurisdiction over Majapara pursuant to CPLR §§ 301 and

302(a) as Majapara has been transacting business in this State since 2000, the transactions being

sued upon herein occurred in the State of New York, and defendant breached the parties'

agreement here in New York by failing to wire the required funds, as agreed, to Wachovia's New

York account. Defendant has also contractually agreed to be sued in this jurisdiction.

3.      Venue in this district is proper under 28 U.S.C. § 1391(a).

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

1332 because this action involves a controversy that exceeds $75,000, exclusive of interests and

costs, and involves a citizen of a State and a citizen of a foreign state.

### PARTIES

5.      Wachovia is a national banking association, organized under the laws of the

United States, with its principal place of business in Charlotte, North Carolina. Wachovia

maintains offices in New York.

6.      Upon information and belief, Majapara is a Mexican corporation with its principal

place of business in Mexico City, Mexico.

## FACTS COMMON TO ALL COUNTS

### The Majapara Relationship With Wachovia

7.      In the late 1990's, Majapara and First Union National Bank ("First Union"), a predecessor to Wachovia, agreed to enter into foreign exchange transactions together. In these transactions, Majapara would agree to purchase from First Union a certain amount of one currency in exchange for Majapara selling to First Union a certain amount of another currency at the applicable exchange rate.

8.      In order to facilitate Majapara and First Union entering into these currency exchange transactions, on or about April 6, 2000, Majapara and First Union entered into a First Union Online FX Subscription Agreement (the "FX Subscription Agreement"), a copy of which is attached hereto as Exhibit A. Pursuant to the FX Subscription Agreement, Majapara was permitted to execute foreign exchange transactions electronically with First Union through First Union's foreign exchange website. This, however, was not the exclusive method for the parties to enter into these foreign exchange spot transactions. This FX Subscription Agreement is governed by New York law. See Exhibit A, ¶ 6.

9.      Effective April 1, 2002, Wachovia merged into and under the charter of First Union with the resulting title of Wachovia Bank, National Association. As a result of the merger, First Union changed its name to Wachovia Bank, National Association.

10.      In some of the foreign exchange transactions between Majapara and Wachovia, Wachovia would deliver currency to Majapara on the same day that Majapara transferred another currency into a Majapara account held at Wachovia's New York Branch ("Majapara NY Account"). Wachovia would then debit the currency from the Majapara NY Account. The authorization for this procedure was documented in a December 10, 2003 letter (in Spanish)

3

from Majapara to Wachovia Bank, a copy of which is attached as Exhibit B, which reads (as translated into English): "In relation to the transactions done with yourselves through Online FX; we authorize you to debit and credit our account number NY2000192304201 held with yourselves." In or about March 2006, Majapara signed a Debit and Netting Agreement that gave Wachovia the same authority to credit and debit the same Majapara NY Account held at Wachovia's New York Branch. A copy of this document is attached as Exhibit C.

**The Foreign Exchange Transactions At Issue**

11.    On or about December 5, 2007, Majapara and Wachovia agreed to a series of seven (7) transactions, all of which were to settle on December 7, 2007, whereby Wachovia would deliver an aggregate 26 million Euros to Majapara and Majapara would deliver an aggregate $38,132,700 to Wachovia. In a departure from the process described in paragraph 10 above, on these transactions, Majapara agreed to transfer dollars directly to a Wachovia account located in New York. Six (6) of the transactions were executed on Wachovia's foreign exchange internet website. One (1) of the transactions was executed over the telephone. Copies of the confirmations for these transactions are attached hereto as Exhibit D.

12.    Pursuant to these seven (7) foreign exchange agreements, on December 7, 2007, Wachovia delivered 26 million Euros to Majapara. Majapara failed to deliver the agreed upon $38,132,700.00 to Wachovia, as required, on December 7, 2007.

13.    On or about December 11, 2007, the General Director of Majapara admitted that Majapara had been obligated to provide the agreed upon currency to Wachovia.

14.    Wachovia was able to secure $13,420,155, which was in Majapara's accounts at Wachovia, but has not been able to recover the remaining amount Wachovia is owed. Some of the amount recovered represents conditional credit that may be subject to reduction by reason of

return of the items (in this case, checks) for which this credit was given (see Paragraph 15 below).

15.    Majapara also maintains five (5) U.S. dollar accounts at Wachovia. As to each of these accounts, Wachovia has contingent residual exposure to cover returned items in the federal check clearing program. Majapara is obligated to reimburse Wachovia for these amounts, but has now stated it is unable to and will not meet its financial obligations. This liability has averaged $3.3 million per month for the last several months.

16.    By opening an account at Wachovia, Majapara agreed to Wachovia's Terms & Conditions for Global Financial Institutions, which, under its terms, is governed by and construed in accordance with the laws of New York and pursuant to which, Majapara agreed to submit to the jurisdiction of the courts located in Manhattan, New York.

### COUNT I

### (Breach of Contract)

17.    Plaintiff realleges and reincorporates the allegations in Paragraphs 1 through 16.

18.    As set forth above, Wachovia entered into a series of currency exchange agreements with Majapara.

19.    Majapara breached those agreements by failing to deliver the currency as agreed upon by the parties.

20.    Wachovia has fulfilled its obligations under the agreements.

21.    As a result of Majapara's breaches, Wachovia has suffered damage in the amount of not less than $24,711,845.00, plus interest.

5

## COUNT II

### (Promissory Estoppel – Alternate Count)

22.     Plaintiff realleges and reincorporates the allegations in Paragraphs 1 through 16.

23.     In the event it is found that no oral or written contract existed between Majapara and Wachovia in relation to the seven (7) foreign exchange spot transactions at issue here, equity requires Majapara to pay Wachovia not less than $24,711,845.00 in return for accepting currency from Wachovia.

24.     Majapara promised to deliver certain currency to Wachovia in return for Wachovia delivering certain currency to Majapara.

25.     In reliance on Majapara's agreement to deliver certain currency to Wachovia, Wachovia delivered approximately $38 million worth of currency to Majapara.

26.     Wachovia has requested the funds from Majapara.

27.     To date Majapara has not provided the required currency to Wachovia.

28.     Wachovia, however, has been able to obtain certain Majapara funds and offset the amount owed by $13,420,155.00 (subject to reduction for the reasons set forth in Paragraph 14 of the recitals above).

29.     Wachovia has no adequate remedy at law.

30.     As a result, Majapara has been unjustly enriched to the detriment of Wachovia.

## COUNT III

### (Unjust Enrichment – Alternate Count)

31.     Plaintiff realleges and reincorporates the allegations in Paragraphs 1 through 16.

32.     In the event it is found that no oral or written contract existed between Majapara and Wachovia in relation to the seven (7) foreign exchange transactions at issue here, equity

6

would still require Majapara to pay Wachovia an amount not less than $24,711,845.00 in return for accepting currency from Wachovia.

33.     Majapara promised to deliver certain currency to Wachovia in return for Wachovia delivering certain currency to Majapara.

34.     In reliance on Majapara's agreement to deliver certain currency to Wachovia, Wachovia delivered approximately $38 million worth of currency to Majapara.

35.     Majapara did not deliver any currency to Wachovia.

36.     Wachovia, however, has been able to obtain certain Majapara funds and offset the amount owed by $13,420,155.00 (subject to reduction for the reasons set forth in Paragraph 14 of the recitals above).

37.     Wachovia requested that Majapara deliver the currency it is owed.

38.     To date, Majapara has neither delivered the required currency to Wachovia, nor returned return the currency Wachovia sent to it.

39.     Majapara has unjustly retained this benefit to the detriment of Wachovia.

40.     Majapara's retention of this benefit violates fundamental principles of justice, equity and good conscience.

41.     Wachovia has no adequate remedy at law.

## COUNT IV

### (Fraud)

42.     Plaintiff realleges and reincorporates the allegations in Paragraphs 1 through 16.

43.     As set forth above, on or about December 5, 2007 Majapara and Wachovia entered into a series of seven (7) currency exchange transactions.

44.    Pursuant to the parties' agreement, in exchange for the receipt of 26 million Euros from Wachovia, Majapara agreed to deliver $38,132,700 to Wachovia.

45.    Upon information and belief, at the time Majapara entered into the December 5, 2007 agreement it knew it was illiquid and insolvent and incapable of performing its obligations under the parties' agreement.

46.    Notwithstanding its knowledge, Majapara represented to Wachovia that it would deliver $38,132,700.00 (US$) to Wachovia to settle the transactions.  Upon information and belief, at the time of the transaction, Majapara knew it would not deliver the required currency and was acting under a present intent to deceive Wachovia and abscond with its funds.  Its representations to Wachovia were false and materially misleading.

47.    Majapara's fraudulent intent was confirmed in conversations Wachovia subsequently had with representatives of Majapara.

48.    For example, on or about December 13, 2007, Carlos A. Perez, a Managing Director of Wachovia, spoke with Jorge Ortiz, the Chairman and CEO of Majapara by telephone, and Mr. Ortiz acknowledged that Majapara, prior to settlement of the transactions, knew that it was experiencing "a liquidity crisis."

49.    When Mr. Perez confronted Mr. Ortiz concerning the transaction and the illegality of Majapara's actions, Mr. Ortiz responded, "I recognize that I have done something that is not permitted."

50.    Overall, due to Majapara's "liquidity crisis" and other impermissible activities relating to its currency transactions, Majapara did not have sufficient funds to complete the exchange with Wachovia.  Majapara nonetheless accepted Wachovia's funds, knowing that it would be incapable of repaying the funds to Wachovia.

51.    Majapara then claimed to have used some or all of the Wachovia funds to engage in impermissible lending transactions and otherwise dissipated the assets received from Wachovia, all the while failing to fulfill its immediate obligations to transfer over $38 million to Wachovia.

52.    Wachovia entered into the transactions and delivered 26 million Euros to Majapara in reasonable reliance upon Majapara's representations that it was going to deliver the requisite currency.

53.    As a result of Majapara's fraud, Wachovia has been damaged in an amount to be determined at trial, but not less than $24,711,845.00.

## COUNT V

### (Breach of Contract/Anticipatory Breach)

54.    Plaintiff realleges and reincorporates the allegations in Paragraphs 1 through 16.

55.    As set forth above, Majapara also maintains five (5) US dollar accounts at Wachovia. Under these accounts, Wachovia has contingent residual exposure to cover returned items in the federal check clearing program -- this contingent liability is a continuing concern. In this regard, Wachovia is entitled to immediate reimbursement from Majapara for the amounts Wachovia is required to pay out.

56.    Over the last several months, this liability has averaged $3.3 million per month.

57.    So far this month, Wachovia has already had to cover certain residual liabilities for which Majapara, in breach of its agreements with Wachovia, has not reimbursed Wachovia. As a result, Majapara breached the parties' agreement and is indebted to Wachovia.

58.    Additionally, Majapara has already stated to Wachovia that it is illiquid and unable to satisfy its obligations owed to Wachovia. Accordingly, Majapara has anticipatorily

breached its agreements with Wachovia by stating it will not be immediately reimbursing Wachovia for these obligations now or when they come due.

59.    Wachovia has performed all of its obligations under its agreements with Majapara.

60.    Consequently, Wachovia has been damaged by Majapara's breach of the parties' agreement and will continue to be damaged by Majapara's anticipatory breach of the parties' agreement in an amount to be determined at trial.

**WHEREFORE**, Plaintiff demands judgment as follows:

(i)    On the First, Second, Third, and Fourth Causes of Action, monetary damages in an amount to be determined at trial, but not less than $24,711,845.00, plus prejudgment interest;

(ii)    On the Fifth Cause of Action, monetary damages in an amount to be determined at trial, plus prejudgment interest;

(iii)    An award of costs, expenses and attorneys fees attendant to this action; and

(iii)    Such other further and different relief as this Court deems just and proper.

Dated:    New York, New York
December 17, 2007

REED SMITH LLP

By: _____
Scott S. McKessy (SM-5479)
Casey Laffey (CL-1483)
599 Lexington Avenue
New York, NY 10022
(212) 521-5400

*Attorneys for Plaintiff*
*Wachovia Bank, National Association*

# Exhibit E

*Jones, J.*

Scott S. McKessy (SM-5479)
Casey D. Laffey (CL-1483)
REED SMITH LLP
599 Lexington Avenue
New York, New York 10022
Tel. (212) 521-5400
Fax. (212) 521-5450

Attorneys for Plaintiff
Wachovia Bank, National Association

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
WACHOVIA BANK, National Association,                    :
                                                        :
                        Plaintiff,                      :        Civil Action No. 07 CV 11230
                                                        :
              - against -                               :
                                                        :
MAJAPARA CASA DE CAMBIO S.A. de C.V.,                   :
                                                        :
                        Defendants.                     :
-----------------------------------------------------------X


### MEMORANDUM OF LAW IN SUPPORT
### OF PLAINTIFF'S APPLICATION FOR A TEMPORARY
### RESTRAINING ORDER AND PRE-JUDGMENT ORDER OF ATTACHMENT


**REED SMITH LLP**
599 Lexington Avenue, 29th Floor
New York, New York  10022
(212) 521-5400

*Attorneys for Plaintiff*
*Wachovia Bank, National Association*

## PRELIMINARY STATEMENT

Plaintiff Wachovia Bank, National Association ("Wachovia" or "Plaintiff") submits this Memorandum of Law, along with the accompanying Declaration of Carlos A. Perez, dated December 13, 2007 ("Perez Decl."), and Declaration of Scott S. McKessy, dated December 13, 2007 ("McKessy Decl."), in support of its instant application, brought by Order to Show Cause, pursuant to Fed. R. Civ. P. 64, for a temporary restraining order and a pre-judgment order of attachment as to the assets of, and debts owed to, defendant Majapara Casa De Cambio S.A. de C.V. ("Majapara" or "Defendant").

Wachovia is a national bank.  One of the services it afforded to its clients was a platform for engaging in foreign exchange spot transactions.  Majapara is located in Mexico and engaged in the business of retail and wholesale foreign exchange.  In foreign exchange spot transactions, entities agree to multi-million dollar currency exchanges that are to be settled on one or two days notice.  As a result, the cornerstone of these transactions is trust.  An entity engaging in foreign exchange spot transactions that fails to settle a transaction becomes untrustworthy, meaning two things: (1) that that entity is in dire financial straits; and (2) that that entity will never again engage in such transactions with any substantial institution.

Here, we have just that situation -- but made even worse by Majapara's subsequent conduct.  On December 5, 2007, Majapara entered into foreign exchange contracts with Wachovia with the total value of all currency being exchanged exceeding $75 million (US$). The bulk of the transactions consisted of Wachovia delivering to Majapara approximately 26 million Euros in exchange for Majapara delivering to Wachovia approximately $38 million US Dollars.  On December 7th, the parties were to have delivered their respective currencies to each other: **Wachovia did;** *Majapara did not.*  Not only did Majapara renege on the foreign exchange contracts, it also decided to abscond with the more than 30 million Euros Wachovia transferred to it, and used those funds to payoff other obligations and make impermissible loans. Further, Majapara is a non-domiciliary with little known assets here in the United States, and has represented to Wachovia that it is now illiquid, cannot pay its debts as they come due, and has

threatened that Wachovia will not recover any money from Majapara if Wachovia enforces its rights against Majapara. This direct threat to frustrate recovery of any judgment only confirms that Majapara intends to take steps to secrete its assets from Wachovia's reach.

Consequently, the instant application for an award of a pre-judgment attachment and temporary restraints is desperately needed and should be granted for each of the following reasons:

- Attachment is proper under CPLR § 6201(1) as Majapara is a non-domiciliary foreign corporation not qualified to do business in the state;

- Attachment is proper under CPLR § 6201(3) as Majapara intends to remove assets from Wachovia's reach with the intention of frustrating the enforcement of an eventual judgment in favor of Wachovia; and

- Wachovia is more than likely to succeed on the merits of its claim for $24,711,845.00, while Majapara has no counterclaims against Wachovia.

## STATEMENT OF FACTS

The Court is respectfully referred to the accompanying Declaration of Carlos A. Perez, dated December 13, 2007, and the Complaint filed in this action, for a full and complete rendition of the applicable facts.

## ARGUMENT

## POINT I

### PLAINTIFF IS ENTITLED TO AN ORDER AWARDING PRE-JUDGMENT ATTACHMENT

Pursuant to Fed. R. Civ. P. 64, "at the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." Consequently, this Court will look to New York State law governing the issuance of pre-judgment attachments. Thornapple Assocs., Inc. v. Sahagen, 2007 WL 747861, at *2 (S.D.N.Y. Mar. 12, 2007). Under New York law, orders of attachment are governed by Article 62 of New York's Civil Practice

Law and Rules ("CPLR").  CPLR § 6201 provides, in applicable part, that an order of attachment

may be granted under one of several statutorily enumerated circumstances including when:

> (1)    the defendant is a nondomiciliary residing without the state, or is a foreign
> corporation not qualified to do business in the state; or
>
> * * * *
>
> (3)    the defendant, with intent to defraud his creditors or frustrate the
> enforcement of a judgment that might be rendered in plaintiff's favor, has
> assigned, disposed of, encumbered or secreted property, or removed it from the
> state or is about to do any of these actions . . . .

Additionally, a plaintiff seeking a pre-judgment attachment must demonstrate: (1) that it

has one or more valid causes of action; (2) that it is probable that plaintiff will succeed on the

merits; and (3) that the amount demanded from the defendant exceeds all counterclaims known

to the plaintiff.  CPLR § 6212(a); Thornapple Assocs., 2007 WL 747861, at *2.  As set forth

below, Wachovia has demonstrated each of these elements entitling it to an order of attachment.

## A.    Wachovia is Entitled to an Order of Attachment Under CPLR § 6201(1)

First, Wachovia is entitled to an order of attachment under CPLR § 6201(1).  As noted

above, a plaintiff is entitled to an order of attachment under CPLR § 6201(1) upon a showing

that "the defendant is a nondomiciliary residing without the state, or is a foreign corporation not

qualified to do business in the state." CPLR §§ 6201(1).  Here, we have both: Majapara is a

Mexican entity (non-domiciliary) and is a foreign corporation not authorized to do business in

New York.  See Perez Decl. ¶ 5; Complaint ¶ 6.

Accordingly, CPLR § 6201(1) is satisfied two ways.  See, e.g., Thornapple Assocs., 2007

WL 747861, at *3 (holding that plaintiff satisfied CPLR § 6201(1) by demonstrating that

defendant was a Delaware company not registered to do business in New York); OSRecovery,

Inc. v. One Groupe Int'l, Inc., 305 F.Supp.2d 340, 348 (S.D.N.Y. 2004) ("The record before the

Court establishes that all of the corporate One Groupe Defendants are foreign corporations not

qualified to do business in New York . . . and that plaintiffs are likely to prevail against them.

They therefore are entitled to an order of attachment with respect to any assets of those

defendants in the State of New York."); <u>Olbi USA, Inc. v. Agapov</u>, 283 A.D.2d 227, 724

N.Y.S.2d 839, 840 (1st Dep't 2001) (reversing vacatur of order of attachment and holding that

plaintiff satisfied CPLR § 6201(1) by showing that defendant was a non-domiciliary and plaintiff

had a likelihood of success on the merits).

Some courts, however, although not required by the statute itself, have required a plaintiff

seeking an attachment under CPLR § 6201(1) against a foreign corporation or foreign individual

who is otherwise subject to personal jurisdiction in New York, to show that the defendant's

"financial position and conduct pose a significant risk of the enforcement of a future judgment."

<u>Thornapple Assocs.</u>, 2007 WL 747861, at *5 (citing <u>Ames v. Clifford</u>, 863 F.Supp. 175, 177

(S.D.N.Y. 1994)).

Wachovia has satisfied this additional element too. As set forth in the Perez Decl.,

Majapara has conceded that it is now illiquid and has specifically threatened to make any

judgment obtained in court uncollectible. Moreover, Majapara's primary business is/was foreign

exchange transactions: based upon it becoming "less than trustworthy," it has effectively put

itself "out of business." Further, Majapara has conceded that it has used the $38,000,000 that it

failed to remit to Wachovia to improperly fund its other obligations and make impermissible

loans. Perez Decl. ¶¶ 13-21; Complaint ¶¶ 11-13. This conduct is not permitted and raises

serious questions about Majapara's integrity and intentions on keeping any of its assets in the

United States. Perez Decl. ¶ 4. Therefore, until Majapara's New York assets are attached, there

is more than a substantial risk that they will be transferred out of the jurisdiction, or country for

that matter, potentially preventing Wachovia from enforcing a judgment obtained in this action.

**B.    <u>Wachovia is Entitled to an Order of Attachment Under CPLR § 6201(3)</u>**

In addition, even if Majapara was a domiciliary of New York or authorized to do business

in the state -- neither of which is the case -- plaintiff would still be entitled to an order of

attachment under CPLR § 6201(3). In order to prevail under CPLR § 6201(3), a plaintiff must

demonstrate: (1) that the defendant has, or is about to conceal his or her property; and (2) that

defendant has acted or will act with the intent to defraud his or her creditors or to frustrate the

-4-

enforcement of a judgment for the plaintiff.  Capital Ventures Int'l v. Republic of Argentina, 443
F.3d 214, 219 (2d Cir. 2006); Societe Generale Alsacienne De Banque, Zurich v. Flemingdon
Development Corp., 118 A.D.2d 769, 772, 500 N.Y.S.2d 278, 281 (2d Dep't 1986).

As noted above, Majapara has demonstrated an overall intent to frustrate Wachovia's
efforts to collect a judgment in New York.  Majapara has conceded that it is illiquid, has failed to
settle its currency exchange transactions with Wachovia, and has refused to transfer the
remaining $24,711,845.00 owed to Wachovia, actions which will effectively prevent Majapara
from ever engaging in foreign exchange spot transactions again.  Perez Decl. ¶¶ 14-21;
Complaint ¶¶ 11-13.  Finally, Majapara concedes that it used Wachovia's currency to improperly
fund its other obligations and to make impermissible loans.  Perez Decl. ¶¶ 17-18.  Majapara's
actions, taken together, suggest a clear intention to transfer its remaining assets outside the
jurisdiction in order to keep true to its promise to frustrate any collection efforts by Wachovia.

Consequently, Wachovia is entitled to an order of pre-judgment attachment to prevent
Majapara from further frustrating its attempts to enforce a judgment in this action.  See, e.g.,
Arzu v. Arzu, 190 A.D.2d 87, 92, 597 N.Y.S.2d 322, 325 (1st Dep't 1993) (holding attachment
warranted "[i]n light of [defendant]'s patently incredible and almost entirely undocumented
explanation as to what happened to hundreds of thousands of dollars belonging to plaintiff . . .
."); Mineola Ford Sales Ltd. v. Rapp, 242 A.D.2d 371, 371–72, 661 N.Y.S.2d 281, 282 (2d Dep't
1997) (affirming order of attachment upon showing of, inter alia, diversion of funds rightfully
belonging to plaintiff).

C.    **Wachovia is Likely to Succeed on the Merits**

In addition, Plaintiff will likely succeed on the merits of its claims.  As set forth in the
Perez Decl. and Complaint, on or about December 5, 2007, Majapara agreed to a series of seven
foreign exchange spot transactions worth over $38,000,000 with Wachovia, all of which were to
be settled on December 7, 2007.  Perez Decl. ¶ 13; Complaint ¶ 11.

Majapara, never delivered the money it promised and, instead, withheld over $38,000,000
in currency owed to Wachovia.  Perez Decl. ¶ 14; Complaint ¶¶ 12, 19.  To date, Majapara has

failed to return the money rightfully belonging to Wachovia, but, instead, has improperly used Wachovia's funds to payoff its other obligations and to make impermissible loans to other entities. Accordingly, Wachovia has demonstrated a more than likelihood of success on the merits of its claims. See, e.g., Tampimex Oil Ltd. v. Latina Trading Corp., 558 F. Supp. 1201, 1203-04 (S.D.N.Y. 1983); Russian-Brazilian Holdings, Inc. v. Saraev, 197 A.D.2d 391, 391–92 602 N.Y.S.2d 352, 353 (1st Dep't 1993).

**D.      Wachovia is Seeking Over $24,000,000.00
         in Damages, While Defendant Has No Counterclaims**

Finally, the amount that Wachovia demands in the Complaint clearly exceeds any potential counterclaims to be asserted by Majapara. As set forth in the Complaint, Wachovia has suffered over $24,000,000.00 in damages, while Majapara has not expressed any intent to assert -- nor can it assert -- any viable counterclaims in this action. Under these circumstances, the final requirement of CPLR Article 62 is satisfied. See, e.g., Capital Ventures Int'l, 443 F.3d at 219 ("There was no evidence of any counterclaims against CVI, much less any that would exceed the $ 111 million demanded from Argentina.").

**POINT II**

**A TEMPORARY RESTRAINING ORDER MUST BE ENTERED TO PRESERVE
THE STATUS QUO PENDING DETERMINATION OF PLAINTIFF'S MOTION**

A temporary restraining order is required to preserve the status quo pending determination of Wachovia's motion for an order of attachment. As noted above, Majapara has conceded that it is illiquid, has already attempted to remove certain funds from its Wachovia accounts, and its actions have effectively caused itself to go out of business. Unless immediately restrained pending a determination of Wachovia's motion, Majapara is likely to attempt to remove its remaining assets from the jurisdiction, potentially rendering a judgment in this action ineffectual. Under these circumstances, courts have determined that temporary restrains prior to any determination on the application for attachment are appropriate. See, e.g., Experience Hendrix, LLC v. Chalpin, 461 F. Supp. 2d 165, 174 (S.D.N.Y. 2006); Sierra USA

-6-

<u>Communications, Inc. v. Int'l Telephone & Satellite, Corp.</u>, 14 Misc.3d 528, 530, 824 N.Y.S.2d

560, 561 (Sup. Ct. N.Y. Co. 2006); <u>New York Janitorial Service, Inc. v. Easthampton Dewitt</u>

<u>Corp.</u>, 100 Misc. 2d 814, 816, 420 N.Y.S.2d 100, 101–02 (Sup. Ct. Onondaga Co. 1979).

<u>**CONCLUSION**</u>

For the foregoing reasons and those set forth in the accompanying Perez Decl., McKessy

Decl., and the Complaint, Wachovia's motion for a temporary restraining order and order of

attachment should be granted in its entirety, along with such other and further relief as the Court

deems just, proper, and equitable.

Dated:     New York, New York
           December 14, 2007

REED SMITH LLP


By: _____
           Scott S. McKessy
           Casey D. Laffey
599 Lexington Avenue
New York, New York 10022
Tel. (212) 521-5400
Fax. (212) 521-5450

*Attorneys for Plaintiff*
*Wachovia Bank, National Association*

# Exhibit F

Scott S. McKessy (SM-5479)
Casey D. Laffey (CL-1483)
REED SMITH LLP
599 Lexington Avenue
New York, New York 10022
Tel. (212) 521-5400
Fax. (212) 521-5450
Attorneys for Plaintiff
Wachovia Bank, National Association

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

WACHOVIA BANK, National Association,      :
                                          :
                   Plaintiff,             :
                                          :         Civil Action No. __
         - against -                      :
                                          :
MAJAPARA CASA DE CAMBIO S.A. de C.V.,     :
                                          :
                   Defendants.            :
-------------------------------------------------------------X

## DECLARATION OF CARLOS A. PEREZ

Carlos A. Perez, declares as follows:

1.      I am the Managing Director, Americas Group, Global Financial Institutions &
Trade Services for Wachovia Bank, National Association ("Wachovia"). I am fully familiar with
the facts set forth herein, and submit this declaration pursuant to 28 U.S.C. §1746, in support of
Wachovia's instant application for the award of a pre-judgment attachment and temporary
restraints.

### Introduction

2.      This is a case that arises out of foreign exchange spot transactions involving more
than $70 million (US$) in currency being exchanged between Wachovia and defendant Majapara
Casa De Cambio S.A. de C.V. ("Majapara"). The gist of the transaction was that Wachovia
would deliver to Majapara 26 million Euros and in exchange Majapara would deliver more than
$38 million (US$) to Wachovia's account here in New York. Wachovia delivered the 26 million
Euros to Majapara's account, but Majapara never delivered the $38-plus million (US$) to

Wachovia. Not only did Majapara renege on the agreed upon transactions, but it then absconded with Wachovia's money. Thereafter, Majapara admitted to Wachovia that it was now illiquid, that it has engaged in illegal loans in relation to its foreign exchange transactions, and if Wachovia took any steps to enforce their rights, Wachovia would not recover a single dollar. As a result, Wachovia now commences this action to recover the money wrongfully taken by Majapara, as well as make the instant application for pre-judgment attachment of certain Majapara assets believed to be located here in New York.

3.      The instant application should be granted because Majapara is a non-domiciliary, has admitted it is illiquid, engaged in inappropriate business activities, and indicated that if Wachovia commences any action Majapara will ensure Wachovia will not be able to recover upon its judgment. Plus, there is an exceedingly strong likelihood that Wachovia will succeed on its claims herein: the deal was to exchange currencies – Wachovia did; Majapara did not.

### Foreign Currency Exchanges

4.      Wachovia provides a platform for its customers to trade foreign currencies. The amounts swapped are usually in significant amounts and the off-setting exchanges are done simultaneously. Foreign Exchange contracts are trading contracts that involve minimum documentation. It is the nature of foreign exchange contracts that each counterparty must transmit funds trusting the other to do so simultaneously. Such contracts therefore involve a great deal of trust on each side. A party to a foreign exchange transaction who fails to settle as required is thereby rendered untrustworthy and not deemed suitable for further transactions of this nature. Should such information become public, this party would be unable to engage in such transactions with any substantial institution. Given that foreign exchange is the foundation of Majapara's business, it would not have defaulted under its contract absent substantial economic difficulties, and its default is likely to spell its doom.

## The Majapara Relationship With Wachovia

5.      Majapara is a Mexican corporation and does not maintain any offices in New York. Majapara is in the business of retail and wholesale foreign exchange.

6.      In the late 1990's, Majapara and First Union National Bank ("First Union") (a predecessor to Wachovia) agreed to enter into foreign exchange transactions. As mentioned above, in these transactions, Majapara would agree to purchase from First Union a certain amount of one currency in exchange for Majapara selling to First Union an equivalent amount of another currency at the applicable exchange rate.

7.      In order to facilitate these exchange transactions, on or about April 6, 2000, Majapara and First Union entered into a First Union Online FX Subscription Agreement ("FX Subscription Agreement"), a copy of which is attached to the Complaint as Exhibit A. Pursuant to this FX Subscription Agreement, Majapara was permitted to execute foreign exchange transactions with First Union electronically through First Union's foreign exchange website. The FX Subscription Agreement was not the parties' exclusive method for entering into foreign exchange transactions.

8.      In 2002, First Union and Wachovia merged.

9.      In some of the foreign exchange transactions between Majapara and Wachovia, Wachovia would deliver currency to Majapara to an account designated by Majapara. On that same day, Majapara would transfer the agreed upon counter-currency into a Majapara account maintained by Wachovia in New York (the "Majapara NY Account"). Upon the opening of the Majapara NY Account, Wachovia's Terms & Conditions For Global Financial Institutions ("Wachovia's Terms & Conditions"), amongst other documents, governed all of the parties'

- 3 -

business relationships and dealings. A copy of Wachovia's Terms & Conditions is annexed hereto as Exhibit A.

10.    Wachovia would then debit the currency from the Majapara NY Account. The authorization for this procedure was documented in a December 10, 2003 letter, in Spanish, from Majapara to Wachovia. A copy of which is attached to the Complaint as Exhibit B. I speak and read Spanish fluently and the note translates as: "In relation to the transactions done with yourselves through Online FX; we authorize you to debit and credit our account number NY2000192304201 held with yourselves."

11.    In or about March 2006, Majapara signed a Debit and Netting Agreement that gave Wachovia the same authority to credit and debit the same Majapara Account. A copy of this document is attached to the Complaint as Exhibit C.

### The Foreign Exchange Transactions At Issue

12.    On or about December 5, 2007, Majapara and Wachovia agreed to do a series of seven (7) transactions, all of which were to be settled on December 7, 2007. Six (6) of those transactions were executed on Wachovia's foreign exchange internet website. One (1) of the transactions was executed through an interface system operated by Reuters to which both Majapara and Wachovia have access. A copy of wire transfer confirmations for each of these transactions is attached to the Complaint as Exhibit D. As detailed on those confirmations, Majapara was to deliver all of the counter-currency (US$) into its Majapara NY Account. Wachovia was to then simply debit that New York account.

13.    Pursuant to the parties' agreement, the seven (7) foreign exchange transactions were to close on December 7, 2007. Accordingly, on December 6, 2007, Wachovia sent 30,300,000 Euros, $112,900.03 and 7,000 Swiss Francs to Majapara's account in Munich,

Germany. Even though they had just entered into the deals the prior day (December 5, 2007),
Majapara did not deliver the agreed upon $38,737,100, 127,000 Swiss Francs and $6,218.90 to
Wachovia, as required, so that the transactions could settle on December 7, 2007.

14.    To date, Majapara has not transferred any amount owed pursuant to these
exchange transactions.

15.    On December 11, 2007, however, as was its right under Wachovia's Terms &
Conditions, Wachovia was able to secure, as an offset to the debt owed, $9,460,000 Majapara
attempted to transfer out of Wachovia to a Majapara account located in Citibank in New York.
Accordingly, the total debt owed by Majapara to Wachovia is reduced based upon this offset.
Wachovia was also able to secure an additional $3,960,155.00 in offset funds against the amount
owed by Majapara. The total debt owed from those transactions is $24,711,845.00.

### Majapara Is Illiquid And Intends to Frustrate Wachovia's Recovery Herein

16.    After Majapara defaulted, my department made contact with Majapara to demand
payment and to get an explanation why it did not pay Wachovia as it was required to do. On
Thursday, December 13, 2007, at approximately 9:52 am Eastern, I spoke by telephone with
Jorge Ortiz, Majapara's Chairman and CEO. I know Mr. Ortiz well and have met with him and
spoken to him many times. I was joined in the telephone call by Juanita Gomez, a Vice
President in my group who is our Mexico representative.

17.    I asked Mr. Ortiz in our call what Majapara did with Wachovia's money. Mr.
Ortiz acknowledged and admitted that Majapara was obligated to provide the agreed upon
currency to Wachovia and owed Wachovia over $30 million. He then stated that Majapara had
received Wachovia's Euros and used them for other purposes because it was experiencing "a
liquidity crisis."

- 5 -

18.     I then asked him if he lent the money to third parties. He said "yes." I said, "That's not legal." He said: "I recognize that we have done something that is not permitted" -- Majapara is a Mexican "Casa de Cambio," a company in the business of currency exchange, such as exchanging Mexican pesos for dollars, and as such, under Mexican law, is not permitted to make loans.

19.     I then asked Mr. Ortiz when Majapara would be able to repay Wachovia. He said that he "needed time to collect the money from others who he had lent Wachovia's money to." He said Majapara "would need two months to collect." Based on this conversation, it is my belief that Majapara engaged in a fraud with respect to the foreign exchange spot transactions Majapara engaged in with Wachovia. Due to its "liquidity crisis," Majapara did not have sufficient funds to complete the exchange with Wachovia and to engage in the other lending or other activities.

20.     Based upon Majapara's recent statements, it knew of its condition prior to the Wachovia transactions closing, but, nonetheless, accepted Wachovia's funds, knowing that it would not have the funds to repay Wachovia at the close. Majapara then used Wachovia's funds to engage in illegal lending transactions and otherwise dissipated the assets received from Wachovia, all the while failing to fulfill its immediate obligations to transfer over $38 million to Wachovia.

21.     Mr. Ortiz told me that if Wachovia took legal action against Majapara, Wachovia would end up with nothing.

### New York Bank Accounts

22.     Being the relationship manager for Majapara, I am aware of a bank account Majapara maintains (or did maintain) at Citibank located in New York City. The account

- 6 -

number is 36254838. I also have a good faith belief that Majapara maintains (or maintained) bank accounts at other banks in New York as well. Those banks are JP Morgan Chase and Bayerische Hypo- und Vereinsbank, AG.

### Undertaking

23.    Wachovia stands ready to secure a bond (or any other acceptable undertaking to the Court) in an amount set by this Court. Wachovia respectfully requests that the amount of any undertaking be set upon identification of the actual amount to be attached and then in a reasonable amount.

24.    No prior application for the relief requested herein has been made to this or any Court

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 13th day of December, 2007.



Carlos A. Perez

ELENA PEREZ CAPIRO
MY COMMISSION # DD 705363
EXPIRES: August 15, 2011
Bonded Thru Notary Public Underwriters

# Exhibit G

Jones, J.

Scott S. McKessy (SM-5479)
Casey D. Laffey (CL-1483)
REED SMITH LLP
599 Lexington Avenue
New York, New York 10022
Tel. (212) 521-5400
Fax. (212) 521-5450
Attorneys for Plaintiff
Wachovia Bank, National Association

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
WACHOVIA BANK, National Association,          :
                                              :
                          Plaintiff,          :     Civil Action No. 07 CV 11230
                                              :
               - against -                    :
                                              :     **DECLARATION**
MAJAPARA CASA DE CAMBIO S.A. de C.V.,         :     **OF SCOTT S. MCKESSY**
                                              :
                          Defendants.         :
-------------------------------------------------------------X

    I, SCOTT S. MCKESSY, hereby declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

<u>Introduction</u>

    1.    I am a member of the law firm of Reed Smith LLP, attorneys for Wachovia Bank, National Association ("Wachovia"), the plaintiff in this action. I submit this Declaration in support of Wachovia's instant application for the award of a pre-judgment attachment and temporary restraints.

    2.    The instant application is being sought on an expedited, *ex parte* basis because of the likelihood that, if notified of the instant application before hand, defendant Majapara Casa De Cambio S.A. de C.V. ("Majapara") will dissipate or transfer the assets which are the subject of this application.

3. As set forth in the accompanying Declaration of Carlos A. Perez dated December 13, 2007, Majapara absconded with over $38 million in currency owed to Wachovia pursuant to certain foreign exchange spot transactions.

4. After learning that Majapara had absconded with Wachovia's funds, Wachovia spoke by telephone with Jorge Ortiz, the Chairman and CEO of Majapara who acknowledged the theft, and informed Wachovia that if it did not give Majapara two months to repay the money and, instead, attempted to collect the debt in litigation, Wachovia would not recover a single dollar.

5. This direct threat to make itself judgment proof and ensure that Wachovia is frustrated in any efforts to collect upon the debt owed presents a substantial risk that if notified of Wachovia's instant application, Majapara will dissipate or remove its remaining assets from the jurisdiction, preventing Wachovia from ever enforcing a judgment in this action.

6. Therefore, for the foregoing reasons, Wachovia respectfully requests that its application for the award of a pre-judgment attachment and temporary restraints be heard on an expedited, *ex parte* basis, without prior notice given to Majapara. Executed this 13th day of December, 2007.

_____
SCOTT S. MCKESSY

2

# Exhibit H

JUDGE JONES
Scott S. McKessy (SM-5479)
Casey D. Laffey (CL-1483)
REED SMITH LLP
599 Lexington Avenue
New York, New York 10022
Tel. (212) 521-5400
Fax. (212) 521-5450
Attorneys for Plaintiff
Wachovia Bank, National Association

*Jones*

## 07 CV 11230

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

WACHOVIA BANK, National Association,          :

                  Plaintiff,          :

      - against -          :

MAJAPARA CASA DE CAMBIO S.A. de C.V.,          :

                Defendants.          :

-------------------------------------------------------------X

Civil Action No. ____

**ORDER TO SHOW CAUSE**

       Upon reading and filing the Declaration of Carlos A. Perez, dated December 13,

2007, the Declaration of Scott S. McKessy, dated December 13, 2007, and the exhibits

annexed thereto, the accompanying Memorandum of Law, the Complaint dated

December 14, 2007, and all the prior pleadings and proceedings had herein, and there

having been no prior motion for the relief requested herein; it is hereby

       **ORDERED**, that defendant Majapara Casa De Cambio S.A. de C.V.

("Majapara") show cause before this Court, in Courtroom _18B_ at the United States

Courthouse, 500 Pearl Street, New York, New York 10007, on the _21st_ day of

December, 2007, at _10:00_ _am_, why an Order of attachment should not be entered in this

action, pursuant to Fed. R. Civ. P. 64, directing the United States Marshal, or other

appropriate Federal or State Law Enforcement Agent, to levy within his or her

jurisdiction upon such property in which Majapara has an interest and upon such debts

owing to Majapara as will satisfy $24,711,845.00, plus interest, costs, and the Marshal's

fees and expenses, including but not limited to, the monies being maintained and to be

maintained at the following bank accounts:

> Citibank, N.A.
> 399 Park Avenue
> New York, NY 10043
> (account number 36254838)
>
> JP Morgan Chase Bank, N.A.
> 270 Park Avenue
> New York, NY 10017
> (account number unknown)
>
> Bayerische Hypo- und Vereinsbank, AG
> 150 East 42nd St.
> New York, NY 10017
> (account number unknown)

along with such other and further relief as the Court may deem just, proper, or equitable.

**IT IS FURTHER ORDERED THAT,** pending the hearing and determination of

this motion, Majapara, shall be and hereby is enjoined and restrained from transferring,

selling, pledging, assigning or otherwise disposing of any of its assets.

**IT IS FURTHER ORDERED THAT,** Majapara shall produce a detailed list of

the aforementioned assets and debts, including a description and location of each asset

and debt owed to it, to plaintiff's counsel no later than three (3) business days after

service of this Order upon Majapara as set forth below.

**IT IS FURTHER ORDERED THAT,** pursuant to Fed. R. Civ. P. 64 and CPLR

§ 6212(b), Plaintiff shall be required to post a bond, security or undertaking in the

amount of $ *1,000,000.* within *7* days of execution of this Order.

*(one million dollars)*

**IT IS FURTHER ORDERED THAT**, service of a copy of this Order along with all the supporting papers via overnight mail and certified mail upon Majapara at its office located at Grecia No. 64, Colonia San Alvaro, Mexico City, C.P. 02090, Mexico, on or before December 15, 2007, be deemed good and sufficient service thereof.

**IT IS FURTHER ORDERED THAT**, Majapara shall serve answering papers, if any, so as to be received by plaintiff's counsel, Reed Smith LLP, 599 Lexington Avenue, New York, New York 10022, Attention: Scott S. McKessy, Esq. on or before December 18, 2007, by 3:00 p.m.

**IT IS FURTHER ORDERED THAT**, Plaintiff shall serve reply papers, if any, on or before December 19, 2007 by 5:00 pm upon Majapara.

Dated: New York, New York
   December 14, 2007

ISSUED: _____

SO ORDERED:

_____
United States District Judge

# Exhibit I

Scott S. McKessy (SM-5479)
Casey Laffey (CL-1483)
Reed Smith LLP
599 Lexington Avenue
New York, New York 10022
Tel. (212) 521-5400
Fax. (212) 521-5450

Attorneys for Plaintiff Wachovia Bank, National Association

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                      :

WACHOVIA BANK, NATIONAL ASSOCIATION,     :      07 Civ. 11230 (BSJ)(RLE)

               Plaintiff,      :

     - against -             :      **ORDER OF**
                                     :      **ATTACHMENT**

CASA DE CAMBIO MAJAPARA S.A. de C.V. a/k/a   :
MAJAPARA CASA DE CAMBIO S.A. de C.V.,     :

              Defendant.      :
                                     :
------------------------------------------------------------------------X

    Plaintiff Wachovia Bank, National Association ("Wachovia") having moved, by

Order to Show Cause dated December 14, 2007, and Order to Show Cause dated

December 17, 2007, pursuant to Fed. R. Civ. P. 64, and those motions having come on to

be heard and considered by the Court,

    Now, upon the reading and filing of the Summons and Complaint dated

December 14, 2007, the Amended Summons and Amended Complaint dated December

17, 2007, the Declaration of Carlos A. Perez dated December 13, 2007, the Declaration

of Scott S. McKessy dated December 13, 2007, the Declaration of Carlos A. Perez dated

December 16, 2007, the Declaration of Scott S. McKessy dated December 17, 2007,

along with all exhibits annexed thereto, the accompanying Memorandum of Law dated

December 13, 2007, and the motion having come on to be heard on December 21, 2007,

and due deliberation having been had, and

It appearing from the Amended Complaint and Declarations submitted by

Wachovia that Wachovia has a cause of action for a money judgment against defendant

Casa De Cambio Majapara S.A. de C.V. a/k/a Majapara Casa de Cambio S.A. de C.V.

("Majapara") for $24,810,975.00 with interest from December 7, 2007, and that it is

probable that Wachovia will succeed on the merits and recover that sum from Majapara

exceeding all counterclaims of which Wachovia is aware, and it is further appearing that

Wachovia is entitled to an order of attachment against the property of Majapara on the

grounds that: (a) Majapara is a non-domiciliary foreign corporation not qualified to do

business in the state under CPLR § 6201(1); and (b) Majapara intends to remove assets

from Wachovia's reach with the intention of frustrating the enforcement of an eventual

judgment in favor of Wachovia under CPLR § 6201(3); and that the amount to be secured

by this order of attachment, including any interest, costs, and fees and expenses to be paid

to the United States Marshal, or other appropriate Federal or State Law Enforcement

Agent, totals $ ~~at least~~ 24,810,975 , and that Wachovia has furnished the undertaking

required by law.

Now, on motion of Wachovia, it is hereby,

**ORDERED** that Wachovia's motions, dated December 14, 2007 and December

17, 2007, are granted, and it is further

**ORDERED** that Wachovia's undertaking is fixed in the sum of $1,000,000.00,

which all or part may be paid to Majapara for costs and damages, including reasonable

attorney's fees, that Majapara may sustain by reason of the attachment if Majapara

recovers judgment or it is finally decided that Wachovia was not entitled to an attachment

of Majapara's property, and the balance of the undertaking is conditioned upon

Wachovia's payment to the United States Marshal, or other appropriate Federal or State

Law Enforcement Agent, all of his/her allowable fees, and it is further

    **ORDERED** that the United States Marshal, or other appropriate Federal or State

*or by a licensed process server as retained by plaintiff's counsel*

Law Enforcement Agent, shall levy within his/her jurisdiction, at any time before final

judgment, upon such property in which Majapara has an interest and upon such debts

owing to Majapara as will satisfy's $ *at least* 24,810,975.00 the amount of Wachovia's

demand, together with probable interest, costs, and the fees owed to the United States

Marshal, or other appropriate Federal or State Law Enforcement Agent; including but not

limited to, the monies being maintained and to be maintained at the following banks:

> Citibank, N.A.
> 399 Park Avenue
> New York, NY 10043
> (account number 36254838)
>
> JP Morgan Chase Bank, N.A.
> 270 Park Avenue
> New York, NY 10017
> (account number unknown)
>
> Bayerische Hypo- und Vereinsbank, AG
> 150 East 42nd St.
> New York, NY 10017
> (account number unknown)
>
> Deutsche Bank
> 60 Wall Street
> New York, NY 10005
> (account number unknown)
>
> Standard Chartered Bank
> One Madison Avenue
> New York, NY 10010
> (account number unknown)

and it is further,

*but not less than*

**ORDERED** that pending the levy and seizure of an amount equal to λ

$24,810,975. by the United States Marshal, or other appropriate Federal or State

Law Enforcement Agent, Majapara shall be and hereby is enjoined and restrained from

transferring, selling, pledging, assigning or otherwise disposing of any of its assets.

**IT IS FURTHER ORDERED THAT**, service of a copy of this Order via

overnight mail and registered mail upon Majapara at its office located at Grecia No. 64,

Colonia San Alvaro, Mexico City, C.P. 02090, Mexico, on or before December 21 2007,

be deemed good and sufficient service thereof.

Dated: New York, New York
       December 20 2007

SO ORDERED:

_____
United States District Judge

# Exhibit J

Order Attachment Returnable    (This form replaces CCM 24, CCMD 24 and CCL 27)    (Rev. 1/2/01) CCG 0024

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Wachovia Bank, National Association

**Plaintiff**

vs.

Majapara Casa De Cambio S.A. de C.V.

**Defendant**

Harris N.A.

**Garnishee***

No. 07 L 13958

Amount Claimed $ 24,711,845.00

Return Date January 11, 2008
(December 18, 2007 as to
Garnishee Harris N.A.'s
interrogatory answers)

### ORDER FOR ATTACHMENT AND SUMMONS

The Plaintiff Wachovia Bank, National Association                    having established by complaint and affidavit a prima facie case that the Defendant Majapara Casa De Cambio S.A. de C.V.

is justly indebted to the Plaintiff Wachovia Bank, National Association                    in the amount of

24,711,845                    Dollars xxx    and Cents and that Defendant (1) is not a resident

of this State and (2) either (a) within the two years preceding the filing of Plaintiff's affidavit has fraudulently

concealed or disposed of its property so as to hinder or delay its creditors, or (continued on page 2)

(Here State the Grounds of Attachment Relied Upon in the Affidavit)

and the Plaintiff having given bond and security, according to law: IT IS ORDERED that the Sheriff of Cook County attach so much of the estate, real or personal of the defendant as may be found in your county, as shall be of value sufficient to satisfy the debt and costs, according to the affidavit, but in case any specific property of the defendant found in your county shall be described herein, then you shall attach the described property only, and no other property, the said specified property to be so attached, being described as follows:

Any and all bank accounts or other property of any kind upon which Majapara Casa de Cambio S.A. de C.V. has an

interest that is held at, maintained by, or in the custody or possession of Harris N.A. (d/b/a  Harris Bank), including

but not limited to Account Number 2004919, up to a total aggregate amount of $12.5 million (US$)

and such estate attached in your possession to secure, or to provide that the same may be liable to further proceedings according to law; and that you summon the defendant to either appear in person or through his/her attorney and cause an appearance and answer

to be filed in said cause in Room 801     Richard J. Daley Center, Chicago                    , Illinois
                                              (Location)

on or before January 11                    , 2008     or at his/her option, to appear at any time prior thereto and move the

court to set a hearing on this Order for Attachment or affidavit, and that you also summon  Harris N.A.

                    as garnishees*, requiring them to file with the clerk of the court at Room 801    .

Richard J. Daley Center, Chicago, Ilinois                                   at 9:30 A.M.
                              (Location)

on December 18                    , 2007    , or before that time their answers in writing to the interrogatories, submitted.
                                                (continued on page 2)

Atty. No.: 43456                                    ENTER:

Name: Barry Rosen, Reed Smith LLP

Atty. for: Plaintiff

Address: 10 S. Wacker Dr., Suite 4000                    _____
                                                        Judge

City/State/Zip: Chicago, IL  60606-7507

Telephone: 312-207-1000                                 735 ILCS 5/4-110.

*Strike out portions not applicable.

### NOTICE TO SHERIFF

Service upon the defendant shall be made as soon as possible after entry of this Order for Attachment upon the property described herein, but in no event later than five days thereafter.

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

WACHOVIA BANK,
NATIONAL ASSOCIATION,                         )
                                              )
            Plaintiff,                         )
                                              )        Case No. 07 L 13958
      v.                                       )
                                              )
MAJAPARA CASA DE CAMBIO S.A. de C.V.,          )
                                              )
            Defendant.                         )
                                              )
HARRIS N.A.,                                   )
                                              )
            Garnishee.                         )

### ORDER FOR ATTACHMENT AND SUMMONS (con't)

(b) is about fraudulently to conceal, assign, or otherwise dispose of his or her property or effects,
so as to hinder or delay his or her creditors.

Harris N.A. shall serve counsel for Plaintiff with its interrogatory answer by hand delivery on or
before December 18, 2007.

Service of this Order for Attachment and Summons along with the supporting papers via
overnight mail and registered mail upon Majapara Casa De Cambio S.A. de C.V. at its office
located at Grecia No. 64, Colonia San Alvaro, Mexico City, C.P. 02090, Mexico, to be deposited
to the overnight carrier and in the mail on or before December 17, 2007, shall be deemed good
and sufficient service thereof.

DEC 14 2007