UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

WACHOVIA BANK, N.A.,                )
                                    )
        Plaintiff,                  )
                                    )   No. 07 Civ. 11230 (BSJ)(RLE)
    v.                              )
                                    )
CASA de CAMBIO                      )
MAJAPARA S.A. de C.V. a/k/a         )
MAJAPARA CASA DE CAMBIO             )
S.A. de C.V..                       )
                                    )
        Defendant.                  )
_____)


**REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION OF CASA de CAMBIO MAJAPARA TO VACATE ORDER OF ATTACHMENT AND INCREASE UNDERTAKING/BOND OF WACHOVIA**

               TANNENBAUM HELPERN
               SYRACUSE & HIRSCHTRITT LLP
                 900 Third Avenue
                 New York, NY 10022
                 Tel: (212) 508-6743


             SPERLING & SLATER, P.C.
                 55 West Monroe Street, Suite 3300
                 Chicago, Illinois 60603
                 Tel:  (312) 641-3200


             *Attorneys for Casa de Cambio*
             *Majapara S. A. de C.V.*

# TABLE OF CONTENTS

Table of Authorities ................................................................................................................. ii

Introduction ..............................................................................................................................1

Argument .................................................................................................................................1

I. Wachovia Does Not Dispute that It Failed to Disclose
Certain Facts to the Court .............................................................................................1

    A. Wachovia Does Not Dispute that it Terminated Its
Business Relationship with Majapara on December 5,
After Majapara Placed its FX Orders for the Day ...........................................2

    B. Wachovia Does Not Dispute That Majapara Paid
Almost $80 Million To Wachovia At the Very Time
Wachovia Alleges Majapara Intended to Defraud It .......................................3

II. Wachovia Does Not Dispute That After December 5th Majapara Continued to
Allow Millions of Dollars To Be Deposited Into Its Account at Wachovia .................4

III. The Record is Devoid of Any Evidence That Wachovia Sought Its
Injunction Pursuant to CPLR§ 6210 .............................................................................5

IV. The Orders Are Now Invalid for Failure to Serve Under CPLR § 6213 ......................6

V. The Record is Devoid of Any Evidence of the Sufficiency of the One Million
Dollar Bond ...................................................................................................................6

Conclusion ................................................................................................................................7

## TABLE OF AUTHORITIES

**Cases**                                                                              **Page**

*Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.,*
    527 U.S. 308 (1999) .................................................................................................... 5

**Statutes**

Civil Practice Law & Rules,
    CPLR § 6210 ................................................................................................... *passim*

    CPLR § 6213 ............................................................................................................ 6

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WACHOVIA BANK, N.A., | ) |
| | ) |
| Plaintiff, | ) |
| | )   No. 07 Civ. 11230 (BSJ)(RLE) |
| v. | ) |
| | ) |
| CASA de CAMBIO | ) |
| MAJAPARA S.A. de C.V., | ) |
| | ) |
| Defendant. | ) |

**REPLY MEMORANDUM IN SUPPORT OF MAJAPARA MOTION
TO VACATE ORDER OF ATTACHMENT AND
INCREASE UNDERTAKING/BOND OF WACHOVIA**

Wachovia now admits two important facts that it failed to disclose to the Court in seeking *ex parte* prejudgment relief: that Wachovia terminated its correspondent banking relationship with Majapara after Majapara had placed the orders for the foreign exchange spot ("FX") transactions at issue; and that Majapara paid almost $80 million to Wachovia on the same day and day after those FX transactions. These facts are clearly material to the primary grounds upon which Wachovia sought *ex parte* prejudgment relief: that Majapara placed orders with Wachovia for FX transactions with no intention of paying for those transactions; and that Majapara was likely to secrete assets from Wachovia. Because the Court expressly entered these Orders in reliance upon the half-truths and materially false and misleading representations contained in Wachovia's submissions, the Orders were wrongfully obtained and should be vacated.

I.  Wachovia Does Not Dispute that It Failed to Disclose Facts About Its Relationship with Majapara to the Court

Wachovia obtained *ex parte* relief from this Court by making two key representations to the Court. The first was that Majapara placed the December 5 FX transaction orders intending to

defraud Wachovia.  The second was that Majapara was likely to abscond with funds in order to avoid paying Wachovia.  Now, Wachovia admits that it did not disclose two facts to the Court material to those representations:  that Wachovia terminated its correspondent banking relationship with Majapara on December 5, *after* Majapara placed the FX transaction orders at issue; and that Majapara paid to Wachovia almost $80 million dollars on December 5 and 6 – *the day of and the day after* Wachovia claims Majapara had formed its intent to defraud Wachovia.

Wachovia justifies these omissions solely on the ground that these facts are totally unrelated to the December 5 FX transactions.  *See* Opposition Memorandum of Law at 6.  This argument is hardly a defensible  position given that Wachovia considered the history of its relationship with Majapara important enough to set it out in detail in the sworn declaration of Carlos Perez (12/13/2007 Declaration of Carlos Perez ¶¶ 5-11) and at the beginning of its Complaint (Cmplt. ¶¶ 7-10).  Certainly other events and transactions taking place between the same parties on the same days would be material to that relationship.  This argument is also indefensible given that Wachovia itself has said this case is about "a trust that was established through years of currency trading with Wachovia."  *See* Cmplt. ¶ 1.  Again, the events taking place between the same parties on the same days are more material to determining whether there has been any abuse of trust, as alleged by Wachovia, than events taking place years ago.

      A.    Wachovia Does Not Dispute that It Terminated Its Business Relationship with <u>Majapara After Majapara Placed the FX Orders</u>

Wachovia does not dispute that on December 14 it failed to inform this Court that it had terminated its correspondent banking relationship with Majapara late in the day on December 5, 2007.  Wachovia's Carlos Perez now admits in a subsequent declaration that he delivered a letter to Majapara in person late in the day on December 5, 2007 in which Wachovia informed Majapara that it was terminating its correspondent banking relationship with Majapara.  2/12/08

Carlos Perez Declaration ¶ 11. That letter is attached as Exhibit B to Majapara's January 22, 2008 memorandum of law seeking to vacate the order of attachment. There is no mention of this letter or the termination in any of the December 2007 submissions the Court.

The fact that Wachovia terminated Majapara on December 5 is material to assessing the validity of Wachovia's allegations that Majapara intended to defraud Wachovia. In paragraph 46 of Wachovia's Amended Complaint, Wachovia alleges the following:

> Upon information and belief, at the time of the transaction, Majapara knew it would not deliver the required currency and was acting under a *present intent* to deceive Wachovia and absconded with its funds.

(emphasis added.) The fact that Wachovia abruptly terminated Majapara's operating facilities without notice and for reasons unrelated to Majapara is relevant to determining whether Majapara had a "present intent to deceive Wachovia" and whether "at the time of the transaction, Majapara knew it would not deliver the required currency." Had Wachovia disclosed the facts concerning the December 5 termination of its correspondent banking relationship with Majapara, the Court would have had information before it contradicting Wachovia's allegations that Majapara had engaged in fraud.

    B.    Wachovia Does Not Dispute That Majapara Paid Almost $80 Million To Wachovia At the Very Time Wachovia Alleges Majapara Intended to Defraud It

Wachovia does not dispute that on December 5 and 6 Majapara paid to Wachovia close to $80 million. *See* Opposition Memorandum of Law at 5-6; Declaration of Miguel Meza Rousseau, attached as Exhibit A to Memorandum of Law in Support of Motion of Casa de Cambio Majapara to Vacate Order of Attachment and Increase Undertaking/Bond of Wachovia ("Motion to Vacate"). It is undisputed that Majapara paid to Wachovia almost $40 million on December 5th – the very day that Wachovia claims Majapara had a "present intent to deceive Wachovia." (Am. Cmplt. ¶ 46.) And, it is undisputed that Majapara paid to Wachovia another

almost $40 million on December 6th – the day after Wachovia accuses Majapara of having this present intent to deceive Wachovia and defraud it of $38 million.

Wachovia's response to these undisputed facts is that these payments of $80 million are not material. Wachovia states that they are merely "documents that have nothing to do with the instant action" (Opposition Memorandum of Law at 2), and that these payments relate to FX transactions "totally unrelated to the ones underlying Wachovia's claims herein" (Opposition Memorandum of Law at 6). Wachovia does not explain how payments of $80 million made to Wachovia by Majapara could be immaterial to the Court in assessing the validity of Wachovia's accusation that Majapara was at that very time engaged in fraud. Had the Court known of these contemporaneous payments *to* Wachovia, the Court would have had good reason to doubt Wachovia's claim that Majapara had a "present intent" on December 5th to defraud Wachovia.

II.   Wachovia Does Not Dispute That After December 5th Majapara Continued to Allow Millions of Dollars To Be Deposited Into Its Account at Wachovia

Wachovia has now submitted evidence to the Court that over $175 million was deposited *into* Majapara's accounts at Wachovia between December 5 and December 31, 2007. *See* Exhibit K of Plaintiff's Compendium of Exhibits in Opposition to Defendant's Motion to Vacate the Court's Prejudgment Order of Attachment. This amount dwarfs the $38 million December 5 FX transactions. Wachovia's Exhibit K also demonstrates that over $58 million of the $175 million total was deposited into Majapara's accounts at Wachovia between December 17 and December 31. This evidence submitted by Wachovia undermines Wachovia's claim that Majapara intended to defraud Wachovia.

III.  The Record is Devoid of Any Evidence That Wachovia Sought Its Injunction Pursuant to CPLR § 6210

Wachovia cites nothing indicating that in December 2007 it intended to seek, and informed the Court it was seeking, an injunction under CPLR § 6210. Wachovia's December 14 Memorandum of Law seeking *ex parte* prejudgment relief does not notify the Court that it is seeking an injunction pursuant to CPLR § 6210. The December 14 Order to Show Cause does not state that the injunction is entered pursuant to CPLR § 6210.[1]

Now, in order to avoid the holding of *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.,* 527 U.S. 308 (1999), Wachovia argues that it was, in fact, seeking an injunction pursuant to CPLR § 6210. If Wachovia had been asking the Court to enter an injunction on the basis of CPLR § 6210, it should have disclosed that fact to the Court at the time so the Court could ensure that Wachovia met the requirements set forth in that section. Moreover, Wachovia cites nothing indicating that it would have been able to obtain a prejudgment injunction solely on the basis of CPLR § 6201(1).

Even if Wachovia had sought the December 14 temporary restraining order on the basis of CPLR § 6210, the plain language of the statute fails to authorize such relief against Majapara – a defendant. The statute expressly authorizes a TRO against a garnishee, but not a defendant. Had Wachovia really sought the TRO on the basis of this statute, it is highly likely that Wachovia would have addressed this issue in its moving papers, and not months later in its Opposition brief.

Finally, Wachovia makes no argument that CPLR § 6210 could serve as a basis for the injunction provision in the Court's December 20 Order of Attachment. Wachovia's basis for the injunction on December 14 and December 20 was exactly the same – no additional brief or

---

[1] There is no transcript available of the December 14, 2007 proceedings in this case.

material was submitted to the Court. Again, all available evidence indicates that Wachovia sought the injunction on both those dates pursuant to the Court's equitable powers. As set forth in Majapara's Motion to Vacate, under *Grupo Mexicano*, the Court lacked the power to enter the injunctive provisions in the Orders. *See* Motion to Vacate at pp. 11-12.

IV. <u>The Orders Are Now Invalid for Failure to Serve Under CPLR § 6213</u>

Even if the Court determines that the Orders were valid when entered, under CPLR § 6213, the Orders are now invalid because Wachovia has failed to properly serve Majapara with the summons and complaint in this case. Under that statute, Wachovia was required to have completed service of process on Majapara with the summons and complaint within 60 days of the issuance of the order of attachment -- by February 18. Wachovia has not yet served Majapara with the summons and complaint and has not -- and now cannot -- seek an extension of the time to do so under CPLR § 6213.

V. <u>The Record is Devoid of Any Evidence of the Sufficiency of the One Million Dollar Bond</u>

Wachovia now contends that one million dollars is an appropriate amount for a bond in this case, despite having failed to present ***any*** evidence to the Court supporting a bond of this, or any, amount. Nothing in any of Wachovia's December 2007 submissions to this Court provides any support for a bond in the amount of one million dollars. Nor is there anything in the December 14 and 20 Orders justifying a bond in the amount of one million dollars. There was no discussion of the amount of the bond at the December 20, 2007 show cause hearing and, as there is no transcript of the December 14 proceedings, there is no record of evidence being presented at that time. Simply put, there is no evidence that Wachovia ever presented any evidence to support its claim that a bond of one million dollars is proper in this case.

Thus, Majapara requests that the Court require Wachovia to post a bond in an amount sufficient to cover Majapara's damages in the event the December 14 and 20 Orders are found to have been wrongfully entered.  In light of the fact that Wachovia's actions have caused Majapara to cease operating as a business, the bond should be increased substantially, as set forth in Majapara's Motion to Vacate at 13-15.

### Conclusion

For the reasons set forth above, Majapara requests that the Court vacate the Orders entered on December 14 and 20, 2007 and for such other and further relief as the Court deems just and proper.

Dated: New York, New York
       February 27, 2008

> TANNENBAUM HELPERN SYRACUSE & HIRSCHTRITT LLP
>
> By:    /s/ Vincent J. Syracuse
>
> Vincent J. Syracuse
> David A. Pellegrino
> George F. du Pont
> Tannenbaum Helpern Syracuse & Hirschtritt LLP
> 900 Third Avenue
> New York, NY 10022
> Tel: (212) 508-6743
> Fax: (212) 202-7516

Of Counsel:
Celiza P. Bragança
(*pro hac vice* motion to be made at hearing)
SPERLING & SLATER, P.C.
55 West Monroe Street, Suite 3300
Chicago, Illinois 60603
Tel:  (312) 641-3200
Fax:  (312) 641-6492