ROSNER NOCERA & RAGONE, LLP
110 Wall Street, 23rd Floor
New York, New York 10005
(212) 635-2244
Special Counsel for Plaintiff
Wachovia Bank, National Association

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
WACHOVIA BANK, NATIONAL ASSOCIATION      07 Civ. 11230 (BSJ) (RLE)

                              Plaintiff,

    -against-

CASA DE CAMBIO MAJAPARA S.A. de C.V.
a/k/a MAJAPARA CASA DE CAMBIO S.A.
de C.V.,
                            Defendant.
------------------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR JUDGMENT AGAINST
<u>NON-PARTY GARNISHEE CITIBANK, N.A.</u>**


**Of Counsel:**
    John A. Nocera
    Peter A. Ragone
    John P. Foudy

**PRELIMINARY STATEMENT**

This Memorandum of Law is respectfully submitted by plaintiff Wachovia Bank, National Association (hereinafter "Wachovia" or "plaintiff") in support of its instant motion for an Order pursuant to Fed.R.Civ.P. 64 and New York's CPLR § 6214(d) for judgment against non-party garnishee Citibank, N.A., ("Citibank") due to Citibank's failure to comply with an Order of Attachment entered in this action and for Citibank's wrongful release of property subject to the Order of Attachment.

**STATEMENT OF FACTS**

The Court is respectfully referred to the accompanying affidavit of Wachovia by Carlos A. Perez, sworn to the 19th day of March, 2008, along with the exhibits to the above for a full rendition of the facts necessary for the adjudication of this motion

A summary of the pertinent facts is as follows:

On December 14, 2007, Wachovia commenced this case to recover a money judgment against defendant Majapara Casa De Cambio S.A. de C.V. ("Majapara") in the amount of $24,810,975, plus interest from December 7, 2007.

At the commencement of this case, Wachovia moved this Court by order to show cause for an Order of Attachment against the property of Majapara and debts owed to Majapara pursuant to N.Y. CPLR § 6201(1) and 6201(3), applicable herein pursuant to Fed.R.Civ.P. 64.[1]

---

[1] On December 14, 2007, this Court entered a Temporary Restraining Order ("TRO") against Majapara, which was amended by Order entered December 17, 2007. The TRO only applied to restrain Majapara, not garnishees such as Citibank. While no claim herein is made against Citibank relating to the TRO, copies of the TRO and Decemeber 17, 2007 Order were also served on Citibank on those dates.

On December 20, 2007, this Court granted Wachovia's Order to Show Cause, and an Order of Attachment was entered in favor of Wachovia against the assets of Majapara in the amount of $24,810,975. (Exhibit "3").

On December 21, 2007, the Order of Attachment was duly served and levied by personal service upon Citibank at 9:55 a.m. at 399 Park Avenue, New York, NY, by a licensed private process server employed by Wachovia's counsel. The Order of Attachment expressly provided that the Order could be served by a "licensed process server as retained by plaintiff's counsel". (See, Affidavit of Service, Exhibit "4").

As described below, on the day that the Order of Attachment was served on Citibank, Citibank acknowledged that funds totalling at least $1,843,715.44 were then on deposit in Majapara's account No. 36254838 at Citibank (the "Majapara Account"). The Majapara Account was specifically identified in the Order of Attachment.

Also on December 21, 2007 at 12:25 p.m., Wachovia's counsel served its First Set of Interrogatories on the third-party garnishee, Citibank ("Interrogatories").

By letter dated January 4, 2008, Citibank responded to the Interrogatories. (Exhibit "7"). Citibank's response included a list showing the daily balances in the Majapara Account for each day from December 14, 2007 to January 2, 2008. On December 21, 2007, the day the Order of Attachment was levied and served on Citibank, the Citibank Interrogatory Response reflected a "daily adjusted available balance" of $1,843,715.44 in the Majapara account. Following December 21, 2007, Citibank allowed the balance in the Majapara Account to decline periodically via

transfers out of the Majapara Account, until only $2,453.39 remained in the Majapara Account on January 4, 2008.

Citibank also provided Wachovia with a "transfer activity report" which provided a listing of the debit and credit transactions in the Majapara Account from December 22, 2007 through December 31, 2007. (Exhibit "8"). A listing of credits (transfers in or deposits) to the Majapara Account on such dates is as follows:

Balance in Majapara Account on 12/21 through 12/23/07 per Citibank, NA's 1/4/08 Answers to Interrogatories:

$1,843,715.44

Subsequent credits per 12/03/07 thru 12/31/07 "Transfer Activity" report:

| Date | Amount |
|---|---|
| 12/22/2007 | |
| 12/23/2007 | |
| 12/24/2007 | $561,778.36 |
| 12/25/2007 | |
| 12/26/2007 | $11,500.90 |
| 12/27/2007 | $116,156.87 |
| 12/28/2007 | $9,859.49 |
| 12/29/2007 | $31,940.50 |
| 12/30/2007 | |
| 12/31/2007 | $31,940.50 |
| | $763,176.62 |

Total:   $2,606,892.06

1/4/08 Account Balance ($2,453.39)

Amount Released by Citibank:  $2,604,438.87

Based upon Citibank's own answers to Wachovia's Interrogatories, funds totalling $2,604,438.87 were released, paid, or transferred out of the Majapara Account after service and levy of the Order of Attachment, until a balance of only $2,453.39

remained on deposit in such account as of January 4, 2008. Wachovia therefore has been damaged and seeks judgment against Citibank for the "daily adjusted available balance" of $1,843,718.44 on deposit in the Majapara Account on December 21, 2007, plus the $763,176.62 in aggregate credits to the Majapara Account from December 24, 2007 through December 31, 2007, less the $2,453.39 balance reported as of January 4, 2008, or $2,604,438.87.

No relief is sought herein against Majapara, which filed on March 5, 2008, a Voluntary Petition for Relief under Chapter 11 of the United States Bankruptcy Code with the United States Bankruptcy Court for the Northern District of Illinois, under docket No. 08-05230.

By this motion, Wachovia only seeks judgment against non-party garnishee Citibank for Citibank's own and separate liability as a garnishee due to Citibank's failure, prior to the Majapara bankruptcy, to restrain and honor the Order of Attachment as to those funds which were on deposit and came into the Majapara between December 21 and December 31, 2007. Wachovia presently seeks no relief against the $2,453.39 which Citibank represented as the January 4, 2008 balance in the Majapara Account. As set forth in Point II, infra, the automatic stay of Majapara's bankruptcy does not extend to or prevent Wachovia's application herein against Citibank.

# POINT I
# WACHOVIA IS ENTITLED TO JUDGMENT AGAINST NON-PARTY GARNISHEE CITIBANK, N.A. AS A MATTER OF LAW

This motion is brought in order to secure judgment against non-party garnishee Citibank for its wrongful release of funds in the Majapara Account which were subject to the Order of Attachment issued in this case.

**a.   Wachovia's Remedy Under Federal Procedure Is Via A Motion To Enter Judgment Against Citibank As Garnishee.**

Fed.R.Civ.P. ("FRCP") 64, as amended effective December 1, 2007, provides as follows:

> Rule 64. Seizing a Person or Property
>
> **(a) Remedies Under State Law — In General.**
>
> At the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment. But a federal statute governs to the extent it applies.

Pursuant to FRCP 64, this Court entered an Order of Attachment in favor of Wachovia pursuant to Article 62 of New York's Civil Practice Law and Rules (CPLR). The Order of Attachment was then duly levied by personal service upon garnishee Citibank in the manner provided in the Order.

Following levy and service of the Order of Attachment, however, Citibank failed to honor the Order of Attachment by allowing funds totaling $2,604,438.87 to be released, paid or transferred out of the Majapara Account.

With respect to Wachovia's remedy against non-party garnishee Citibank, CPLR 6214(d) provides, in pertinent part, as follows:

> <u>Where property or debts have been levied upon by service of an order of attachment</u>, the plaintiff may commence a special proceeding against the garnishee served with the order to compel the payment, delivery or transfer to the sheriff of such property or debts, <u>or to secure a judgment against the garnishee</u>. Notice of petition shall also be served upon the parties to the action and the sheriff. A garnishee may interpose any defense or counterclaim which he might have interposed against the defendant if sued by him. The court may permit any adverse claimant to intervene in the proceeding and may determine his rights in accordance with section 6221.

(emphasis added).

This application is properly brought by notice of motion rather than by a special proceeding. While attachment in the federal courts is available in the manner provided by New York law, procedure in this case is governed by the Federal Rules of Civil Procedure.

> The Federal Rules do not contemplate a separate proceeding against garnishees... The purpose of the [CPLR Section 6214] special proceeding is to give the garnishee notice and to allow him to interpose any defense or counterclaim which he might have interposed against the defendant if sued by him. CPLR § 6214(d). In federal courts actions such as the turnover funds are accomplished by notice of motion. Where plaintiff/movant notices the garnishee in addition to the attorney for the defendant, the garnishee has the notice and opportunity to raise defenses and counterclaims that CPLR § 6214(d) provides for him. <u>Thus the federal motion practice, procedurally and substantively, take the place of the special proceeding</u>."

<u>Foreign Exchange Trade Associates, Inc. v. Oncetur, S.A.</u>, 591 F.Supp. 1496, 1501 (SDNY

1984) (emphasis added).  See also, New England Merchants Nat. Bank v. Iran Power Generation and Transmission Co., 495 F.Supp. 73 77 (SDNY 1980) ( holding that "Rule 64 expressly provides that the Federal Rules of Civil Procedure shall govern the commencement of the action").

b.  **Citibank is liable to Wachovia for the Property of Majapara Held at Citibank at the Time the Order of Attachment was Served and Levied Upon Garnishee Citibank.**

Pursuant to CPLR § 6214, applicable herein under FRCP 64, once an Order of Attachment is granted, a plaintiff, such as Wachovia, can enforce same by "levy upon personal property by service of the order" (CPLR § 6214). Specifically, CPLR 6214(a) provides that

> (a) Method of levy, The sheriff shall levy upon any interest of the defendant in personal property, or upon any debt owed to the defendant, by serving a copy of the order of attachment upon the garnishee, or upon the defendant if property to be levied upon is in the defendant's possession or custody, in the same manner as a summons…

(emphasis added).

Once an Order of Attachment has been served, CPLR § 6214(b) provides that "the garnishee is forbidden to make or suffer any sale, assignment or transfer of, interference with any such property, or pay over or otherwise dispose of any such debt…".  Accordingly, once Citibank was served with the Order of Attachment, it could not allow any transfer or withdrawal of funds from the Majapara Account.

Prior to filing this motion, Citibank had voiced some concern to Wachovia that the Order of Attachment was not served by the Sheriff, as is usually done in state court

proceedings. Rather, pursuant to the express terms of this Order of Attachment, service was made by a licensed process server retained by Wachovia's counsel, since this Court specifically ordered and allowed that service could be made by a licensed process server, rather than by a Sheriff or U.S. Marshal. (Exhibit "3"). In this regard, FRCP 64 provides that while a state attachment remedy may be utilized, "a federal statute governs to the extent it applies."

The United States District Court for the Eastern District of New York considered this issue in <u>Heritage House Frame and Moulding Co. Inc. v. Boyce Highlands Furniture Co., Inc,</u> 88 F.R.D. 172 (EDNY 1988), where the Court observed that the Federal Rules of Civil Procedure concerning service take precedence over state court rules, and upheld an order directing that a specific individual "or his designee" act as a process server. In that regard, the Court ruled as follows:

> Finally, it is clear that FRCP 4(c) is not affected by the strictures of state law. Thus, service must be made by a United States Marshal, his deputy or some specially appointed person. <u>United States for Use of Tanos v. St. Paul Mercury Ins. Co., 361 F.2d 838 (5th Cir.)</u>, cert. denied , 385 U.S. 971, 87 S.Ct. 510, 17 L.Ed.2d 435 (1966). Here an order was signed by a clerk of the United States District Court and it provided for a Mr. Cook, or his designee, to act as process server.

<u>Heritage House Frame and Moulding Co., Inc. v. Boyce Highlands Furniture Co., Inc.,</u> <u>supra,</u> 88. F.R.D. at 174.

Likewise, in this case, the Court provided in the Order of Attachment that a "licensed process server" could be employed by Wachovia's counsel to effect service of

9

the Order of Attachment. Wachovia's counsel employed such a licensed process server to effect levy and service of the Order of Attachment, and service and levy of the Order of Attachment was therefore properly effectuated on December 21, 2007. (Exhibit "4").

Prior to an amendment effective December 1, 2007, FRCP § 64 had provided that "all remedies are available... under the circumstances <u>and in the manner</u> provided by the law of the State in which the district court is held." (emphasis added). The December 1, 2007 amendment deleted the reference to "in the manner provided" by state law. This change in FRCP 64 reinforces the principle that federal procedural rules prevail. However, even under the former wording of FRCP § 64, the Federal Rules of Civil Procedure have been deemed to govern, as held by the U.S. District Court for the Southern District of New York, in relevant part, as follows:

> "under Rule 64 the provisions of New York's attachment statute control... However, the question remains whether each and every provision of the attachment statute, <u>particularly those of a procedural nature,</u> must be applied in a federal action, I think not"

<u>New England Merchants National Bank v. Iran Power Generation and Transmission,</u> 495 F. Supp 73 at 75 (SDNY 1980) (emphasis added). Similarly, in <u>New England v. Iran Power, supra</u>, the Southern District held that the time requirements of CPLR 6213 for the service of the summons were procedural in nature and therefore inapplicable in a federal court action, as federal procedural rules took precedence.

Service and levy of the Order of Attachment on Citibank was properly made under FRCP 4(c)(2), in the same manner as summons. CPLR § 6214 provides that an Order of Attachment is to be served in the same "manner as a summons". FRCP § 64,

10

which supplies the state attachment remedy, does not specify the manner in which it is to be issued or served. The applicable federal statute is FRCP 4 (c)(2), which governs service of a summons and provides, in pertinent part, as follows:

> Service may be effected by any person who is not a party and who is at least 18 years of age. At the request of the plaintiff, however, the Court may direct that service be effected by a United States marshal, deputy United States marshal, or <u>other person or officer specifically appointed by the court for that purpose.</u>

(emphasis added)

Accordingly, since non-party garnishee Citibank, N.A. was properly served with the Order of Attachment by a licensed process server retained by plaintiff's counsel, as expressly directed and allowed by the Court for such purpose, the service of the Order of Attachment on December 21, 2007 was valid and effective.

c.  **Citibank is Liable to Wachovia for the Amount of Funds it Allowed to be Released and Transferred out of the Majapara Account After Service of the Order of Attachment.**

Citibank was served with the Order of Attachment by personal delivery at approximately 9:55 a.m. on December 21, 2007. The Transfer Activity Report provided by Citibank nevertheless indicates continued credit and debit activity in the Majapara Account during the balance of that day, and thereafter, without any restraint whatsoever being placed by Citibank as the Majapara Account. (Exhibits "7" and "8").

In addition, the Transfer Activity Report provided by Citibank, (Exhibit "8") indicates that, in addition to the $1,843,715.44 on deposit on December 21, 2007, an

additional $763,176.82 in credits were transferred into the Majapara Account after December 21, 2007 through January 4, 2008. All of those funds, totalling $2,604,438.87 (save only the $2,453.39 remaining in the Majapara Account as of January 4, 2008) were allowed by Citibank to be transferred out of the Majapara Account, after service and levy of the Order of Attachment on Citibank.

In that regard, CPLR § 6214(b) specifically provides that "All property in which the defendant is known or believed to have in interest then in <u>and thereafter coming into the possession</u> or custody of such a person. . . shall be subject to the levy". (emphasis added)

Accordingly, it is clear that, at a minimum, $2,606,892.06 ($1,843,715.44 plus $763,176.82) in funds were in the Majapara Account at Citibank, upon and after the service and levy of the Order of Attachment. However, Citibank's responses to Interrogatories indicate that only $2,453.39 remained in the Majapara Account as of January 4, 2008. Thus, $2,604,438.67 in Majapara funds were wrongfully released by garnishee Citibank.

Citibank's liability as garnishee for the funds it released after service of the Order of Attachment is well established under New York law. The Appellate Division, First Department, held in <u>River Seafoods v. JP Morgan Chase Bank</u>, 19 A.D.3d 120, 796 N.Y.S.2d 71 (1st Dept. 2005), that a garnishee bank was liable for funds transferred into, and out of, a judgment debtor's account after service of a restraining notice. <u>See also</u>, <u>Nardone v. Long Island Trust Co.</u>, 40 A.D.2d 697, 336 N.Y.S.2d 325 (2nd Dept. 1972)

(garnishee bank held liable for permitting judgment debtor to write checks against bank account subject to a restraining notice); Mazzuka v. Bank of North America, 53 Misc. 2d 1053, 280 N.Y.S.2d 495 (NY Cty. Civ. 1967) (garnishee bank liable upon violation of restraining notice); Salles v. Chase Manhattan Bank, 300 A.D.2d 226, 754 N.Y.S.2d 276 (1st Dept. 2002).

In the case of Navalmar v. Welspun Gujarat Stahl Rohren, 485 F.Supp. 2d 399 (SDNY 2007) the Court ruled that: "A levy is effective to attach property of a defendant in the possession of the garnishee at the moment of levy and the report thereof by the garnishee. If, between a levy and the garnishee's report, the defendant's property has moved from the garnishee's possession, because of prior instructions to the garnishee or otherwise, the garnishee becomes exposed to personal liability"). (emphasis added).

It is respectfully submitted that Citibank's clear violation of the Order of Attachment renders it liable to Wachovia for damages pursuant to CPLR § 6214 (d), in the amount of the funds wrongfully released, paid, or transferred out of the Majapara Account following service of the Order of Attachment.

## POINT II
## WACHOVIA'S APPLICATION FOR RELIEF IS
## NOT STAYED BY MAJAPARA'S BANKRUPTCY

This application is made to secure judgment only against non-party garnishee Citibank. Citibank has independent liability to Wachovia due to the wrongful release, payment or transfer of funds out of the Majapara Account following service of the Order of Attachment. The automatic stay arising from the March 5, 2008 bankruptcy

filing of defendant Majapara does not stay Wachovia's application, since no property of the bankruptcy estate is involved and no relief is sought as against defendant Majapara**a.**

**a. The Order of Attachment was Entered and Levied and the Funds in the Majapara Account Were Transferred Prior to Majapara's Bankruptcy Filing.**

Defendant Majapara filed for Chapter 11 protection on March 5, 2008. This action was commenced on December 14, 2007. The Order of Attachment was entered on December 20, 2007, and service and levy of the Order of Attachment was made upon non-party garnishee Citibank on December 21, 2007.

Citibank allowed the wrongful transfer of $2,604,438.67 in funds from the Majapara Account between December 21, 2007 and January 4, 2008, leaving only $2,453.39 remaining on deposit at Citibank. See, Citibank's Interrogatory response (Ex. "7"). Wachovia as an attachment creditor does not waive its claim to the $2,453.39 remaining in the Majapara Account, but presently seeks no relief as against such funds.

As held in the matter of In re Sowers, 164 B.R. 256 (Bkrtcy. E.D.Va., 1994), the "only time the [creditors] demanded payment from the debtor was through a pre-petition garnishment. Pre-petition collection activities do not violate 11 U.S.C. § 362's automatic stay". Accordingly, the Bankruptcy Court in In re Sowers held that when the creditors "shifted their focus post-petition to [the garnishee due to] its failure to honor the pre-petition garnishment summons. Attempting to collect money which was supposed to be garnished from an employee is not an action against the employee but is

instead an action against the employer-garnishee." Id at 259. See also, In re Gray, 97 B.R. 930 (Bankr.N.D.Ill.1989) (holding that a creditor's post-petition collection efforts against a debtor's employer resulting from that employer's failure to respond to garnishment proceedings did not violate the automatic stay); In re Waltjen, 150 B.R. 419, 426 (Bankr.N.D.Ill.1993) (holding that "an action against an employer for its failure to comply with the garnishment procedures will not be an action against the debtor or his estate when the creditor is solely going after the assets of the non-debtor employer").

**b.    New York's Attachment Statute Provides for Independent Liability Against an Attachment Garnishee, and Therefore no Relief is Sought Against Majapara or its Estate.**

CPLR § 6214, expressly provides for the independent liability of a garnishee for failure to honor an Order of Attachment as follows:

> (d) Proceeding to compel payment or delivery. Where property or debts have been levied upon by service of an order of attachment, <u>the plaintiff may commence a special proceeding against the garnishee served with the order to compel the payment, delivery or transfer to the sheriff of such property or debts, or to secure a judgment against the garnishee.</u> Notice of petition shall also be served upon the parties to the action and the sheriff. A garnishee may interpose any defense or counterclaim which he might have interposed against the defendant if sued by him. The court may permit any adverse claimant to intervene in the proceeding and may determine his rights in accordance with section 6221.

(emphasis added).

Wachovia's instant motion constitutes a proceeding against non-party garnishee Citibank, pursuant to CPLR 6214(d) (applicable herein pursuant to FRCP 64).

While "the scope of the automatic stay is broad, Maritime Electric Co. v. United Jersey Bank, 959 F.2d 1194, 1204 (3rd Cir.1991), nevertheless the clear language of Subsection 1 of § 362(a) indicates that it stays only proceedings against the debtor. [citations omitted] if estate property is not involved, the automatic stay generally protects only the debtor and not co-debtors, sureties, garnishees subject to personal liability for breach of duty, principals, officers, related corporations, and alleged alter egos." McDaniel v. Park Place Care Center, Inc., 918 S.W.2d 820 at 824 (Mo.App. W.D. 1996) (citing, 8A C.J.S. Bankruptcy § 68(a) (1988). (emphasis added).

This issue was addressed squarely by the court in Kenosha Hosp. & Medical Center v. Garcia, 265 Wis.2d 900, 667 N.W.2d 851 (WI App 2003), which held:

> "[i]n other words, what effect, if any, does the automatic stay of Title 11 of the United States Bankruptcy Code have upon Kenosha Hospital's ability to pursue Richter for failing to respond to the garnishment notice?  Because no property of Garcia's bankruptcy estate was implicated by the proceedings under WIS. STAT. § 812.41 against Richter, there is no violation of the automatic stay and the circuit court was within its jurisdiction to enter judgment against Richter".

See also, In re Waltjen, 150 B.R. 419, 426 (Bankr.N.D.Ill.1993) (action versus garnishee for failure to comply with garnishment procedures is not an action against the debtor or his estate)  In re Gray, 97 B.R. 930, 936-37 (Bankr.N.D.Ill.1989) (enforcement of default judgment against the garnishee does not violate the automatic stay).  In re Sowers, 164 B.R. 256, 259 (Bankr.E.D.Va.1994) (ruling that a creditor's attempt to satisfy the judgment against the employer/garnishee was not a violation of the automatic stay because "[i]t was this corporate liability which the [judgment creditors] were trying to

collect after the debtor's petition was filed" and not the debt owed by the debtor); United States v. Allen Bros. of Homer, Inc., 36 B.R. 920, 922-23 (M.D.La.1984) (holding that the United States, in state employee's bankruptcy case, was not precluded by automatic stay from proceeding against the State of Louisiana which, as employer/garnishee of debtor, failed to withhold amounts from wage payments as required by garnishment proceedings, as garnishment action was against neither debtor nor his estate).

Broome v. Citibank, N.A., 166 Misc.2d. 283, 632 N.Y.S.2d 410 (N.Y.City Civ.Ct. 1995) is also on point. In Broome, a judgment creditor sued a judgment debtor's bank, after the bank had released funds in the judgment debtor's account, despite being served with a restraining notice. The bank's release of funds occurred after the judgment debtor had filed for bankruptcy. The Civil Court held that the automatic bankruptcy stay, invoked by the judgment debtor's bankruptcy filing, did not affect the garnishee's liability for failure to honor the restraining notice. Thus the Court ruled that the bank had acted improperly in releasing funds, and the bank was liable to the judgment creditor for violating the restraining notice. Id. at 144.

Citibank's independent liability to Wachovia as garnishee for its wrongful release, payment or transfer of funds from and out of the Majapara Account is not precluded by the automatic stay resulting from the Majapara bankruptcy proceeding. Accordingly, Wachovia submits that its application for judgment against Citibank for its failure to honor the Order of Attachment should be granted in all respects.

**CONCLUSION**

On the basis of the authorities cited above, plaintiff Wachovia Bank, National Association respectfully requests that its instant motion to secure judgment against non-party garnishee Citibank for the sum of $2,604,438.87 be granted in all respects, together with such other and further relief as this Court deems just and proper.

Dated:  New York, New York
        March 20, 2008

>                    Respectfully submitted,
>
>                    ROSNER NOCERA & RAGONE, LLP
>                    Special Counsel for Plaintiff,
>                    Wachovia Bank, National Association
>
>
>                    By:  ___\S\ Peter A. Ragone_____
>                         John A. Nocera (JAN 3399)
>                         Peter A. Ragone (PAR 6714)
>                         John P. Foudy (JPF-7322)
>                         110 Wall Street, 23rd Floor
>                         New York, New York 10005
>                         (212) 635-2244

eb:cambio.memorandum
03/08